**04B03200**

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Case No. 04 B _____ |
| ARCHIBALD CANDY CORPORATION, *et al.*[1] ) | |
| ) | Chapter 11 |
| Debtors. ) | |
| ) | Jointly Administered |
| ) | |

**MOTION BY THE DEBTORS FOR INTERIM AND FINAL ORDERS (A) DEEMING
UTILITY COMPANIES ADEQUATELY ASSURED OF FUTURE PERFORMANCE,
(B) ESTABLISHING PROCEDURE FOR REQUESTS FOR ADDITIONAL ADEQUATE
ASSURANCE, AND (C) RESTRAINING UTILITY COMPANIES FROM
DISCONTINUING, ALTERING, OR REFUSING SERVICE PURSUANT TO
SECTION 366 OF THE BANKRUPTCY CODE**

The above-captioned debtors and debtors in possession (collectively the "Debtors"), by and through their undersigned counsel, hereby move this Court for entry of an interim order substantially in the form of the proposed order attached hereto as Exhibit 1 pursuant to sections 105(a) and 366 of title 11 of the United States Code (the "Bankruptcy Code") eliminating the requirement of providing adequate assurance of payment, in the form of additional security deposits, to the utility companies whose names and addresses are set forth in the schedule annexed to the order as Exhibit A (each a "Utility Company," and collectively, the "Utility Companies"), deeming the Utility Companies adequately assured, establishing procedures for requests for additional assurances and restraining Utility Companies for discontinuing, altering or refusing to provide post-petition telephone, communication, electric and other utility services (collectively, the "Utility Services") to the Debtors. The facts and circumstances supporting this Motion are set forth in the Declaration of Richard Anglin, Vice President & Chief Financial Officer, in support of first-day motions filed concurrently herewith. The Debtors also request

---

[1] The Debtors are the following entities: Archibald Candy Corporation, a Delaware corporation, ("Archibald") and Laura Secord Holdings Corp., a Delaware corporation ("LSH").

1007233

- 1 -

the Court to set the Motion for a final hearing. In support of this Motion, the Debtors respectively represent as follows:

## INTRODUCTION

1. On January 28, 2004, 2004 (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. No creditors' committee has yet been appointed in these cases by the United States Trustee. The Debtors are continuing in possession of their respective properties and are operating their respective businesses, as debtors-in-possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2. This Court has jurisdiction to consider and determine this Motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are sections 105(a) and 366 of the Bankruptcy Code.

## BACKGROUND

*The Prior Bankruptcy Case*

4. On June 12, 2002, Fannie May Holdings, Inc. and Archibald Candy Corporation commenced Case No. 02-11719 in the United States Bankruptcy Court for the District of Delaware (the "Delaware Proceedings"). On September 25, 2002, a Second Amended Joint Plan of Reorganization (the "Plan") was confirmed in the Delaware Proceedings. The Plan became effective on November 1, 2002 and (reorganized) Archibald Candy Corporation, a debtor herein, emerged from the Delaware Proceedings on that date. The Delaware Proceedings facilitated a financial restructuring of Fannie May Holdings, Inc., and Archibald Candy Corporation and a reduction of their debt levels and accompanying debt service payments. All union contracts and

-2-

1007233

related employee claims were unimpaired in the Delaware Proceedings. The Delaware Proceedings remain open for administrative and claims processing purposes.

### The Debtors' Capital Structure

5. On the November 1, 2002 Plan effective date, and pursuant to the Plan, Archibald entered into a loan and security agreement with Foothill Capital Corporation ("Foothill"), as administrative agent for itself and certain other lenders (the "Foothill Facility"). The $55,000,000 Foothill Facility was Archibald's "exit facility" under the Plan.

6. On the November 1, 2002 Plan effective date, and pursuant to the Plan, $186,000,000 of notes (the "Old Notes") were restructured as follows: (a) $50,000,000 of the Old Notes were converted into $50,000,000 of secured notes that were issued pursuant to an Indenture dated November 1, 2002 (as amended, modified or otherwise supplemented from time to time, the "Indenture") among Archibald, as obligor, LSH and Archibald Canada, as guarantors, and BNY Midwest Trust Company, as trustee (the "Trustee") for the holders of the 10% Secured Subordinated Notes due 2007 (the "Secured Third Priority Notes") issued under the Indenture (the "Secured Third Priority Noteholders"); and (b) $136,000,000 of the Old Notes were converted into a majority of the common stock of reorganized Archibald (the "Stock"). The Secured Third Priority Notes are guaranteed by LSH and Archibald Canada and are secured by substantially all of the assets of the Debtors, of LSH, and of Archibald Canada. Pursuant to Article 11 of the Indenture, the Secured Third Priority Notes are subordinated to all claims arising under the Foothill Facility or any facility that replaces the Foothill Facility.

7. On June 26, 2003, following certain events of default under the Foothill Facility, Archibald replaced the Foothill Facility with financing in the form of a Loan and Security Agreement from LaSalle Business Credit, LLC ("LaSalle") (the "LaSalle Facility") and a

Subordinated Term Loan and Security Agreement from Delaware Street Capital Fund, Ltd. ("DSC") (the "Secured Second Priority Facility"[1] and, collectively with the LaSalle Facility, the "Senior Facilities.")[2]

8. Since the Foothill Facility was replaced with the proceeds of the Senior Facilities, the Senior Facilities remain Archibald's senior secured debt and the Secured Third Priority Notes are subordinated to claims arising under the Secured Facilities pursuant to Article 11 of the Indenture. Additionally, pursuant to an Intercreditor Agreement, the Secured Second Priority Claims are junior in priority to claims arising under the LaSalle Facility. The LaSalle Facility is guaranteed by LSH and Archibald Canada and is secured by liens on substantially all of the assets of the Debtors, of LSH, and of Archibald Canada. The Secured Second Priority Facility is guaranteed by LSH and Archibald Canada and is secured by liens on substantially all of the assets of the Debtors, of LSH and of Archibald Canada.

*The Debtors' Corporate Structure*

9. Pursuant to the Plan confirmed in the Delaware Proceedings, $136,000,000 worth of the Old Notes was converted into the vast majority of the common Stock of Archibald, which Stock is still held chiefly by the Secured Third Priority Notcholders. Archibald holds all the issued and outstanding capital stock of LSH. LSH in turn holds all of the issued and outstanding stock of Archibald Canada. Archibald Canada is a Canadian corporation, is not a debtor herein, and is not the subject of, and is not intended to be the subject of, any Canadian insolvency proceeding.

---

[1] Claims arising under the Secured Second Priority Facility shall be referred to as "Secured Second Priority Claims" and holders of such claims shall be referred to as "Secured Second Priority Claim Holders".

[2] LaSalle holds all the claims arising under the LaSalle Facility. DSC is the holder of claims arising under the Secured Second Priority Facility, and affiliates of DSC are also holders of Secured Third Priority Notes and holders of Stock.

### *Archibald Candy (Canada) Corporation*

10.  Archibald Canada will continue to operate as usual and in the ordinary course of its business. The Debtors have filed motions in these cases seeking all authorizations necessary to continue the Archibald Canada operations uninterrupted.

11.  Archibald Canada has access to the product it requires to maintain its retail store inventories. Archibald Canada remains current in payments to its landlords, to its employees and to its third-party vendors. Archibald Canada has made arrangements to ensure the continued funding of its operational expenses.

12.  The LaSalle Facility, the Secured Second Priority Facility and the Secured Third Priority Notes are secured by liens on and security interests in substantially all of the assets of Archibald, of LSH and of Archibald Canada. LaSalle, the Secured Second Priority Facility Claim Holders, and an ad hoc committee consisting of beneficial holders of at least $48,500,000, or at least 87%, of all outstanding indebtedness arising under the Indenture (the "Ad Hoc Committee") have agreed to standstill from asserting their rights and remedies under the guarantees issued by LSH and Archibald Candy and are, by their consent to certain relief sought in this proceeding, supporting the continued ordinary course operations of Archibald Canada.

13.  Archibald Canada principally operates 152 "classic" Laura Secord retail stores in leased locations throughout Canada. In addition, through a joint venture with Hallmark Cards Inc. ("Hallmark"), Archibald Canada operates 17 "combo" stores offering Laura Secord Products and Hallmark cards and gifts. Archibald Canada also leases seasonal kiosks at various locations. For the past four years, the vast majority of the retail inventory sold in the Laura Secord stores has been manufactured by Archibald. At all times, Archibald has been and continues to be the largest creditor of Archibald Canada. The cash management system of Archibald and Archibald Canada results in the cash generated by Archibald Canada first being used to pay the obligations

incurred by Archibald Canada (i.e., leasehold obligations, employee obligations and third-party vendor obligations), with the balance of such cash swept to Archibald to pay the obligations that Archibald Canada owes to Archibald. Archibald Canada's assets principally consist of leasehold interests and retail inventory in Laura Secord stores. Archibald owns all of the trademarks, trade names and other intellectual property associated with Archibald Canada's operations. Archibald also owns sufficient inventory to meet Archibald Canada's requirements for most of 2004. Finally, Archibald Canada has identified a new vendor who has begun to replace Archibald as Archibald Canada's principal source of retail inventory.

***The Debtors' Historical Operations and Recent Developments***

14. The Debtors until recently sold their products through 202 Fannie May and 48 Fanny Farmer company-operated stores in 17 states and the District of Columbia. In addition, Archibald historically marketed its Fannie May and Fanny Farmer branded products through grocery stores, drug stores, card and gift stores, department stores, and other variety stores. The Debtors also historically manufactured their own products.

15. Certain of Archibald's retail stores already have been closed and efforts to wind down operations are underway in the remaining stores. It is anticipated that all stores will be closed by February 29, 2004. The Debtors are moving contemporaneously herewith to reject certain retail leases and are investigating the possibility of assuming and assigning certain retail leases.

16. On or about January 16, 2004, the Debtors ceased substantially all of their manufacturing operations at their facility located at 1137 West Jackson Blvd., Chicago, Illinois (the "Factory").

17. The Debtors continue to operate a substantial number of retail stores. The Debtors also have employees operating at the administrative offices located adjacent to the

Factory and in other warehouse and distribution facilities. As of the Petition Date, the Debtors had approximately 2,000 employees.

18. The Debtors expect to liquidate all existing inventory through retail sales and expect such sales to be completed by February 29, 2004. Following the closing of the retail stores and either the rejection or the assumption and assignment of all leases associated therewith, the Debtors expect to retain approximately 30 employees to complete the operational wind down process, work on asset sales, transition certain operational activities to Canada, and administer these cases. The Debtors also expect to sell substantially all of their Fannie May and Fanny Farmer intellectual property assets and their company owned retail locations pursuant to a section 363 sale and are filing contemporaneously herewith motions to approve that sale and the bid procedures for that sale.

### *The Decision To Seek Bankruptcy Protection*

19. The Debtors have struggled financially for years. An aggressive expansion/roll up strategy was conducted prior to the Delaware Proceedings and, over the past several years, revenue has dropped, production has declined, EBITDA has declined, and labor and material costs have risen. Despite significant cost-cutting measures undertaken by the Debtors, the Debtors have routinely faced liquidity crises.

20. On April 23, 2003, Archibald retained Mr. James Ross, a principal of Morris Anderson & Associates, to act as Archibald's Chief Restructuring Officer and senior most officer. At all times from and after April 23, 2003, Mr. Ross has served as Archibald's Chief Restructuring Officer and senior most officer and he will continue to do so from and after the petition date. As Chief Restructuring Officer, Mr. Ross has used Joe Figlewicz of Morris Anderson & Associates as his restructuring assistant. From and after the petition date, Mr. Ross will continue to use Mr. Figlewicz as a restructuring assistant. Other than Mr. Ross and Mr.

-7-

1007233

Figlewicz, no other Morris Anderson & Associates partners, principals, consultants, specialists, analysts, or support staff will render services to Archibald. After considerable scrutiny and analysis, the Debtors confirmed that they no longer were able to operate profitably. The Debtors therefore determined that one or more going-concern sales of (in the aggregate) substantially all of their assets, accomplished through these Chapter 11 cases, would maximize the recovery to their creditors.

21.     Prior to the Petition Date, the Debtors marketed the assets relating to their Fannie May and Fanny Farmer operations through a comprehensive process, which process resulted in the execution of an asset purchase agreement between the Debtors and Alpine Confections, Inc. (the "Alpine Bid"). The Alpine Bid contemplates the sale of certain of the Debtors' intellectual property relating to U.S. operations, a small amount of the machinery and equipment located at the Factory, and 31 company-owned U.S. stores for a purchase price of $18,000,000. The Alpine Bid excludes the Factory, the majority of the machinery and equipment located at the Factory, all assets relating to Archibald Canada, and all leases and contracts except for certain licenses. An auction will be held to determine whether the Alpine Bid is the highest or otherwise best offer for these assets. The Alpine Bid is described in further detail in motions filed contemporaneously herewith.

22.     As of the Petition Date, the Debtors owed approximately $1,917,332 under the LaSalle Facility and owed approximately $21,750,000 under the Secured Second Priority Facility. As of the Petition Date, Archibald owed approximately $50 million to the Secured Third Priority Noteholders, exclusive of accrued interest, fees, costs and expenses.

23.     The unfortunate circumstances that have led to the filing of these cases have impacted nearly every party-in-interest, from the employees that are losing their jobs, to the trade creditors holding open invoices, to the Secured Third Priority Noteholders who have lost all of

-8-

1007233

their $136,000,000 of Stock and likely a substantial portion of the $50,000,000 Secured Third Priority Notes.

24. The Debtors intend to wind down their operations in an orderly fashion and intend to sell or otherwise dispose of all of their assets, and distribute the proceeds thereof, in this proceeding. The secured creditors who are "in the money" - i.e., LaSalle, the Secured Second Priority Noteholders and the Secured Third Priority Noteholders who are represented by the Ad Hoc Committee – have confirmed their support for and consent to the proposed sale(s) of the Debtors' assets and the orderly wind down of operations and sale of assets within a Chapter 11 proceeding.

## JURISDICTION

25. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

26. By this Motion, the Debtors respectfully request the entry of an order eliminating the requirement of providing adequate assurance of payment, in the form of additional security deposits, to the Utility Companies for providing post-petition Utility Services to the Debtors.

27. In connection with the operation of their businesses and management of their properties, the Debtors obtain electricity, natural gas or oil, water, sewer, telephone services, trash collection and/or similar services (collectively, the "Utility Services") from approximately 230 different utility companies (the "Utility Companies") A list of the Utility Companies is attached to the proposed order as Exhibit A. The Utility Companies provide the Debtors with the Utility Services essential to the continuation of their business. In the aggregate, the Debtors' utility bills are approximately $180,000 per month.

-9-

28. Pursuant to section 366(a) of the Bankruptcy Code, the Utility Companies are enjoined from altering, refusing or discontinuing the Utility Services to, or discriminating against, the Debtors by virtue of the commencement of the Debtors' chapter 11 case, or solely on the basis that the Debtors are indebted to the Utility Companies as a result of charges for pre-petition Utility Services. Section 366(a) prohibits utilities from altering, refusing or discontinuing service for the first twenty (20) days (the "Stay Period") following the entry of an order for relief.

29. Upon the expiration of the Stay Period, however, section 366(b) of the Bankruptcy Code provides that a utility company may terminate services if a debtor has not furnished adequate assurance of payment in the form of a deposit or other arrangement for services provided and to be provided subsequent to the filing of such debtor's bankruptcy petition. Section 366(b) of the Bankruptcy Code further provides that, on the request of a party in interest and after notice and a hearing, the Court may order reasonable modification of the amount of the deposit demanded or other security requested as adequate assurance of payment.

30. Should the Utilities Companies providing service to the Debtors refuse or discontinue such service after the Stay Period, the impact to the Debtors' operational wind down and asset sales would be devastating.

31. The Debtors submit that, as more fully set forth below, adequate assurance exists based upon: (a) their record of timely payment to the Utility Companies as the debts have become due; (b) their ability to pay for post-petition services on a current basis going forward based upon their ability to make budgeted payments to Utility Companies in connection with the use of cash collateral or debtor-in-possession financing; and (c) the Debtors' intention to close their retail stores by the end of February 2004.

32.   The Debtors believe that they are current with all Utility Companies, except to the extent that the Debtors have not yet been billed for pre-petition utility services or the Debtors have been billed but payment for such services was not due as of the Petition Date.

33.   Accordingly, for the reasons stated above, the Debtors seek the immediate entry of an order: (a) prohibiting the Utility Companies from altering, refusing or discontinuing services on account of pre-petition invoices; (b) deeming the Utility Companies to be adequately assured of future performance until further order of this Court or an agreement between any Utility Company and the Debtors; (c) providing that if a Utility Company timely objects to entry of the order approving the Motion and requests additional adequate assurance that the Debtors believe is unreasonable, the Debtors shall file a Motion for Determination of Adequate Assurance of Payment (the "Determination Motion") and set such motion for hearing at the Court's discretion (the "Determination Hearing"); (d) providing that any Utility Company that does not timely request additional adequate assurance shall be deemed to have adequate assurance under section 366 of the Bankruptcy Code; and (e) providing that, in the event a Determination Motion is filed or a Determination Hearing is scheduled, any objecting Utility Company shall be deemed to have adequate assurance of payment under section 366 of the Bankruptcy Code without the need for payment of additional deposits or other securities until an order of the Court is entered in connection with such Determination Motion or Determination Hearing. If, after 15 days, no objections to the Interim Order are filed with the Court and served on the Debtors, the Debtors will ask the Court to enter a final Order deeming the Utility Companies to be adequately assured.

34.   The relief requested herein is supported by applicable case law. Whether a utility company is subject to an unreasonable risk of nonpayment for post-petition services and is, therefore, entitled to receive a new deposit must be determined from the facts and circumstances

-11-

1007233

of each case. See In re Keydata Corp., 12 B.R. 156,158 (B.A.P. 1st Cir. 1981). Generally, it is recognized that absent a pre-petition default, section 366(b) does not require that a debtor make deposits to utilities as a form of adequate assurance. See, e.g., In re Heard, 84 B.R. 454, 459 (Bankr. W.D. Tex. 1987). The legislative history underlying section 366 of the Bankruptcy Code unequivocally supports the conclusion that "[i]t will not be necessary to have a deposit in every case" to provide adequate assurance. H.R. Rep. No. 595, 95th Cong., 1st Sess. 350 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 6306. See also In re Shirey, 25 B.R. 247, 249 (Bankr. E.D. Pa. 1982) ("section 366(b) of the Code does not permit a utility to request adequate assurance of payment for continued services unless there has been a default by the debtor on a pre-petition debt owed for services rendered"); In re Federated Department Stores, Inc., 1990 Bankr. LEXIS 132 (Bankr. S.D. Ohio) (1990).

35.     Additionally, the Court has the authority to grant the relief requested herein pursuant to section 105(a) of the Bankruptcy Code, which provides:

> The Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title.

36.     The Debtors believe that given the protections described above, granting the relief requested herein will not prejudice the rights of the Utility Companies under section 366 of the Bankruptcy Code.

## NOTICE

37.     Notice of this Motion has been given to: (a) the United States Trustee; (b) counsel to the Debtors' known secured creditors; (c) each utility listed on the attached Exhibit A; and (d) the Debtors' twenty largest unsecured creditors on a consolidated basis. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

## NO PRIOR REQUEST

38. No previous request for the relief sought in this Motion has been made to this Court or any other court.

WHEREFORE, for the foregoing reasons, the Debtors respectfully request that the Court enter an order, substantially in the form attached as Exhibit 1, granting the relief requested and granting to the Debtors such other and further relief as may be just and proper.

Dated: January 28, 2004

ARCHIBALD CANDY CORPORATION
LAURA SECORD HOLDINGS CORP.
Debtors and Debtors in Possession

By: _____

Mark K. Thomas (ARDC # 06181453)
John P. Sieger (ARDC # 06240033)
Jeffrey L. Gansberg (ARDC # 06242943)
JENNER & BLOCK LLP
One IBM Plaza
Chicago, Illinois 60611
Telephone: (312) 222-9350
Facsimile: (312) 840-8762

Proposed Counsel for the Debtors
and Debtors-in-Possession

**EXHIBIT 1**

1007233