IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 04-03200 |
| ARCHIBALD CANDY CORPORATION, et al. | ) | Jointly Administerd |
| | ) | Chapter 11 |
| **FILED** Debtors. | ) | Hon. Pamela S. Hollis |
| | ) | |
| | ) | Hearing Date: October 28, 2004 |
| | ) | Hearing Time: 10:00 a.m. |

**FILED**
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS

**OCT 0 7 2004**

**KENNETH S. GARDNER, CLERK**
**PS REP. - DDS**

## NOTICE OF MOTION

To:   See Attached Service Lists

PLEASE TAKE NOTICE that on October 28, 2004, at 10:00 a.m., or as soon thereafter as counsel may be heard, the undersigned shall appear before the Honorable Pamela Hollis, in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, 219 South Dearborn Street, Courtroom 644, Chicago, Illinois 60604, and shall present the **First and Final Application of Trenwith Securities, LLC, Financial Advisors to the Official Committee of Unsecured Creditors for Allowance of Compensation and Reimbursement of Expenses,** a copy of which is attached, and counsel shall request the entry of an order granting the relief requested therein, at such time and place you may appear as you see fit.

Dated: October 7, 2004

Barbara L. Yong, Esq.- 06184000
Caren A. Lederer, Esq.- 6244631
FIELD & GOLAN LLP
70 West Madison Street, Suite 1500
Chicago, IL 60602-4206
(312) 263-2300

## CERTIFICATE OF SERVICE

I, Barbara L. Yong, an attorney, certify that on October 7, 2004, I caused a copy of the attached **Notice of Motion, Trenwith Securities, LLC's Cover Sheet for Its First and Final Interim Application for Professional Compensation** and the **First and Final Application of Trenwith Securities, LLC, Financial Advisors to the Official Committee of Unsecured Creditors for Allowance of Compensation and Reimbursement of Expenses,** to be served upon the parties identified on the attached Core Service List via U.S. Regular Mail, postage pre-paid. I also certify that I caused a copy of the attached **Notice of Motion** and **Trenwith Securities, LLC's Cover Sheet for Its First and Final Interim Application for Professional Compensation** to be served upon the parties listed on the 2002 Service List via U.S. Regular Mail, postage pre-paid. Any party listed on the 2002 Service List may receive the entire application by contacting the undersigned counsel.

Barbara L. Yong

00030183.WPD /

## Core Service List

**Counsel to the U.S. Trustee**
Gretchen Silver
Office of United States Trustee
227 W. Monroe St., Suite 3350
Chicago, IL 60606
Telephone: 312-886-5785
Facsimile: 312-886-5794
E-Mail: gretchen.silver@usdoj.gov

**Counsel to Archibald Candy Corporation**
Mark Thomas / John P. Sieger
Michael C. Rupe
Timothy J. Chorvat / Peter A. Siddiqui
Jenner & Block LLP
One IBM Plaza
Chicago, IL 60611
f: 312-527-0484

**Counsel to the Committee of Unsecured Creditors**
Cathy Herschcopf
Melissa Harrison
Kronish Lieb Weiner & Hellman LLP
1114 Avenue of the Americas
New York, NY 10036-7798
Telephone: 212-479-6138
Facsimile: 212-479-6275
chershcopf@kronishlieb.com

**Counsel to Delaware Street Capital**
George N. Panagakis
Chris Dickerson
Skadden Arps Slate Meagher & Flom LLP
333 W. Wacker Dr.
Chicago, IL 60606
Telephone: 312-407-0700
Facsimile: 312-407-0411

**Counsel to LaSalle Business Credit LLC**
Latham & Watkins
Josef S. Athanas
Sears Tower
233 S. Wacker Dr., Suite 5800
Chicago, IL 60606
Telephone: 312-876-7700
Facsimile: 312-993-9767

**Counsel to Ad Hoc Bondholders Committee**
Alexander D. Kerr, Jr.
Jeffrey B. Rose
Lawrence R. Drumm
Tishler & Wald, Ltd.
200 S. Wacker Dr., Suite 3000
Chicago, IL 60606
Telephone: 312-876-3800
Facsimile: 312-876-3816

Ross Martin
Ropes & Gray LLP
One International Place
Boston, MA 02110
Telephone: 617-951-7000
Facsimile: 617-951-7050

**Counsel to M&M Meatshops**
Michael M. Eidelman
Vedder Price Kaufman & Kammholz, PC
222 N. LaSalle St.
Chicago, IL 60601
Telephone: 312-609-7636
Facsimile: 312-609-5005
meidelman@vedderprice.com

William J. Factor
Seyfarth Shaw
55 E. Monroe St., Suite 4200
Chicago, IL 60603
Telephone: 312-269-8973
Facsimile: 312-269-8869
wfactor@seyfarth.com

Jay Swartz
Davies Ward Phillips & Vineberg LLP
1 First Canadian Place, 44th Floor
P.O. Box 63
Toronto, ON M5X 1B1
CANADA
Telephone: 416-863-5520
Facsimile: 416-863-0871

## 2002 Service List

Thomas M Joyce & Associates
333 N. Michigan Ave., Suite 2032
Chicago, IL 60601
Telephone: 312-641-5754
Facsimile: 312-726-9520

Thomas J. Hunziker
Dunkley Bennett Christensen & Madigan
701 Fourth Ave., South, Suite 700
Minneapolis, MN 55415
Telephone: 612-339-1290
Facsimile: 612-339-9545

Marty J. Schwartz
Three First National Plaza
Suite 3700
Chicago, IL 60602
Telephone: 312-558-4293
Facsimile: 312-558-7750

Neal J. White
McDermott Will & Emery
227 W. Monroe
Chicago, IL 60606-5096
Telephone: 312-372-2000
Facsimile: 312-984-7700

Tracy Sandler
Osler Hoskin & Harcourt LLP
P.O. Box 50
1 First Canadian Place
Toronto, ON M5X 1B8
CANADA
Telephone: 416-362-2111
Facsimile: 416-862-6666

**Counsel to Russell Stover Candies, Inc.**
Brian Fenimore
Lathrop & Gage KC
2345 Grand Blvd.
Kansas City, MO 64108
Telephone: 816-292-2000
Facsimile: 816-292-2001

**Counsel to Alpine Confections, Inc.**
Jonathan C. Bolton
Zack Clement
Fulbright & Jaworski
1301 McKinney, Suite 5100
Houston, TX 77010-3095
Telephone: 713-651-5151
Facsimile: 713-651-5246
E-Mail: Jbolton@fulbright.com

**Counsel to Alpine Confections, Inc.**
James E. Stempel
Kirkland & Ellis
200 E. Randolph St.
Chicago, IL 60601
Telephone: 312-861-2440
Facsimile: 312-861-2200
jstempel@kirkland.com

David D. Almroth
Skadden Arps Slate Meagher & Flom LLP
Four Times Square
New York, NY 10036
Telephone: 212-735-3000
Facsimile: 212-735-2000

Robert B. Greenberg
Susan Brannigan
Marvin Gittler
Asher Gittler Greenfield & D'Alba, Ltd.
200 W. Jackson Blvd., Suite 1900
Chicago, IL 60606
Telephone: 312-263-1500
Facsimile: 312-263-1520

Gerald B. Lurie
Piper Rudnick LLP
203 N. La Salle St., Suite 1800
Chicago, IL 60601
Telephone: 312-368-4092
Facsimile: 312-236-7516

**Counsel to Lorenzo Allison**
Jason M.P. Kleinberg
Law Offices of Scott T. Kamin
53 W. Jackson Blvd., Suite 1162
Chicago, IL 60604
Telephone: 312-322-0077
Facsimile: 312-322-1041

Jeffery M. Burke
Teamsters Local Union 705
1645 W. Jackson Blvd.
Chicago, IL 60607
Facsimile: 312-738-1196

**Counsel for Blommer Chocolate Co.**
David W. Wirt
Michael W. Jones
Winston & Strawn
35 W. Wacker Dr.
Chicago, IL 60601
Telephone: 312-558-5600
Facsimile: 312-558-5700

**Counsel to Chicago Ridge 035 Partners, LP**
Kevin M. Newman, Esq.
Menter Rudin & Trivelpiece, PC
500 Salina St., Suite 500
Syracuse, NY 13202
Telephone: 315-474-7541
Facsimile: 315-474-4040

**Counsel to Charlestowne Mall, LLC, Great
Northern PSE, LLC, Greece Ridge, LLC, The
Marketplace, Shoppingtown Mall, LLC**
Thomas W. Daniels
Francis L. Gorman, III
1265 Scottsville Rd.
Rochester, NY 14624
Telephone: 585-464-9400
Facsimile: 585-464-8787

**Counsel to Health Care Serv. Corp. d/b/a Blue
Cross Blue Shield of Illinois**
R. Scott Alsterda
Alex Pirogovsky
Ungaretti & Harris
3500 Three First National Plaza
Chicago, IL 60602
Telephone: 312-977-4400
Facsimile: 312-977-4405

**Attorney for Hartney Fuel Oil Co**
Mark J. Rose
200 W. Adams St., Suite 2850
Chicago, IL 60606
Facsimile: 312-704-8233

**Counsel to The Rouse Co. Affiliates and
Wilmorite Property Management, LLC**
David L. Pollack
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market St., 5th Floor
Philadelphia, PA 19103
Telephone: 215-864-8623
Facsimile: 215-864-8999

**Counsel to Simon Property Group, L.P.**
Ronald M. Tucker
115 W. Washington St.
Indianapolis, IN 46204
Telephone: 317-263-2346
Facsimile: 317-263-7901
rtucker@simon.com

**Counsel to Simon Property Group, L.P.**
Kevin E. Posen
Harold Stotland
Teller Levit & Silvertrust, PC
11 E. Adams St., Suite 800
Chicago, IL 60603
Telephone: 312-922-3030
Facsimile: 312-922-3048

**Counsel to Taubman Landlords Woodfield Mall
LLC**
Andrew S. Conway
Miro Weiner & Kramer
38500 Woodward Ave., Suite 100
Bloomfield Hills, MI 48303-0908
Telephone: 248-646-2681
Facsimile: 248-646-7887
aconway@mirolaw.com

**Counsel to Transparent Container Co., Inc.**
Gary M. Vanek
Schnell Bazos Freeman Kramer
   Schuster & Vanek
1250 Lake Ave., Suite 100
Elgin, IL 60123
Telephone: 847-742-8800
Facsimile: 847-742-9777

**Counsel to PBGC**
Rosemary Phillips
Office of General Counsel
Pension Benefit Guaranty Corporation
1200 K St., NW
Washington, DC 20005-4026
Telephone: 202-326-4020, Ext. 3094
Facsimile: 202-326-4112
phillips.rosemary@pbgc.gov

**Counsel to PBGC**
Joel R. Nathan
Assistant U.S. Attorney
219 S. Dearborn St., 5th Floor
Chicago, IL 60604
Telephone: 312-353-8449
Facsimile: 312-353-2067
joel.nathan@usdoj.com

Steven Christenholz
Piper Rudnick
203 N. La Salle St., Suite 1800
Chicago, IL 60601-1293
Telephone: 312-368-4059
Facsimile: 312-236-7516
steven.christenholz@piperrudnick.com

Marc Fenton
Piper Rudnick
203 N. La Salle St., Suite 1800
Chicago, IL 60601-1293
Telephone: 312-368-7082
Facsimile: 312-236-7516
marc.fention@piperrudnick.com

**Counsel to Lakeside Mall, LLC, Ridgedale
Center, LLC and Water Tower, LLC**
Nancy E. Everett
The Rouse Company
10275 Little Patuxent Parkway
Columbia, MD 21044
Facsimile: 410-992-6392

**Counsel to LaSalle Bank, Trustee
(Store No. 1200)**
Jeffrey D. Hupert
Riordan Fulkerson Smith & Coleman
100 N. La Salle St., 23rd Floor
Chicago, IL 60602
Telephone: 312-346-4740
Facsimile: 312-346-1168

**Counsel to Urban Retail Properties, Co.
and Dika Jefferson LLC**
Holly L. Tomchey
David J. Fischer
Wildman Harrold Allen & Dixon LLP
225 W. Wacker Dr., Suite 3000
Chicago, IL 60606
Telephone: 312-201-2000
Facsimile: 312-201-2555
Tomchey@wildmanharrold.com

Bryan E. Minier
Katten Muchin Zavis Rosenman
525 West Monroe St.
Chicago, IL 60661-3693
Telephone 312-902-4623
Facsimile No. 312-902-1061

**Counsel to Kimco North Trust II and Bustleton
Partners**
William J. Ulrich, Jr., Esq.
William R. Brodzinski, Esq.
Mulherin Rehfeldt & Varchetto, PC
211 S. Wheaton, Suite 200
Wheaton, IL 60187
Telephone: 630-653-9300
Facsimile: 630-653-9316
wulrich@mrvlaw.com
wbrodzinski@mrvlaw.com

Bryan E. Minier
Katten Muchin Zavis Rosenman
525 W. Monroe St.
Chicago, IL 60661-3693
Telephone: 312-902-5623
Facsimile: 312-902-1061

**Counsel to Prudential Ins. Co. of Am.**
**and Westfield Corp.**
Brian D. Huben
Katten Muchin Zavis Rosenman
2029 Century Park East, 26th Floor
Los Angeles, CA 90067
Telephone: 310-788-4771
Facsimile: 310-788-4471

**Counsel for the City of Chicago**
Esther E. Tryban Telser
City of Chicago Department of Law
30 N. LaSalle, Room 900
Chicago, IL 60602
Telephone: 312-744-1846
Facsimile: 312-744-6798
etrybantelser@cityofchicago.org

**Counsel to Grandview Court L.P.**
Joseph D. Frank
Neal Gerber & Eisenberg LLP
Two N. LaSalle St., Suite 2200
Chicago, IL 60602-3801
Telephone: 312-269-8062
Facsimile: 312-269-1747
jfrank@ngelaw.com

**Counsel to Castleton Shoppes, LP**
Jeffrey J. Graham
Sommer Barnard Ackerson Attorneys, PC
One Indiana Square, Suite 3500
Indianapolis, IN 46204
Telephone: 317-713-3500
Facsimile: 317-713-3699

**Counsel to Inland Real Estate Corp.**
Jonathan E. Aberman
Foley & Lardner
321 N. Clark St., Suite 2800
Chicago, IL 60610-4714
Telephone: 312-832-4394
Facsimile: 312-832-4700

**Counsel to Inland Real Estate Corp.**
David J. Kayner
Inland Real Estate Corp.
2901 Butterfield Rd.
Oak Brook, IL 60523
Telephone:
Facsimile: 630-218-7357

**Counsel to Ramco-Gershenson Properties, L.P.**
**and Newburgh/Six Mile, L.P.**
Terrance A. Hiller, Jr.
Kupelian Ormond & Magy, PC
25800 Northwestern Hwy., Suite 950
Southfield, MI 48075
Telephone: 248-357-0000
Facsimile: 248-357-7488
tah@kompc.com

Steven A. Ginther
Counsel to Missouri Dept. of Revenue
Missouri Dept. of Revenue
301 W. High St., Room 670
P.O. Box 475
Jefferson City, MO 65105-0475
Telephone: 573-751-5531
Facsimile: 573-751-7232

**Counsel to Urban Retail Properties Co.**
Holly L. Tomchey
David J. Fischer
Wildman Harrol Allen & Dixon LLP
225 W. Wacker Dr., Suite 3000
Chicago, IL 60606
Telephone: 312-201-2000
Facsimile: 312-201-2555
tomchey@wilmanharrold.com

**Counsel to The Rouse Company**
Nancy E. Everett
The Rouse Company
10275 Little Patuxent Parkway
Columbia, MD 21044
Telephone: 410-992-6332
Facsimile: 410-992-6392

**Counsel to Chicago Ridge 035 Partners**
Kevin M. Newman
Menter Rudin & Trivelpiece, PC
500 Salina St., Suite 500
Syracuse, NY 13202
Telephone: 315-474-7541
Facsimile: 315-474-4040

**Counsel to Village of Park Forest**
Susan W. Glover
Robbins Schwartz Nicholas
    Litton & Taylor, Ltd.
179 N. Chicago St.
Joliet, IL  60432
Telephone:  815-722-6560
Facsimile:  815-722-0450

**Counsel to Gurnee Mills Operating Co.**
Courtenay M. Labson
1300 Wilson Blvd., Suite 400
Arlington, VA  22209
Telephone:  703-526-5245
Facsimile:  703-526-3333

**Counsel to IBM Corp.**
Beverly H. Shideler
Two Lincoln Center
Oakbrook Terrace, IL  60618
Telephone:  630-568-1514
Facsimile:  845-491-3275
bhshide@us.ibm.com

Bill Angelowitz
Daily Insights, Inc.
JAF Box 3127
New York, NY  10116
Telephone:  212-714-9828
Facsimile:  212-714-9827
wangelow@keacapital.com

**Counsel to Madelaine Chocolate Novelties, Inc.**
Warren R. Graham
Davidoff & Malito LLP
605 Third Ave., 34th Floor
New York, NY 10158
Telephone:  212-557-7200
Facsimile:  212-286-1884
wrg@dmlegal.com

**Counsel to SEC**
Jolene M. Wise
Securities and Exchange Commission
175 W. Jackson Blvd., Suite 900
Chicago, IL  60604
Telephone:  312-886-3948
Facsimile:  312-353-7398
E-Mail:  wisej@sec.gov

**Counsel to PREIT-Rubin, Inc./PR Valley View LP**
Jeffrey Kurtzman
Klehr Harrison Harvey Branzburg & Ellers LLP
260 S. Broad St.
Philadelphia, PA  19102-5003
Telephone:  215-569-4493
Facsimile:  215-568-6603

**Counsel to Hilton Hotels Corp.**
Lawrence H. Hilton
Hewitt & O'Neil LLP
19900 MacArthur Blvd., Suite 1050
Irvine, CA  92612
Telephone:  949-798-0500
Facsimile:  949-798-0511

**International Brotherhood**
Robert A. Seltzer
Cornfield & Feldman
25 E. Washington St., Suite 1400
Chicago, IL  60602-1708
Telephone:  312-236-7800
Facsimile:  312-236-6686

Lise Vautour
SITQ
Centre CDP Capital
1001, Square Victoria, Bureau C-500
Montréal, Québec H2Z 2B1
CANADA
Telephone:  514-288-6767
Facsimile:  514-288-7675

**Counsel to Certain Priority Wage Claimants**
Thaddeus J. Hunt
Law Offices of Thaddeus J. Hunt
120 S. State St., 4th Floor
Chicago, IL  60603
Telephone:  312-236-9906
Facsimile:  312-236-1176
E-Mail:  huntlaw@innoport.com

**Counsel to Arandell Corp.**
Steve Kailas
Kohner Mann & Kailas, S.C.
1572 E. Capitol Dr.
P.O. Box 11982
Milwaukee, WI 53211-0982
Telephone: 414-962-5110
Facsimile: 414-962-8725

**Counsel to Zurich American Insurance Company**
Margaret M. Anderson
Sheila M. Maloney
Lord Bissel & Brook
115 S. LaSalle St.
Chicago, IL 60603
Telephone: 312-443-0402
Facsimile: 312-896-6402
panderson@lordbissell.com

**Counsel to Columbus Limited Partnership**
Paul S. Magy
Matthew W. Schlegel
Terrance A. Hiller, Jr.
Matthew E. Thompson
Kupelian Ormond & Magy, PC
25800 Northwestern Hwy., Suite 950
Southfield, MI 48075
Telephone: 248-357-0000
Facsimile: 248-357-7488

**Counsel to Columbus Limited Partnership**
Synde B. Keywell
Neal Gerber & Eisenberg LLP
2 N. La Salle St., Suite 2200
Chicago, IL 60602-3801
Telephone: 312-269-8003
Facsimile: 312-269-1747

**Counsel for Local 705**
Jeffrey B. Gilbert
Phillip H. Snelling
Johnson, Jones, Snelling, Gilbert & Davis
36 S. Wabash Avenue, Suite 1310
Chicago, IL 60603
(312)578-8100

**Counsel for DM of Indiana, Inc.**
Michael A. Fish
Terrell & Thrall, LLP
1158 W. Lincolnway, Suite One
Valparaiso, IN   46385
Telephone: 219-465-1766
Facsimile: 219-465-0145

Neil Herskowitz
Riverside Contracting LLC
P.O. Box 626
Planetarium Station
New York, NY   10024-0540
Telephone: 888-501-0990
Facsimile: 212-501-7088

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re | ) ) ) ) | Case No. |
| ARCHIBALD CANDY CORPORATION, et al.,[1] | ) ) ) ) | |
| Debtors. | ) ) ) | |

04-03200
Jointly Administered
Chapter 11
Hon. Pamela S. Hollis

**FILED**
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS

OCT 7 2004

KENNETH S. GARDNER, CLERK
PS REP. - DDS

**FIRST AND FINAL APPLICATION OF TRENWITH SECURITIES,
FINANCIAL ADVISORS TO THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS FOR ALLOWANCE OF COMPENSATION AND
REIMBURSEMENT OF EXPENSES**

Pursuant to sections 328, 330 and 331 of chapter 11, title 11 of the United States Code

(the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") and Rule 5082-1 of the Local Rules of Bankruptcy Practice and Procedure

of the United States Bankruptcy Court for the Northern District of Illinois (the "Local Rules"),

Trenwith Securities, LLC , ("Applicant" or "Trenwith"), financial advisors to The Official

Committee of Unsecured Creditors of Archibald Candy Corp., et al. (the "Committee") hereby

submits its First and Final Application for Allowance of Compensation and Reimbursement of

Expenses (the "Application") for services rendered by Trenwith on behalf of the Committee from

February 11, 2004 through July 30, 2004 (the "Fee Period"). Pursuant to the *Administrative*

*Order Establishing Procedures for Interim Compensation and Reimbursement of Professionals*

(the "Fee Procedure Order") entered by this Court on February 11, 2004, Trenwith seeks interim

and final allowance of compensation for professional services to the Debtors in the amount of

---

[1]     The Debtors are the following entities: Archibald Candy Corporation, a Delaware Corporation
("Archibald"), and Laura Secord Holdings Corp., a Delaware corporation ("Laura Secord" or "LS")

$110,000.00 and reimbursement of expenses incurred in connection with these services in the amount of $6,186.53. In support of this Application, Trenwith states as follows:

## RELEVANT BACKGROUND

1.    On January 28, 2004 (the "Petition Date"), the Debtors filed their Chapter 11 petitions.

2.    On March 26, 2004, the Court approved the employment of Trenwith, effective *nunc pro tunc* to February 11, 2004, as financial advisors for the Committee pursuant to an *Order Authorizing the Retention and Employment of Trenwith* (the "Order") (Docket #367), attached hereto as **Exhibit "A"**. The Order authorized the Committee to retain Trenwith on the terms set forth in an engagement letter (the "Engagement Letter") dated March 8, 2004, attached hereto as **Exhibit "B"**, and as amended in the Order.

3.    Pursuant to the terms of the Engagement Letter and the Order, Trenwith's fees are calculated as follows.

(a)    Advisory Fee.  As consideration for services rendered by Trenwith, the Company shall pay to Trenwith upon interim approval of its retention by the Bankruptcy Court and completion of its Phase I services, an advisory fee equal to its hourly fees (recorded in one-half hour increments) from February 11, 2004 through February 20, 2004 in an amount not to exceed $10,000 (the "Advisory Fee").  In addition, the Company agrees to reimburse Trenwith for all documented out-of-pocket expenses reasonably incurred by Trenwith and subject to the normal limits of the Bankruptcy Court in connection with the matters contemplated by this Agreement (collectively, the "Out-of-Pocket Expenses").  Out-of-Pocket Expenses shall include, but not be limited to, all reasonable travel expenses, duplicating charges, database usage, on-line service charges, messenger services, delivery services, meeting services, long distance telephone

and facsimile charges, and all reasonable fees, disbursements and other charges incurred in connection with any actual or proposed Closing, or otherwise arising out of Trenwith's activities under or contemplated by this Agreement.

    (b)    Transaction Fee. In addition to the Advisory Fee and Expenses, Trenwith shall be compensated in the following manner:

    i.    Trenwith shall receive as a Transaction Fee four and one-half percent (4.5%) of the difference between the Fannie Mae/Fanny Farmer ("FM/FF") stalking horse bid of $18,000,000 and any Qualifying Trenwith Bid at the FM/FF auction. In the event the component auctions top the bulk auction, Trenwith shall receive a Transaction Fee equal to four and one-half (4.5%) of the difference between the intellectual property and/or real estate stalking horse bids of $10,000,000 and $8,000,000 respectively and any applicable Qualifying Trenwith Bid at the respective component auctions.

    ii.    Trenwith shall receive, as a Transaction Fee, four and one-half percent (4.5%) of the difference between the Laura Secord stalking horse bid and any Qualifying Trenwith Bid at the LS auction.

    iii.    In the event the LS auction does not involve a stalking horse bidder, or a Transaction Source is selected as the stalking horse bidder, then Trenwith shall receive a Transaction Fee equal to three percent (3.0%) of any Qualifying Bid at the LS auction.

    iv.    In no event shall Trenwith be entitled to more than one Transaction Fee from any auction. None of the Lender, the Secured Second Priority Term Loan Holders, the Indenture Trustee and the Secured Third Priority Note Holders shall have any liability to Trenwith, and the Transaction Fees, if any, shall be payable only from the gross proceeds of the FM/FF and LS auctions conduced in the chapter 11 cases; provided that none of these parties are the successful bidder. Trenwith shall not seek any additional compensation from the Debtors except as set forth in this Order. Trenwith shall not have any claims, including for compensation of any kind, against Archibald Candy (Canada) Corporation.

    v.    In the event Trenwith does not receive a Transaction Fee from the FM/FF auction, Trenwith shall receive a "downside fee" equal to $50,000 payable only from the Debtors' unencumbered assets. In addition, in the event Trenwith does not receive a Transaction Fee from the LS auction, Trenwith shall receive a "downside fee"

equal to $50,000 payable only from the Debtors' unencumbered assets (each a "Downside Fee").

vi.    To the extent Trenwith receives either a Transaction Fee or a Downside Fee in connection with the FM/FF auction and the LS auction, Trenwith waives all claims under Bankruptcy Code 503(b)(3)(D) and (b)(4), all claims based on *quantum merit*, and all claims for charging collateral.

4.    An auction sale of the Debtors' FM/FF assets occurred on April 1, 2004, and an auction sale of the Debtors' Laura Secord assets occurred on July 22, 2004. Several interested parties appeared at each auction and placed bids. The highest bidder at the FM/FF auction was Alpine Confections, Inc., and on April 2, 2004, the Court entered an order approving the sale of substantially all of the Debtor's FM/FF assets to Alpine Confections, Inc. for approximately $38.9 million. The highest bidder at the Laura Secord auction was Gordon Brothers Group, LLC, and on July 27, 2004, the Court entered an order approving the sale of substantially all of the Debtors' Laura Secord assets to Gordon Brothers Group, LLC for a purchase price valued at approximately C$32.9 million. Therefore, under the terms of its Engagement Letter and the Order, Trenwith earned a Transaction Fee of $50,000 for services provided in the FM/FF auction, plus $50,000 for services provided in the Laura Secord auction, plus its Advisory Fee of $10,000, to equal total professional fees of $110,000 plus its reasonable out-of-pocket expenses.

## ITEMIZATION OF SERVICES RENDERED
## AND EXPENSES INCURRED BY TRENWITH

5.    Regarding its Advisory Fee, Trenwith estimates that its professionals expended approximately 104.5 total hours during its Phase 1 (February 11, 2004 through February 20, 2004) service to the Committee. Trenwith's relevant hourly rates are as follows: Managing Director at $495 per hour and Vice President at $395 per hour. During Phase 1, Ricardo Chance, a Trenwith Managing Director, expended approximately 36.0 hours ($495 times 36.0 hours

equals $17,820); Erik Jordan, a Trenwith Vice President, expended approximately 24.0 hours ($395 times 24.0 hours equals $9,480); and Jeffrey Showalter, a Trenwith Vice President, expended approximately 44.5 hours ($395 times 44.5 hours equals $17,578). Because the sum total of Trenwith's fees when computed on an hourly basis exceeds the $10,000 agreed upon maximum for its Phase I services, Trenwith's approved compensation for Phase I is $10,000. A breakdown of hours expended by Trenwith in Phase I is attached hereto as Exhibit A.

6. Although Trenwith's approved compensation for the Transaction Fee ($50,000 for the FM/FF transaction and $50,000 for the LS transaction) is not to be based on the hours expended by it in connection with its work for the Committee, Trenwith did agree and has maintained time records in one-half hour increments for services rendered to the Committee. Trenwith estimates that its professionals expended approximately 497.5 hours for services provided to the Committee from February 21, 2004 through July 30, 2004. A breakdown of all hours expended by Trenwith is attached hereto as **Exhibit "C"**.

7. The representation of the Committee was primarily performed by Ricardo Chance, Managing Director; Erik Jordan, Vice President; and Jeffrey Showalter, Vice President.

8. Trenwith provided a broad range of financial advisory services to the Committee related to several primary areas during the Fee Period that added value to the estate, including: (i) research and analysis relevant to marketing the Debtors' assets, to identifying and attracting potential bidders, to maximizing recovery for the estate, to providing updates for the Committee, and other relevant matters, (ii) interfacing with the Debtors and the Debtors' investment banker, Paragon Capital Partners, LLC ("Paragon"), relating to the bid procedures, potential buyer universe, due diligence, and other sale issues, (iii) merger and acquisition activity relating to the marketing of the Debtor's assets, (iv) assisting in the preparation for and conduction of the

auction sale of the Debtors' assets; (v) preparing and providing court testimony, (vi) providing regular communication to the Committee, (vii) providing and participating in regular discussions with Committee counsel to maximize the value of the estate, and (viii) performing general duties relating to case administration and applications.

9.      For the Debtors' cases, Trenwith has recorded its services in six separate substantive categories (the "Service Categories"), which include (a) Research, Analysis, Document Preparation and Review, (b) Interface with the Debtors, Debtors' Counsel and/or Paragon Capital, (c) Merger and Acquisition Activity, (d) Preparation, Travel and/or Attendance, Court Hearings, (e) Interface with Creditors' Committee and Committee professionals, and (f) Fee Application and Engagement Administration.   These substantive categories have been created since the inception of the Debtor's case and have been utilized since Trenwith's retention in these bankruptcy cases on February 11, 2004. Although Trenwith has endeavored to place all entries in their respective categories, sometimes one activity encompassed more than one category.   In those instances, Trenwith has attempted to place that entry into the category which represents the most dominant purpose of the services rendered.

10.      The following is a narrative description of the services rendered with respect to each of the seven Services Categories set forth above.

(a)      Research, Analysis, Document Preparation and Review:  Work performed and value added in this Project Category included database and other searches to identify potential bidders for the Debtors' assets, analysis of the Debtors' financial statements, their operating budgets and other related financial information, analysis of information describing the Debtors' operations, research and analysis of the candy and confections industry, review of numerous Court filings related to these cases, review of Paragon's Memorandum and related due

diligence materials for distribution to potential bidders, and meetings of Trenwith's team regarding the strategy for marketing the Debtors' assets and review and analysis of submitted offers.

(b)     Interface with Debtor, Debtors' Counsel and/or Paragon:  Work performed and value added in this Project Category included numerous calls with Paragon regarding the Debtors' assets, finances, operations and other related matters, and participation in conference calls with Debtors' counsel regarding the FF/FM and LS sale processes.

(c)     Merger and Acquisition Activity:  Work performed and value added in this Project Category included distribution of marketing materials to prospective bidders for the Debtors' assets, numerous phone calls with prospective bidders, travel to attend and participation at the April 1, 2004 FM/FF auction in Chicago, Illinois and the July 22, 2004 LS auction in Toronto, Canada.  Trenwith added substantial value to the Debtors' estates by analyzing and assisting with the structuring of the bid procedures so as to attract the greatest number of qualified bidders to these auctions, and by significantly expanding the universe of potential bidders in both the FM/FF and LS sales.

(d)     Preparation and/or Attendance, Court Hearings:  During the Fee Period, Trenwith prepared to give testimony before the Court, and attended the March 18, 2004, April 2, 2004 and July 27, 2004 hearings.

(e)     Interface with Creditors' Committee and/or Committee Professionals:  Work performed and value added in this Project Category included preparation and participation in several Committee conference calls and/or electronic communication with Committee members regarding the process of selling the Debtors' assets, extensive and on-going consultation and strategic analysis with counsel to the Committee regarding pertinent matters

throughout the engagement period, calls with BDO Seidman, LLP (Committee accountants) regarding analysis performed on the Debtors' financial performance, and preparation of numerous reports for the Committee.

(f)    Fee Application and Engagement Administration:  Work performed in this Project Category included preparation of the Application, timesheets, expense reimbursement forms and other engagement administration documents during the engagement period.

11.    Below are the expenses, listed by category, incurred by Trenwith in connection with this engagement during the total Fee Period for which Trenwith seeks reimbursement:

| Airfare (economy) | $3,118.45 |
| Lodging | $2,049.31 |
| Meals | $383.57 |
| Taxi, Mileage, Parking, Car Rental | $635.20 |
| **TOTAL** | **$6,186.53** |

12.    As set forth above, Trenwith incurred $6,186.53 in actual, reasonable and necessary expenses during the Fee Period.  The expenses incurred by Trenwith, as set forth herein, include reasonable and necessary charges for services such as travel, lodging, meals, research and messenger services.

13.    In connection with the reimbursement of actual, reasonable and necessary expenses, it is Trenwith's policy to charge its clients in all areas of practice for expenses, other than fixed and routine overhead expenses, incurred in connection with the clients' cases.  The expenses charged to Trenwith's clients include, among other things, mail and express mail charges, travel expenses, and expenses for "working meals," as well as non-ordinary overhead expenses.  Trenwith believes that it is fairer to charge these expenses to the clients incurring them than to increase its rates and spread the expenses among all clients.  Trenwith charged the

Debtor for these expenses in a manner and at rates consistent with charges made to Trenwith's non-bankruptcy clients.

14.     The itemized description of the services provided and expenses incurred during the Fee Period is detailed in Exhibit A hereto.

15.     All of the services and expenses for which compensation is sought were rendered to the Committee solely in connection with this case, in furtherance of the duties and functions of the Committee and not on behalf of any individual creditor or other person. Trenwith has not agreed to share any compensation to be received herein with any other person.

## THE STANDARDS FOR APPROVAL OF REIMBURSEMENT

16.     Sections 328(a) and 330(a) of the Bankruptcy Code authorize reasonable compensation for actual, necessary services and expenses rendered by such investment bankers and financial advisors based on the nature, extent and value of the services rendered, time spent on such services and the cost of comparable services other than in a bankruptcy case. The Court may also award reimbursement for actual, necessary expenses.

17.     In accordance with the factors enumerated in section 330 of the Bankruptcy Code, Trenwith respectfully submits that the amount of expenses requested is fair and reasonable given (a) the complexity of this case, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of those services, and (e) the costs of comparable services other than in a case under this title.

## CONCLUSION

WHEREFORE, based on the foregoing, Trenwith respectfully requests that this Court enter an Order:

1.     Granting Trenwith a final allowance of compensation for services rendered in the amount of $110,000.00 ($10,000.00 Advisory Fee for Phase I services plus $50,000.00

Transaction Fee for services rendered related to the sale of FM/FF plus $50,000.00 Transaction

Fee for services related to the sale of LS equals $110,000.00) and reimbursement of expenses

incurred in connection with those services of $6,186.53 during the Fee Period; and

2.   Granting Trenwith such other and further relief as this Court deems just and

proper.

Dated: October _5_, 2004
         Costa Mesa, California

TRENWITH SECURITIES, LLC


Ricardo S. Chance, Managing Director
3200 Bristol Street, Suite 400
Costa Mesa, CA 92626
714-668-7333

FINANCIAL ADVISOR TO THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

-------------------------------------------------------------------X

In re:

ARCHIBALD CANDY CORPORATION. et al.,[1]

               Debtors.

Chapter 11

Case No.: 04-03200
(Jointly Administered)

Hon. Pamela S. Hollis

-------------------------------------------------------------------X

**ORDER AUTHORIZING THE RETENTION OF TRENWITH SECURITIES LLC
NUNC PRO TUNC TO FEBRUARY 11, 2004 [EOD 291]**

WHEREAS on March 8, 2004, the Official Committee of Unsecured Creditors (the

"Committee") of the above-captioned Debtors as appointed by the Office of the United States

Trustee applied (the "Application") for the authority to retain Trenwith Securities LLC, 3200

Bristol Street, Suite 400, Costa Mesa, CA 92626 ("Trenwith"), as investment banking firm to

represent the Committee in these proceedings (Doc. Number 291);

WHEREAS on March 15, 2004, the Ad Hoc Committee of Bondholders (the

"Bondholder Committee") filed an objection to the Application (Doc. Number 321), and on

March 16, 2004 the Debtors filed an objection to the Application (Doc. Number 322)

(collectively, the "Objections");

WHEREAS on March 17, 2004, the Committee filed the Response of the Official

Committee of Unsecured Creditors to Objections to the Committee's Application to Retain

Trenwith Securities LLC (the "Response") (Doc. Number 334);

---

[1]     The Debtors are the following entities: Archibald Candy Corporation, a Delaware Corporation and Laura
Secord Holdings Corp., a Delaware corporation.

**EXHIBIT**

A

WHEREAS on March 18, 23 and 25, 2004, a hearing was held by this Court on the Application (collectively, the "Trenwith Hearing");

WHEREAS, at the conclusion of the hearing on March 18, 2004, the Court concluded that Trenwith's application would not be approved on the terms requested in the Application, and the Court informed the Committee and Trenwith that, among other things, Trenwith's fixed compensation should be paid from unencumbered funds and that any incentive compensation, to be paid on a percentage basis from a sale and from collateral of secured parties, would be approved only for appropriate Trenwith efforts that produce a bidder who is the first or second highest bidder at an auction, because only in those circumstances would Trenwith's efforts be of benefit to the estates;

WHEREAS, prior to the continued hearing on March 23, 2004, the Committee proposed that Trenwith's fee arrangement be modified to provide, *inter alia,* for an incentive fee payable on first- and second-highest bidders, including a 4.5% fee payable on the entire sale consideration in any sale of the Canadian business if no "stalking horse" was used, and for additional "downside fees" of $50,000, payable only from unencumbered funds, on each of the pending sale of the US assets and the planned sale of the Canadian assets, in each case in the event that Trenwith does not receive an incentive fee on such sale;

WHEREAS, the Debtors and the Bondholder Committee objected to certain of the revised terms, and at the March 23 hearing the Court overruled a portion of the Debtors' objection, specifically providing that the determination of whether a Trenwith-produced bidder is first- or second-highest shall be made without regard to the potential incentive fee payable to Trenwith on such a sale, and continued the other matters relating to Trenwith's retention until March 25, 2004;

2

WHEREAS the Committee and Trenwith then further modified the proposed terms of Trenwith's engagement and Trenwith provided a letter to the Debtors, filed at the March 25, 2004 hearing, and based on such modifications and the record at the hearings, the Debtors and the Bondholder Committee withdrew their objections to the Application;

WHEREAS the Court concluded that Trenwith is qualified to represent the Committee and that Trenwith represents no interest adverse to the creditors, the Debtors or their estates in the matters upon which they are to be engaged;

WHEREAS at the Trenwith Hearing the Court determined that Trenwith's employment is appropriate under Bankruptcy Code §§1103(a), 328(a) and 330(a) and that Trenwith represents no adverse interests requiring notice;

NOW, THEREFORE, IT IS ORDERED, THAT

1.    The Committee is authorized to employ Trenwith as its investment banking firm, *nunc pro tunc* to February 11, 2004.

2.    Paragraph 6 of the Engagement Letter[2] is hereby amended to read in its entirety as follows:

> **Termination.**    Trenwith's engagement shall automatically terminate upon the earlier of (i) the consummation of the last sale pursuant to the Auctions or any other sale process; or (ii) the confirmation of a plan of reorganization. After the automatic termination of this Agreement, Trenwith shall have no obligation to provide any additional services.    This Agreement is also terminable upon ten (10) business day's written notice by the Committee or Trenwith, provided, however that if the Agreement is terminated by the Committee without reasonable cause, the Debtor shall still be obligated to pay to Trenwith the fees and expenses that would have been due under the Agreement if it had not been terminated. The termination of this Agreement will not affect the Debtor's reimbursement, contribution and other obligations set forth in this Agreement.

---

[2]    Capitalized terms not otherwise defined herein retain the meaning ascribed to them in the Application.

3.  The Advisory Fee is approved; provided, however, that the Advisory Fee shall be paid to Trenwith only from unencumbered assets of the Debtors' estates.

4.  Trenwith shall seek reimbursement of only its ordinary, reasonable expenses (the "Expenses") as they are incurred and to the extent permitted under the Bankruptcy Code; provided, however, that the Expenses shall be reimbursed only from unencumbered assets of the Debtors' estates.

5.  Notwithstanding Paragraph 4(b) of the Engagement Letter, Trenwith shall be compensated only for a Qualifying Trenwith Bid as set forth in Paragraph 6 below. For the purposes of this Order, a "Qualifying Trenwith Bid" shall mean the highest bid of a Transaction Source that is either (a) a Bid subsequently approved by the Court as the successful Bid or (b) a Bid found by the Court to be the runner-up Bid at any Sale Hearing or, if the Court makes no such finding at a Sale Hearing, at any subsequent hearing on an application by Trenwith for compensation. The highest or otherwise best Bid submitted to the Court for approval as the successful Bid and the runner-up Bid at the FM/FF auction or the LS auction shall be determined without giving effect to any Transaction Fee or any other fees or expenses payable to Trenwith.

6.  In addition to the Advisory Fee and Expenses, Trenwith shall be compensated in the following manner:

> (a)  Trenwith shall receive as a Transaction Fee four and one-half percent (4.5%) of the difference between the FM/FF stalking horse bid of $18,000,000 and any Qualifying Trenwith Bid at the FM/FF auction. In the event the component auctions top the bulk auction, Trenwith shall receive a Transaction Fee equal to four and one-half percent (4.5%) of the difference between the intellectual property and/or real estate stalking horse bids of $10,000,000 and $8,000,000 respectively and any applicable Qualifying Trenwith Bid at the respective component auctions.

> (b)  Trenwith shall receive, as a Transaction Fee, four and one-half percent (4.5%) of the difference between the LS stalking horse bid and any Qualifying Trenwith Bid at the LS auction.

4

(c)     In the event the LS auction does not involve a stalking horse bidder, or a Transaction Source is selected as the stalking horse bidder, then Trenwith shall receive a Transaction Fee equal to three percent (3.0%) of any Qualifying Trenwith Bid at the LS auction.

(d)     In no event shall Trenwith be entitled to more than one Transaction Fee from any auction. None of the Lender, the Secured Second Priority Term Loan Holders, the Indenture Trustee and the Secured Third Priority Note Holders[3] shall have any liability to Trenwith, and the Transaction Fees, if any, shall be payable only from the gross proceeds of the FM/FF and LS auctions conducted in these chapter 11 cases; provided that none of these parties are the successful bidder. Trenwith shall not seek any additional compensation from the Debtors except as set forth in this Order. Trenwith shall not have any claims, including for compensation of any kind, against Archibald Candy (Canada) Corporation.

(e)     In the event Trenwith does not receive a Transaction Fee from the FM/FF auction, Trenwith shall receive a "downside fee" equal to $50,000 payable only from the Debtors' unencumbered assets. In addition, in the event Trenwith does not receive a Transaction Fee from the LS auction, Trenwith shall receive a "downside fee" equal to $50,000 payable only from the Debtors' unencumbered assets (each a "Downside Fee").

(f)     To the extent Trenwith receives either a Transaction Fee or a Downside Fee in connection with the FM/FF auction and the LS auction, Trenwith waives all claims under Bankruptcy Code §§ 503(b)(3)(D) and (b)(4), all claims based on *quantum meruit*, and all claims for charging collateral.

7.     The compensation of Trenwith for services rendered to the Official Committee of Unsecured Creditors shall be fixed by this Court after due application to this Court in accordance with the fee structure set forth in the Application as modified by this Order. The rights of all parties in interest to object to any fee application of Trenwith are expressly reserved. All Transaction Fees to which Trenwith is entitled shall be compensated in accordance with (a) the procedures set forth in 11 U.S.C. § 330(a) and applicable provisions of the Bankruptcy Rules upon application to this Court, (b) such procedures as may be fixed by order of this Court and (c) the terms of the Engagement Letter as set forth in the Application and as modified by this Order.

---

[3] Each as defined in the Stipulation and Final Order Authorizing (A) Secured Post-Petition Financing on a Super Priority Basis Pursuant to 11 U.S.C. § 364, (B) Use of Cash Collateral Pursuant to 11 U.S.C. § 363, and (C) Grant of Adequate Protection Pursuant to 11 U.S.C. §§ 363 and 364 [EOD 181].

8.     None of the fees hereunder shall constitute a "bonus" under applicable law.

Trenwith shall keep time records in one-half hour increments of its work in this case in

accordance with its practices in other chapter 11 cases, provided that Trenwith's agreement to

maintain time records will not, however, affect the compensation due Trenwith, which

compensation will be as set forth in this Order and will not be based on hours spent by Trenwith.

All of Trenwith's allowed and unpaid fees and expenses will be treated as administrative expense

claims.

**ENTERED**

MAR 2 6 2004

HONORABLE PAMELA S. HOLLIS
UNITED STATES BANKRUPTCY JUDGE
PAMELA S. HOLLIS
BANKRUPTCY JUDGE

Dated: March _____, 2004
          Chicago, Illinois

Order prepared by:

Barbara L. Yong
Field & Golan LLP
70 West Madison Street
Suite 1500
Chicago, IL  60602
Tel.: (312) 263-2300
Fax: (312) 263-0939

*and*

Cathy Hershcopf (CH 5875)
Joanna L. Bergmann (JB 7581)
Kronish Lieb Weiner & Hellman LLP
1114 Avenue of the Americas
New York, New York 10036
Tel.: (212) 479-6000
Fax: (212) 479-6275

*Counsel for the Official Committee
of Unsecured Creditors*

# ARCHIBALD CANDY CORPORATION
## OFFICIAL COMMITTEE OF UNSECURED CREDITORS

Dated as of March 8, 2004

To: The Official Committee of Unsecured Creditors (the "Committee") of Archibald Candy Corporation, and its affiliated debtors and debtors-in-possession (collectively, the "Company" or the "Debtors"), in care of:

Committee Counsel
Kronish Lieb Weiner & Hellman LLP
1114 Avenue of the Americas
New York, NY 10036
Attn:   Cathy Hershcopf, Esq.

This letter confirms the terms of the agreement between Trenwith Securities, LLC ("Trenwith") and the Committee (the "Parties") concerning the Committee's engagement of Trenwith to provide investment banking and related advisory services to the Committee in connection with the Chapter 11 case of Archibald Candy Corporation, case number 04-03200 (the "Case") Nunc Pro Tunc as of February 11, 2004, which is pending in the United States Bankruptcy Court in the Northern District of Illinois Eastern Division (the "Bankruptcy Court").

1.          **Scope of Engagement.**   Trenwith will provide investment banking and related advisory services to the Committee in connection with the sale being conducted by Paragon Capital Partners ("Paragon") of all or substantially all of the Debtors' assets, including but not limited to select Fannie May ("FM"), Fanny Farmer ("FF") and Laura Secord ("LS") intellectual property, real estate and equipment assets (collectively the "Auctions"). Trenwith's duties will include, without limitation, and as requested by the Committee a Phase I and Phase II component as follows:



MAR-08-2004  16:53                                                          P.03

Phase I

    (a)    Conducting a peer review of Paragon's marketing process, marketing materials and evaluating the potential investor universe for completeness; and,

    (b)    Performing an independent evaluation of the existing stalking horse proposal and bidding procedures and making recommendations that may increase the potential recovery to the Debtors' estates.

Phase II

    (a)    Contacting persons or entities identified by Trenwith, the Committee or Committee advisors who may become qualified bidders at the Auctions, but excluding those parties already contacted or in the future, identified and contacted first by Paragon (collectively the Trenwith "Transaction Sources");

    (b)    Refer such Transaction Sources to Paragon for Paragon to qualify, register and provide access to due diligence materials in order for such Transaction Sources to participate in the Auctions;

    (c)    Assisting and advising the Committee regarding the relative merits of alternative sales, other transactions and bids or proposals submitted by potential bidders or otherwise in connection with the Auctions; and,

    (d)    Providing testimony in court on behalf of the Committee, if necessary.

This Agreement is subject to the entry of an order of the Bankruptcy Court approving the retention of Trenwith pursuant to the terms hereof. In the event that Trenwith is requested to perform additional services for which it believes an additional fee is appropriate, such services (and any fees therefore), shall be in addition to those set forth herein and subject to further written agreement among the Committee and Trenwith and to further Bankruptcy Court approval.

2.    **Exclusive Representation.** Trenwith's fiduciary duties hereunder run solely to the Committee. All financial advice, written or oral, provided by Trenwith to the Committee pursuant to this Agreement is intended solely for the use and benefit of the Committee, which agrees that such advice may not be disclosed publicly (except in court pleadings to be filed by the Committee in this Case) or made available to third-parties without the prior consent of Trenwith, which consent shall not be unreasonably withheld or delayed. At the direction of Committee's Counsel, certain communication and correspondence between Trenwith and the Committee, and work product and analyses prepared by Trenwith for the Committee in connection with this matter, will be considered in preparation for litigation over the restructuring of the Debtor, and accordingly will be subject to the attorney-client privilege and work-product doctrine between Trenwith and the Committee. Any non-public information provided to Trenwith shall not be disclosed without the consent of the Committee.

3.    **Advisor.** Trenwith's services are limited to those specifically provided in this Agreement or subsequently agreed-upon by the parties hereto, and Trenwith shall have no obligation or responsibility for any other services. Trenwith is providing its services hereunder as an independent contractor, and the parties agree that this Agreement does not create an agency or fiduciary relationship between Trenwith and the parties to this Agreement.

4.    **Consideration.**

(a)    <u>Advisory Fee.</u> Subject to Bankruptcy Court approval, as consideration for services rendered by Trenwith, the Company shall pay to Trenwith upon interim approval of its retention by the Bankruptcy Court and completion of its Phase I services, an advisory fee equal to its hourly fees (recorded in one-half hour increments) through February 20, 2004 in an amount not to exceed $10,000 (the "Advisory Fee"). In addition, the Company agrees to reimburse Trenwith for all documented out-of-pocket expenses reasonably incurred by Trenwith and subject to the normal limits of the Bankruptcy Court in connection with the matters contemplated by this Agreement (collectively, the "Out-of-Pocket Expenses"). Out-of-Pocket Expenses shall include, but not be limited to, all reasonable travel expenses, duplicating charges, database usage, on-line service charges, messenger services, delivery services, meeting services, long distance telephone and facsimile charges, and all reasonable fees, disbursements and other charges incurred in connection with any actual or proposed Closing, or otherwise arising out of Trenwith's activities

3

under or contemplated by this Agreement.

(b)    Transaction Fee. If a Transaction (as hereinafter defined) is consummated by the closing of a transaction or series of transactions pursuant to a duly executed asset purchase agreement between the Company and any one or more winning bidders (collectively, a "Closing"), Trenwith shall be paid on an interim basis, in immediately available funds within five (5) business days after the Closing, a fee (a "Transaction Fee") based on the highest Transaction Source bid as described below:

(i) in the event the overall bulk bid wins the auctions and consummates a Closing, Trenwith shall receive four and one-half percent (4.5%) of the difference between the existing FM and FF stalking horse bid of $18,000,000and the highest Transaction Source bid, submitted during the bulk bidding auctions OR;

(ii) in the event the component auctions top the bulk auction, Trenwith shall receive four and one-half percent (4.5%) of the difference between the existing FM and FF intellectual property stalking horse component bid of $10 million and the highest Transaction Source bid submitted during the intellectual property auctions (the "FM/FF IP Auction"); PLUS the difference between the existing real estate stalking horse component bid of $8 million and the highest Transaction Source bid submitted during the real estate auction ("FM/FF Real Estate Auction").

(iii) In the event that a Transaction Source bids in only one of the Auctions (i.e. FM/FF IP or FM/FF Real Estate Assets), Trenwith shall still be entitled to its applicable Transaction Fee. In the event the stalking horse bidder in the LS auction is a Transaction Source, then the Transaction Fee shall be calculated on the total value of said Transaction Source's highest bid. Upon establishment of the LS stalking horse bid, Trenwith's Transaction Fee shall be calculated under the same terms and conditions as described herein for the FM and FF IP and Real Estate Auctions, as applicable. It is the Parties understanding that a Transaction Source need not be the winning bidder in any auction for Trenwith to deem to have earned a Transaction Fee.

4

Example 1:  In the event a bulk bidder wins the  Auctions and consummates a Closing, and during the Auctions  a  Transaction Source bids $25,000,000, Trenwith shall receive a Transaction Fee equal to $315,000 ($25,000,000 - $18,000,000 x 4.5%).  Further, if a non-Transaction Source continues to overbid and the final bid is, for example, $30,000,000, Trenwith's Transaction Fee shall still remain as $315,000.

Example 2:  In the event an intellectual property bidder wins the FM/FF IP Auction and consummates a closing, and during the FMFF IP Auction a Transaction Source for the intellectual property bids $15,000,000 , and a real estate bidder wins the FM/FF Real Estate Auction and consummates a closing, and during the Auctions a Transaction Source for the real estate bids $12,000,000, then Trenwith shall receive a Transaction Fee equal to $405,000 (($15,000,000 - $10,000,000x 4.5%) + ($12,000,000-8,000,000 x 4.5%)). If non-Transaction Source parties continue to overbid and the final bid is, for example, $30,000,000, Trenwith still receives only $405,000.

Although the Transaction Fee shall have been explicitly approved as reasonable in Committee's application to employ Trenwith as described in paragraph 5 of this Agreement, Trenwith will file with the Bankruptcy Court a fee application within two (2) weeks of its receipt of the payment of any Transaction Fee in order to inform the Bankruptcy Court of the consideration paid to Trenwith under this Agreement. For the purposes of this paragraph 4(b) the term "Transaction" shall mean the sale for cash of all or substantially all of Debtor's assets (whether in separate lots or in bulk) during the pendency of the Case, pursuant to Section 363 of the Bankruptcy Code, which sale or series of sales are approved by order of the Bankruptcy Court (the "Sale Order") and actually closes.  Any Transaction Fee earned by Trenwith pursuant to this subparagraph 4(b) shall be in addition to the Advisory Fee in subparagraph 4(a).

The parties acknowledge that a substantial professional commitment of time and effort will be required by Trenwith and its professionals hereunder, and that such commitment may foreclose other opportunities for Trenwith. Moreover, the actual time and commitment required for the engagement may vary substantially, creating "peak load" issues for Trenwith. Given the numerous issues which may arise in these cases, Trenwith's commitment to the variable level of time and effort necessary to address such issues, the expertise and capabilities of Trenwith that will be required in this engagement and the market rate for Trenwith's services of this nature whether in, or out of court, the parties agree that the fee

arrangement hereunder is reasonable, fairly compensates Trenwith and provides certainty to the Debtors' estates.

5.    **Bankruptcy Court.** The Committee shall, within three (3) court days of the execution of this Agreement by the Committee or its counsel, submit an application seeking an order from the Bankruptcy Court authorizing the employment of Trenwith pursuant to the terms of this Agreement as a professional person pursuant to (and subject to the standard of review of) Section 328(a) of the Bankruptcy Code, the Bankruptcy Rules and applicable local rules, and shall use its best efforts to cause such application to be considered on the most expedited basis  The employment application and the order authorizing employment of Trenwith shall be provided to Trenwith sufficiently in advance of their filing, and must be acceptable to Trenwith in its discretion. An acceptable order shall include, but shall not be limited to, the following terms and conditions: (i) that none of the fees shall constitute a "bonus" under applicable law, (ii) Trenwith shall keep time records in one-half hour increments of its work in this case in accordance with its practices in other chapter 11 cases, provided that Trenwith's agreement to maintain time records will not, however, affect the compensation due Trenwith, which compensation will be as set forth in the original or revised paragraph 4 of the engagement Agreement and will not be based on hours spent by Trenwith, (iii) that all of Trenwith's fees and expenses shall be treated as administrative expense claims in the Company's Bankruptcy Case; and (iv) that the terms and conditions of this Agreement are "reasonable." If the Order authorizing the employment of Trenwith is obtained, the Company shall pay all fees and expenses as promptly as possible in accordance with the terms of this Agreement, the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders, and the Committee and the Committee's counsel will work with Trenwith to promptly file any and all necessary applications regarding such fees and expenses with the Bankruptcy Court  The terms of this paragraph are solely for the benefit of Trenwith and may be waived, in whole or in part, only by Trenwith.

6.    **Termination.**  Trenwith's engagement shall automatically terminate upon the earlier of (i) the consummation of the last sale pursuant to the Auctions or any other sale process; or (ii) the confirmation of a plan of reorganization. After the automatic termination of this Agreement, Trenwith shall have no obligation to provide any additional services.  This Agreement is also terminable upon ten (10) business days written notice by the Committee or Trenwith, provided, however that if the Agreement is terminated by the Committee without reasonable cause, the Debtor shall still be obligated to pay to

6

Trenwith the fees and expenses that would have been due under the Agreement if it had not been terminated. The termination of this Agreement will not affect (a) the Debtor's reimbursement, contribution and other obligations set forth in this Agreement and (b) Trenwith's right to receive, and the Debtor's obligation to pay those fees earned for a Transaction that is consummated during the Tail Period as described in this Agreement. For purposes of this paragraph 6, "cause" for terminating Trenwith shall mean material misfeasance or material nonfeasance of its duties or intentional wrongful conduct by Trenwith or its agents, employees, managers or representatives. For purposes of this paragraph 6, the "Tail Period" shall mean the twelve (12) months following the effective date of termination of this Agreement; provided, that Trenwith shall be entitled to payment of the Transaction Fee for a transaction that closes during the Tail Period only if such Transaction incorporates a structure proposed or designed with Trenwith's involvement or is with a party identified by Trenwith or with which Trenwith had substantial involvement prior to termination. In the event that both Trenwith and another financial advisor(s) or investment banker(s) claim a fee with respect to a transaction that closes during the Tail Period, the Bankruptcy Court shall be the arbiter of any dispute with respect to such fees, including without limitation any disputes over to whom (if anyone) a fee should be paid and/or the amount(s) thereof. The preceeding provision does not prevent the payment of more than one Transaction Fee to more than one financial advisor.

7.    **Information.** The Committee acknowledges and agrees that, in rendering its services hereunder, Trenwith will be using and relying on information made available to it by the Debtors and their advisors (the "Information") (and information available from public sources and other sources deemed reliable by Trenwith) without independent verification thereof by Trenwith or independent appraisal by Trenwith. Trenwith does not assume responsibility for the accuracy or completeness of the Information or any other information regarding the Company.

8.    **Announcements.** Trenwith, upon a Closing, shall have the right to place advertisements in financial newspapers, journals and other marketing materials at its own expense describing the services to the Committee hereunder. Without limiting the foregoing, Trenwith may also publicize its services in connection herewith including without limitation, granting interviews with and providing non-confidential information to the financial press and other media.

9.    **CHOICE OF LAW; JURISDICTION.**    THIS AGREEMENT HAS BEEN
NEGOTIATED, EXECUTED AND DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN
MADE IN ILLINOIS. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN
ACCORDANCE WITH THE LAWS OF THE STATE OF ILLINOIS. THE PARTIES TO THIS
AGREEMENT WAIVE ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR
COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) RELATED
TO OR ARISING OUT OF THE ENGAGEMENT OF TRENWITH PURSUANT TO, OR THE
PERFORMANCE BY TRENWITH OF THE SERVICES CONTEMPLATED BY, THIS AGREEMENT.

10.    **Counterparts.**  For the convenience of the parties, any number of counterparts of this
Agreement may be executed via facsimile by the parties hereto. Each such counterpart shall be, and shall
be deemed to be, an original instrument, but all such counterparts taken together shall constitute one and
the same Agreement.

11.    **Severability.**  If it is found in a final judgment by a court of competent jurisdiction (not
subject to further appeal) that any term or provision hereof is invalid or unenforceable, (i) the remaining
terms and provisions hereof shall be unimpaired and shall remain in full force and effect and (ii) the
invalid or unenforceable provision or term shall be replaced by a term or provision that is valid and
enforceable and that comes closest to expressing the intention of such invalid or unenforceable term or
provision.

12.    **Entire Agreement.**  This Agreement embodies the entire agreement and understanding
of the parties hereto and supersedes any and all prior agreements, arrangements and understanding
relating to the matters provided for herein. No alteration, waiver, amendment, change or supplement
hereto shall be binding or effective unless the same is set forth in writing signed by a duly authorized
representative of each party.

13    [Intentionally Left Blank].

14.  **Corporate Responsibility.**  The obligations of Trenwith are solely corporate obligations, and
no officer, director, employee, agent, shareholder or controlling person of Trenwith shall be subjected to
any personal liability whatsoever to any person, nor will any such claim be asserted by or on behalf of any

8

other party to this Agreement or any person relying on the services provided hereunder. The Debtors' obligations with respect to any and all payments owing to Trenwith and the reimbursement, contribution and other similar obligations of the Debtors under this Agreement shall survive any termination of this Agreement.

TRENWITH SECURITIES, LLC

By: _____

Ricardo S. Chance

OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ARCHIBALD CANDY CORPORATION

By its counsel Kronish Lieb Weiner & Hellman LLP

_____

Cathy Hershkopf, Esq.

9

# EXHIBIT C

## TRENWITH SECURITIES, LLC

### Archibald Candy Corporation - Unsecured Creditors Committee

### Phase I - Summary of Services Rendered by Activity Code

February 11, 2004 - February 20, 2004

| Code # | Description | Hours |
|--------|-------------|-------|
| 1 | Research, Analysis, Document Preparation and Review | 58.50 |
| 2 | Interface with Debtor, Debtor Counsel, or Paragon Capital | 6.00 |
| 3 | Merger & Acquisition Activity | - |
| 4 | Preparation, Travel, and/or Attendance at Court Hearings | 19.00 |
| 5 | Interface with Creditors' Committee and/or Committee Professionals | 12.50 |
| 6 | Fee Application and Engagement Administration | 8.50 |
| | **TOTAL** | **104.50** |

### Summary of Services Rendered by Professional

| Name | Hours |
|------|-------|
| Ricardo Chance, Managing Director | 36.00 |
| Erik Jordan, Vice President | 24.00 |
| Jeffrey Showalter, Vice President | 44.50 |
| **TOTAL** | **104.50** |



EXHIBIT
C

**TRENWITH SECURITIES, LLC**
**Archibald Candy Corporation - Unsecured Creditors' Committee**
Phase I:  February 11, 2004 - February 20, 2004
Summary of Services by Activity Code and Professional

| Code | R. Chance | E. Jordan | J. Showalter | Total |
|------|-----------|-----------|--------------|-------|
| 1 | 8.50 | 18.00 | 32.00 | 58.50 |
| 2 | 1.50 | - | 4.50 | 6.00 |
| 3 | - | - | - | - |
| 4 | 19.00 | - | - | 19.00 |
| 5 | 5.00 | 3.00 | 4.50 | 12.50 |
| 6 | 2.00 | 3.00 | 3.50 | 8.50 |
| Total | 36.00 | 24.00 | 44.50 | 104.50 |

# TRENWITH SECURITIES, LLC

## Archibald Candy Corporation - Unsecured Creditors Committee

### Phase II - Summary of Services Rendered by Activity Code

February 21, 2004 - July 30, 2004

| Code # | Description | Hours |
|--------|-------------|-------|
| 1 | Research, Analysis, Document Preparation and Review | 160.00 |
| 2 | Interface with Debtor, Debtor Counsel, or Paragon Capital | 21.50 |
| 3 | Merger & Acquisition Activity | 166.00 |
| 4 | Preparation, Travel, and/or Attendance at Court Hearings | 88.50 |
| 5 | Interface with Creditors' Committee and/or Committee Professionals | 29.50 |
| 6 | Fee Application and Engagement Administration | 32.00 |
| | **TOTAL** | **497.50** |

### Summary of Services Rendered by Professional

| Name | Hours |
|------|-------|
| Ricardo Chance, Managing Director | 179.00 |
| Erik Jordan, Vice President | 166.50 |
| Jeffrey Showalter, Vice President | 152.00 |
| **TOTAL** | **497.50** |

**TRENWITH SECURITIES, LLC**

**Archibald Candy Corporation - Unsecured Creditors' Committee**

Phase II: February 21, 2004 - July 30, 2004

Summary of Services by Activity Code and Professional

| Code | R. Chance | E. Jordan | J. Showalter | Total |
|------|-----------|-----------|--------------|-------|
| 1 | 21.00 | 69.50 | 69.50 | 160.00 |
| 2 | 14.00 | 2.50 | 5.00 | 21.50 |
| 3 | 36.00 | 64.50 | 65.50 | 166.00 |
| 4 | 79.50 | 8.00 | 1.00 | 88.50 |
| 5 | 14.00 | 8.50 | 7.00 | 29.50 |
| 6 | 14.50 | 13.50 | 4.00 | 32.00 |
| Total | 179.00 | 166.50 | 152.00 | 497.50 |

NAME:    Ricardo S Chance
TITLE:   Managing Director

CLIENT:  Archibald Candy Corporation. Unsecured Creditor's Committee (UCC)

| Date | Activity | Code | Hours |
|------|----------|------|-------|
| 2/11/2004 | Call with Committee professionals | 5 | 1 00 |
| 2/13/2004 | Call with Paragon Capital | 3 | 1 50 |
| 2/13/2004 | Call with Committee professionals | 5 | 1 50 |
| 2/13/2004 | Team meeting to discuss case | 6 | 0 50 |
| 2/13/2004 | Review case documents | 1 | 2 00 |
| 2/16/2004 | Conference call w/Committee Counsel | 5 | 1 00 |
| 2/16/2004 | Call with Committee professionals | 5 | 0 50 |
| 2/16/2004 | Review of case documents | 1 | 2 00 |
| 2/17/2004 | Team meeting to discuss case | 6 | 1 00 |
| 2/17/2004 | Review of case documents | 1 | 1 00 |
| 2/18/2004 | Travel to court hearing | 4 | 6 00 |
| 2/18/2004 | Team meeting to discuss case | 6 | 0 50 |
| 2/18/2004 | Review of case documents | 1 | 3 00 |
| 2/18/2004 | Prepare committee presentation | 1 | 0 50 |
| 2/18/2004 | Conference call w/Unsecured Creditors Committee (UCC) | 5 | 1 00 |
| 2/19/2004 | Attendance at court hearing | 4 | 7 00 |
| 2/19/2004 | Return travel from court hearing | 4 | 6.00 |
| | **Phase 1 Total:** | | **36.00** |
| 2/23/2004 | Preparation of retention documents | 6 | 2 50 |
| 2/23/2004 | Conference call w/Unsecured Creditors Committee (UCC) | 5 | 1 00 |
| 2/23/2004 | Call with Committee professionals | 5 | 1 00 |
| 2/24/2004 | Review case documents | 1 | 1 00 |
| 2/24/2004 | Call with Committee professionals | 5 | 0 50 |
| 2/25/2004 | Review case documents | 1 | 1 00 |
| 2/27/2004 | Case administration - retention documents | 6 | 2 00 |
| 3/1/2004 | Team meeting to discuss case | 6 | 1 00 |
| 3/2/2004 | Team meeting to discuss case | 6 | 0 50 |
| 3/3/2004 | Team meeting to discuss case | 6 | 0 50 |
| 3/5/2004 | Calls to potential buyers | 3 | 1 00 |
| 3/5/2004 | Case administration | 6 | 1 00 |
| 3/7/2004 | Draft marketing announcements | 3 | 0 50 |
| 3/8/2004 | Review of case documents | 1 | 1 50 |
| 3/8/2004 | Calls / process potential buyers | 3 | 7 50 |
| 3/9/2004 | Calls / process potential buyers | 3 | 5 00 |
| 3/9/2004 | Review of case documents | 1 | 1 50 |
| 3/10/2004 | Calls / process potential buyers | 3 | 4 00 |
| 3/10/2004 | Review of case documents | 1 | 1 00 |
| 3/11/2004 | Calls / process potential buyers | 3 | 3 00 |
| 3/11/2004 | Call with Committee professionals | 5 | 1 00 |
| 3/12/2004 | Calls / process potential buyers | 3 | 1 00 |
| 3/12/2004 | Review of case documents | 1 | 1 00 |
| 3/12/2004 | Prepare committee presentation | 1 | 0 50 |
| 3/12/2004 | Call with Committee professionals | 5 | 0 50 |
| 3/13/2004 | Prepare committee presentation | 1 | 0 50 |
| 3/15/2004 | Conference call w/Unsecured Creditors Committee (UCC) | 5 | 1 00 |
| 3/15/2004 | Call with Committee professionals | 5 | 1 00 |
| 3/15/2004 | Preparation for court hearing | 4 | 4 50 |
| 3/16/2004 | Calls / process potential buyers | 3 | 0 50 |
| 3/16/2004 | Calls with Committee professionals | 4 | 1 00 |
| 3/16/2004 | Preparation for court hearing | 4 | 6 00 |
| 3/17/2004 | Travel to court hearing and preparation for court hearing | 4 | 10 00 |
| 3/18/2004 | Preparation and participation in court hearing | 4 | 8 00 |
| 3/18/2004 | Travel from court hearing | 4 | 8 00 |
| 3/19/2004 | Committee Conference Call | 5 | 0 50 |

NAME:     Ricardo S. Chance
TITLE:    Managing Director

CLIENT:   Archibald Candy Corporation, Unsecured Creditor's Committee (UCC)

| Date | Activity | Code | Hours |
|------|----------|------|-------|
| 3/19/2004 | Call with Committee professionals | 5 | 0.50 |
| 3/19/2004 | Recovery analysis | 1 | 0.50 |
| 3/19/2004 | Calls with Paragon | 2 | 0.50 |
| 3/22/2004 | Draft retention order | 6 | 1.00 |
| 3/22/2004 | Review LS and FM/FF reports | 1 | 0.50 |
| 3/22/2004 | Negotiate retention order | 6 | 2.00 |
| 3/23/2004 | Review drafts of order and discuss with Committee counsel | 6 | 3.00 |
| 3/23/2004 | Call with debtor, bondholders counsel and other professionals re: order | 2 | 0.50 |
| 3/24/2004 | Review bondholders counter order and side letter | 1 | 1.00 |
| 3/24/2004 | Call with Committee counsel re: bondholders counter | 5 | 0.50 |
| 3/24/2004 | Review additional letter drafts | 1 | 1.00 |
| 3/25/2004 | Preparation for court hearing | 4 | 1.00 |
| 3/25/2004 | Review bid procedures and call with Paragon | 2 | 1.00 |
| 3/25/2004 | Call with Mark Hershey, potential bidder for equipment | 3 | 0.50 |
| 3/26/2004 | Call with Paragon | 2 | 1.00 |
| 3/29/2004 | Call with Debtor counsel re: bidding procedures | 2 | 0.50 |
| 3/29/2004 | Review bidding procedures | 1 | 0.50 |
| 3/30/2004 | Review bids, asset purchase agreements (R Stover, Gordon Bros, etc.) | 1 | 2.00 |
| 3/31/2004 | Travel to Chicago for auction and sale hearing | 4 | 8.00 |
| 4/1/2004 | FM/FF Auction | 3 | 12.00 |
| 4/2/2004 | Return travel from Chicago to Orange County | 4 | 8.00 |
| 4/8/2004 | Call with Committee counsel re:  LS sale process | 5 | 0.50 |
| 4/8/2004 | Call with Paragon | 2 | 0.50 |
| 4/12/2004 | Conference call w/ Paragon | 2 | 1.50 |
| 4/13/2004 | Conference call w/Unsecured Creditors Committee (UCC) | 5 | 1.00 |
| 4/26/2004 | Call with potential bidders | 3 | 1.00 |
| 4/27/2004 | Conference call w/Unsecured Creditors Committee (UCC) | 5 | 1.50 |
| 5/3/2004 | Call with Committee counsel re:  sale process and lease issues | 5 | 0.50 |
| 5/19/2004 | Meeting to discuss strategy based on Indications of Interest | 6 | 1.00 |
| 5/21/2004 | Review LOIs and team meeting re: sale process | 1 | 1.00 |
| 5/24/2004 | Review LOIs and call with Committee counsel | 1 | 1.00 |
| 5/25/2004 | Call w/ Paragon | 2 | 2.00 |
| 6/2/2004 | Review of new Indications of Interest | 1 | 1.00 |
| 6/3/2004 | Conference call w/ UCC | 5 | 1.50 |
| 6/10/2004 | Call with Paragon | 2 | 1.00 |
| 6/11/2004 | Call with Committee counsel re: stalking horse bid | 5 | 1.00 |
| 6/17/2004 | Exchange email correspondence with Paragon re: sale process | 2 | 0.50 |
| 6/18/2004 | Call with Paragon re:  bid procedures and sale process | 2 | 0.50 |
| 6/21/2004 | Review Committee accountants' financial reports | 1 | 0.50 |
| 6/22/2004 | Review stalking horse bid and asset purchase agreement | 1 | 2.00 |
| 6/24/2004 | Review financial documents and call with Committee accountants | 1 | 2.00 |
| 6/24/2004 | Conference call w/ UCC | 5 | 0.50 |
| 7/13/2004 | Call with Paragon re: bids | 2 | 0.50 |
| 7/20/2004 | Travel to Toronto for auction | 4 | 8.00 |
| 7/21/2004 | Meeting with debtor and other professionals re:  auction | 2 | 4.00 |
| 7/22/2004 | Preparation for auction and participation in auction | 4 | 9.00 |
| 7/23/2004 | Return travel from Toronto to Los Angeles | 4 | 8.00 |
| | **Phase II Total** | | **179.00** |

**NAME:** Erik R. Jordan
**TITLE:** Vice President

**CLIENT:** Archibald Candy Corporation, Unsecured Creditor's Committee (UCC)

| Date | Activity | Code | Hours |
|------|----------|------|-------|
| 2/13/2004 | Conference call with Committee professionals | 5 | 0 50 |
| 2/13/2004 | Team meeting to discuss case | 6 | 0 50 |
| 2/13/2004 | Review case documents | 1 | 2 00 |
| 2/16/2004 | Conference call w/Committee Counsel | 5 | 1 00 |
| 2/16/2004 | Call with Committee professionals | 5 | 0 50 |
| 2/16/2004 | Review of case documents | 1 | 2 00 |
| 2/17/2004 | Team meeting to discuss case | 6 | 1 00 |
| 2/17/2004 | Review of case documents (e g Paragon materials, etc ) | 1 | 6 00 |
| 2/17/2004 | Prepare committee presentation | 1 | 2 00 |
| 2/18/2004 | Team meeting to discuss case | 6 | 0 50 |
| 2/18/2004 | Review of case documents | 1 | 2 00 |
| 2/18/2004 | Prepare committee presentation | 1 | 4 00 |
| 2/18/2004 | Conference call w/Unsecured Creditors Committee (UCC) | 5 | 1 00 |
| 2/20/2004 | Case administration | 6 | 1.00 |
| | **Phase I Total:** | | **24.00** |
| 2/23/2004 | Conference call w/Unsecured Creditors Committee (UCC) | 5 | 0 50 |
| 2/23/2004 | Call with Committee professionals | 5 | 0 50 |
| 2/24/2004 | Research potential buyers | 1 | 2 00 |
| 2/24/2004 | Review case documents | 1 | 1 00 |
| 2/24/2004 | Call with Committee professionals | 5 | 0 50 |
| 2/25/2004 | Research potential buyers | 1 | 1 00 |
| 2/25/2004 | Review case documents | 1 | 1 00 |
| 2/26/2004 | Review case documents | 1 | 1 00 |
| 2/26/2004 | Research potential buyers | 1 | 1 00 |
| 2/27/2004 | Research potential buyers | 1 | 1 00 |
| 2/27/2004 | Case administration | 6 | 1 00 |
| 3/1/2004 | Team meeting to discuss case | 6 | 0 50 |
| 3/1/2004 | Research potential buyers | 1 | 2 00 |
| 3/2/2004 | Research potential buyers | 1 | 2 00 |
| 3/2/2004 | Team meeting to discuss case | 6 | 0 50 |
| 3/3/2004 | Research potential buyers | 1 | 1 00 |
| 3/3/2004 | Team meeting to discuss case | 6 | 0 50 |
| 3/4/2004 | Research potential buyers | 1 | 2 00 |
| 3/5/2004 | Calls / process potential buyers | 3 | 6 00 |
| 3/5/2004 | Draft marketing items | 1 | 1 00 |
| 3/5/2004 | Research potential buyers | 1 | 2 00 |
| 3/7/2004 | Calls / process potential buyers | 3 | 5 00 |
| 3/8/2004 | Calls / process potential buyers | 3 | 6.00 |
| 3/8/2004 | Review of case documents | 1 | 2 00 |
| 3/9/2004 | Calls / process potential buyers | 3 | 6 00 |
| 3/9/2004 | Review of case documents | 1 | 1.00 |
| 3/10/2004 | Calls / process potential buyers | 3 | 6 00 |
| 3/10/2004 | Review of case documents | 1 | 1 00 |
| 3/11/2004 | Calls / process potential buyers | 3 | 6 00 |
| 3/11/2004 | Review of case documents | 1 | 1 00 |
| 3/12/2004 | Calls / process potential buyers | 3 | 4 00 |
| 3/12/2004 | Review of case documents | 1 | 1 00 |
| 3/12/2004 | Prepare committee presentation | 1 | 1 50 |
| 3/13/2004 | Prepare committee presentation | 1 | 4 00 |
| 3/15/2004 | Committee conference call | 5 | 1 00 |
| 3/15/2004 | Call with Committee professionals | 5 | 1 00 |
| 3/15/2004 | Preparation for court hearing | 4 | 8 00 |
| 3/16/2004 | Calls / process potential buyers | 3 | 1 00 |

**NAME:**    Erik R. Jordan
**TITLE:**    Vice President

**CLIENT:**    Archibald Candy Corporation, Unsecured Creditor's Committee (UCC)

| Date | Activity | Code | Hours |
|------|----------|------|-------|
| 3/17/2004 | Calls / process potential buyers | 3 | 1 00 |
| 3/18/2004 | Calls / process potential buyers | 3 | 1 00 |
| 3/19/2004 | Case administration | 6 | 1 00 |
| 3/19/2004 | Committee conference call | 5 | 0 50 |
| 3/19/2004 | Call with Committee professionals | 5 | 0 50 |
| 3/19/2004 | Recovery analysis | 1 | 2 50 |
| 4/5/2004 | Laura Secord document review | 1 | 4 00 |
| 4/6/2004 | Research potential buyers | 1 | 4 00 |
| 4/7/2004 | Research potential buyers | 1 | 4 00 |
| 4/8/2004 | Research potential buyers | 1 | 2 00 |
| 4/8/2004 | Prepare and organize for Laura Secord process | 1 | 4 00 |
| 4/10/2004 | Doument review and preparation | 1 | 5 00 |
| 4/11/2004 | Doument review and preparation | 1 | 3 00 |
| 4/12/2004 | Conference call w/ Paragon | 2 | 1 50 |
| 4/12/2004 | Coordination of call lists with Paragon | 2 | 1 00 |
| 4/13/2004 | Conference call w/Unsecured Creditors Committee (UCC) | 5 | 1 00 |
| 4/14/2004 | Doument review and preparation | 1 | 1 00 |
| 4/20/2004 | Calls / process potential buyers | 3 | 1 50 |
| 4/21/2004 | Calls / process potential buyers | 3 | 1 50 |
| 4/22/2004 | Calls / process potential buyers | 3 | 1 50 |
| 4/27/2004 | Conference call w/Unsecured Creditors Committee (UCC) | 5 | 1 50 |
| 4/27/2004 | Doument review and preparation | 1 | 2 50 |
| 4/28/2004 | Calls / process potential buyers | 3 | 1 50 |
| 4/29/2004 | Calls / process potential buyers | 3 | 2 00 |
| 4/29/2004 | Research potential buyers | 1 | 3 00 |
| 4/30/2004 | Calls / process potential buyers | 3 | 2 00 |
| 5/3/2004 | Doument review and preparation | 1 | 1 00 |
| 5/3/2004 | Calls / process potential buyers | 3 | 1 50 |
| 5/4/2004 | Calls / process potential buyers | 3 | 1 50 |
| 5/5/2004 | Calls / process potential buyers | 3 | 1 50 |
| 5/6/2004 | Calls / process potential buyers | 3 | 1 50 |
| 5/10/2004 | Doument review and preparation | 1 | 1 00 |
| 5/10/2004 | Calls / process potential buyers | 3 | 1 50 |
| 5/11/2004 | Calls / process potential buyers | 3 | 2 00 |
| 5/18/2004 | Review of Indications of Interest | 1 | 1 00 |
| 5/19/2004 | Meeting to discuss strategy based on Indications of Interest | 6 | 1 00 |
| 5/21/2004 | Calls / process potential buyers | 3 | 1 50 |
| 5/24/2004 | Calls / process potential buyers | 3 | 1 50 |
| 5/27/2004 | Review presentation to UCC | 1 | 1 00 |
| 6/3/2004 | Conference call w/ UCC | 5 | 1 50 |
| 6/14/2004 | Document review | 1 | 0 50 |
| 6/21/2004 | Review financial documents | 1 | 0 50 |
| 7/27/2004 | Updating timesheets and drafting fee application | 6 | 2 00 |
| 7/28/2004 | Updating timesheets and drafting fee application | 6 | 2 00 |
| 7/29/2004 | Updating timesheets and drafting fee application | 6 | 3 00 |
| 7/30/2004 | Drafting fee application | 6 | 2.00 |
| | **Phase II Total** | | **166.50** |

**NAME:** Jeffrey C Showalter
**TITLE:** Vice President

**CLIENT:** Archibald Candy Corporation, Unsecured Creditor's Committee (UCC)

| Date | Activity | Code | Hours |
|------|----------|------|-------|
| 2/11/2004 | Document search from PACER | 1 | 1 00 |
| 2/11/2004 | Call with Committee professionals | 5 | 2 00 |
| 2/12/2004 | Communications with Paragon to begin process | 2 | 0 50 |
| 2/12/2004 | Review of case background and legal documents | 1 | 4 00 |
| 2/13/2004 | Conversation with Paragon regarding access to information and deliverables | 2 | 1 00 |
| 2/13/2004 | Team meeting to discuss case | 6 | 0 50 |
| 2/13/2004 | Review case documents | 1 | 4 00 |
| 2/16/2004 | Conference call w/Committee Counsel | 5 | 1 00 |
| 2/16/2004 | Call with Committee professionals | 5 | 0 50 |
| 2/16/2004 | Review of case documents | 1 | 2 00 |
| 2/16/2004 | Begin preparation of peer review presentation | 1 | 7 00 |
| 2/17/2004 | Call with Paragon to discuss case | 2 | 3 00 |
| 2/17/2004 | Team meeting to discuss case | 6 | 1 00 |
| 2/17/2004 | Review of case documents (e g  Paragon materials, etc ) | 1 | 4 00 |
| 2/17/2004 | Peer review presentation work | 1 | 1.50 |
| 2/18/2004 | Team meeting to discuss case | 6 | 0 50 |
| 2/18/2004 | Review of case documents | 1 | 2 00 |
| 2/18/2004 | Peer review presentation work | 1 | 6 50 |
| 2/18/2004 | Conference call w/Unsecured Creditors Committee (UCC) | 5 | 1 00 |
| 2/20/2004 | Case administration | 6 | 1.50 |
| | **Phase I Total:** | | **44.50** |
| 2/23/2004 | Conference call w/Unsecured Creditors Committee (UCC) | 5 | 1 00 |
| 2/23/2004 | Call with Committee professionals | 5 | 1 00 |
| 2/24/2004 | Research potential buyers | 1 | 1 50 |
| 2/25/2004 | Research potential buyers | 1 | 1 00 |
| 2/26/2004 | Research potential buyers | 1 | 2 00 |
| 2/27/2004 | Research potential buyers | 1 | 1 50 |
| 3/1/2004 | Team meeting to discuss case | 6 | 2 00 |
| 3/1/2004 | Research potential buyers | 1 | 0 50 |
| 3/2/2004 | Research potential buyers | 1 | 1 50 |
| 3/2/2004 | Team meeting to discuss case | 6 | 0 50 |
| 3/3/2004 | Research potential buyers | 1 | 2 50 |
| 3/3/2004 | Team meeting to discuss case | 6 | 0 50 |
| 3/4/2004 | Research potential buyers | 1 | 2 00 |
| 3/5/2004 | Calls / process potential buyers | 3 | 4 00 |
| 3/8/2004 | Calls / process potential buyers | 3 | 4 00 |
| 3/9/2004 | Calls / process potential buyers | 3 | 3 50 |
| 3/9/2004 | Review of case documents | 1 | 1 50 |
| 3/10/2004 | Calls / process potential buyers | 3 | 3 50 |
| 3/12/2004 | Calls / process potential buyers | 3 | 2 50 |
| 3/15/2004 | Conference call w/Unsecured Creditors Committee (UCC) | 5 | 1 00 |
| 3/16/2004 | Preparation for court hearing | 4 | 1 00 |
| 3/19/2004 | Recovery analysis | 1 | 0 50 |
| 4/5/2004 | Laura Secord document review | 1 | 4 00 |
| 4/6/2004 | Research potential buyers | 1 | 4 00 |
| 4/7/2004 | Research potential buyers | 1 | 4 00 |
| 4/8/2004 | Research potential buyers | 1 | 2 00 |
| 4/8/2004 | Prepare and organize for Laura Secord process | 1 | 4 00 |
| 4/10/2004 | Document review and preparation | 1 | 5 00 |

**NAME:** Jeffrey C Showalter
**TITLE:** Vice President

**CLIENT:** Archibald Candy Corporation, Unsecured Creditor's Committee (UCC)

| Date | Activity | Code | Hours |
|------|----------|------|-------|
| 4/11/2004 | Doument review and preparation | 1 | 3 00 |
| 4/12/2004 | Conference call w/ Paragon | 2 | 1 50 |
| 4/12/2004 | Coordination of call lists with Paragon | 2 | 1 00 |
| 4/13/2004 | Conference call w/Unsecured Creditors Committee (UCC) | 5 | 1 00 |
| 4/14/2004 | Doument review and preparation | 1 | 1 00 |
| 4/20/2004 | Calls / process potential buyers | 3 | 4 00 |
| 4/21/2004 | Calls / process potential buyers | 3 | 3 00 |
| 4/22/2004 | Calls / process potential buyers | 3 | 3 00 |
| 4/22/2004 | Call list update and coordination with Paragon | 2 | 0 50 |
| 4/26/2004 | Calls / process potential buyers | 3 | 5 00 |
| 4/27/2004 | Conference call w/Unsecured Creditors Committee (UCC) | 5 | 1 50 |
| 4/27/2004 | Doument review and preparation | 1 | 3 00 |
| 4/28/2004 | Calls / process potential buyers | 3 | 2 00 |
| 4/29/2004 | Calls / process potential buyers | 3 | 2 50 |
| 4/29/2004 | Research potential buyers | 1 | 2 00 |
| 4/30/2004 | Calls / process potential buyers | 3 | 3 00 |
| 4/30/2004 | Prepare presentation to UCC | 1 | 2 00 |
| 5/3/2004 | Doument review and preparation | 1 | 1 00 |
| 5/3/2004 | Calls / process potential buyers | 3 | 2 00 |
| 5/4/2004 | Calls / process potential buyers | 3 | 3 00 |
| 5/5/2004 | Calls / process potential buyers | 3 | 2 00 |
| 5/6/2004 | Calls / process potential buyers | 3 | 2 00 |
| 5/7/2004 | Calls / process potential buyers | 3 | 2 00 |
| 5/10/2004 | Doument review and preparation | 1 | 1 00 |
| 5/10/2004 | Calls / process potential buyers | 3 | 1 50 |
| 5/11/2004 | Calls / process potential buyers | 3 | 2 00 |
| 5/12/2004 | Calls / process potential buyers | 3 | 3 00 |
| 5/13/2004 | Calls / process potential buyers | 3 | 2 00 |
| 5/14/2004 | Calls / process potential buyers | 3 | 2 50 |
| 5/18/2004 | Review of Indications of Interest | 1 | 3 00 |
| 5/19/2004 | Meeting to discuss strategy based on Indications of Interest | 6 | 1 00 |
| 5/21/2004 | Calls / process potential buyers | 3 | 1 50 |
| 5/24/2004 | Calls / process potential buyers | 3 | 2 00 |
| 5/25/2004 | Call w/ Paragon | 2 | 2 00 |
| 5/25/2004 | Prepare presentation to UCC | 1 | 5 00 |
| 5/26/2004 | Prepare presentation to UCC | 1 | 5 00 |
| 5/27/2004 | Prepare presentation to UCC | 1 | 2 00 |
| 5/31/2004 | Doument review and preparation | 1 | 0 50 |
| 6/1/2004 | Review of new Indications of Interest | 1 | 1 00 |
| 6/3/2004 | Conference call w/ UCC | 5 | 1 50 |
| 6/4/2004 | Doument review and preparation | 1 | 0 50 |
| 6/8/2004 | Doument review and preparation | 1 | 0 50 |
| 6/10/2004 | Doument review and preparation | 1 | 1 00 |
| 6/14/2004 | Doument review and preparation | 1 | 0 50 |
| | **Phase II Total** | | **152.00** |

Trenwith Securities, LLC
Archibald Candy Corporation Unsecured Creditor's Committee (UCC)
Summary of Expenses and Professional Fees
February 11, 2004 - July 30, 2004

**TRENWITH TOTAL**

| | | |
|---|---|---|
| Airfare (economy) | $ | 3,118.45 |
| Lodging | | 2,049.31 |
| Meals | | 383.57 |
| Taxi, Mileage, Parking, Car Rental | | 635.20 |
| **TOTAL** | **$** | **6,186.53** |

**TRENWITH TOTAL**

| | | |
|---|---|---|
| Advisory Fees (Phase I) | $ | 10,000.00 |
| Transaction Fees (FM/FF, LS) | $ | 100,000.00 |
| Total Expenses | | 6,186.53 |
| **TOTAL** | **$** | **116,186.53** |

**RICARDO S. CHANCE**

| | | |
|---|---|---|
| Airfare (economy) | $ | 3,118.45 |
| Lodging | | 2,049.31 |
| Meals | | 383.57 |
| Taxi, Mileage, Parking, Car Rental | | 635.20 |
| **TOTAL** | **$** | **6,186.53** |

**ERIK R. JORDAN**

| | | |
|---|---|---|
| Airfare (economy) | $ | - |
| Lodging | | - |
| Meals | | - |
| Taxi, Mileage, Parking, Car Rental | | - |
| **TOTAL** | **$** | **-** |

**JEFFREY C. SHOWALTER**

| | | |
|---|---|---|
| Airfare (economy) | $ | - |
| Lodging | | - |
| Meals | | - |
| Taxi, Mileage, Parking, Car Rental | | - |
| **TOTAL** | **$** | **-** |

Trenwith Securities, LLC
Archibald Candy Corporation - Unsecured Creditor's Committee (UCC)
Itemized List of Out of Pocket Expenses
May 1, 2004 - July 30, 2004

| | Dates | | | | | |
|---|---|---|---|---|---|---|
| Item# | From | To | Type of Expense | Purpose | Employee | Amount |
| 1 | 7/20/04 | 7/23/04 | Roundtrip Airfare (economy) | Court hearing | Ricardo S Chance | $ 518 03 |
| 2 | 7/20/04 | 7/23/04 | Roundtrip Airfare Booking Charge | Court hearing | Ricardo S Chance | $ 24 95 |
| 2 | 7/20/04 | 7/20/04 | Transportation - Taxi (airport) | Court hearing | Ricardo S Chance | $ 111 60 |
| 3 | 7/20/04 | 7/23/04 | Hotel | Court hearing | Ricardo S Chance | $ 853 40 |
| 4 | 7/21/04 | 7/21/04 | Meals (R Chance and C Hersheopf) | Court hearing | Ricardo S Chance | $ 139 19 |
| 5 | 7/23/04 | 7/23/04 | Transportation - Taxi (airport) | Court hearing | Ricardo S Chance | $ 118 60 |
| 6 | 7/22/04 | 7/22/04 | Transportation - Taxi | Court hearing | Ricardo S. Chance | $ 4.00 |

**Total Expenses  $   1,769.77**

Trenwith Securities, LLC
Archibald Candy Corporation - Unsecured Creditor's Committee (UCC)
Itemized List of Out of Pocket Expenses
February 11, 2004 - April 30, 2004

| Item# | From | To | Type of Expense | Purpose | Employee | Amount | |
|---|---|---|---|---|---|---|---|
| | | Dates | | | | | |
| 1 | 2/17/04 | 2/17/04 | Roundtrip Airfare (economy) | Court hearing | Ricardo S Chance | $ | 815 88 |
| 2 | 2/17/04 | 2/17/04 | Roundtrip Airfare Booking Charge | Court hearing | Ricardo S Chance | $ | 50 00 |
| 3 | 2/18/04 | 2/20/04 | Hotel | Court hearing | Ricardo S Chance | $ | 457 30 |
| 4 | 2/18/04 | 2/20/04 | Meals (R Chance, C Hershcopf) | Court hearing | Ricardo S Chance | $ | 94 87 |
| 5 | 2/18/04 | 2/18/04 | Transportation - Taxi | Court hearing | Ricardo S Chance | $ | 5 00 |
| 6 | 2/18/04 | 2/18/04 | Transportation - Taxi | Court hearing | Ricardo S Chance | $ | 40 00 |
| 7 | 2/18/04 | 2/18/04 | Transportation - Taxi | Court hearing | Ricardo S Chance | $ | 5 00 |
| 8 | 2/19/04 | 2/19/04 | Transportation - Taxi | Court hearing | Ricardo S Chance | $ | 5 00 |
| 9 | 2/19/04 | 2/19/04 | Transportation - Taxi | Court hearing | Ricardo S Chance | $ | 5 00 |
| 10 | 2/19/04 | 2/19/04 | Transportation - Taxi | Court hearing | Ricardo S Chance | $ | 5 00 |
| 11 | 2/20/04 | 2/20/04 | Transportation - Taxi | Court hearing | Ricardo S Chance | $ | 40 00 |
| 12 | 2/18/04 | 2/20/04 | Airport parking | Court hearing | Ricardo S Chance | $ | 48 00 |
| 13 | 2/20/04 | 2/20/04 | Meals | Court hearing | Ricardo S Chance | $ | 14 90 |
| 14 | 2/18/04 | 2/18/04 | Meals | Court hearing | Ricardo S Chance | $ | 10 65 |
| 15 | 2/18/04 | 2/18/04 | Meals | Court hearing | Ricardo S Chance | $ | 4 40 |
| 16 | 2/20/04 | 2/20/04 | Meals | Court hearing | Ricardo S Chance | $ | 3 50 |
| 17 | 2/18/04 | 2/18/04 | Meals | Court hearing | Ricardo S Chance | $ | 1 76 |
| 18 | 2/20/04 | 2/20/04 | Meals | Court hearing | Ricardo S Chance | $ | 1 96 |
| 19 | 3/17/04 | 3/18/04 | Roundtrip Airfare (economy) | Court hearing | Ricardo S Chance | $ | 815 88 |
| 20 | 3/17/04 | 3/18/04 | Roundtrip Airfare Booking Charge | Court hearing | Ricardo S Chance | $ | 50 00 |
| 21 | 3/17/04 | 3/18/04 | Hotel | Court hearing | Ricardo S Chance | $ | 212 37 |
| 22 | 3/17/04 | 3/17/04 | Meals | Court hearing | Ricardo S Chance | $ | 13 00 |
| 23 | 3/18/04 | 3/18/04 | Meals | Court hearing | Ricardo S Chance | $ | 5 59 |
| 24 | 3/18/04 | 3/18/04 | Meals | Court hearing | Ricardo S Chance | $ | 6 05 |
| 25 | 3/18/04 | 3/18/04 | Meals | Court hearing | Ricardo S Chance | $ | 7 47 |
| 26 | 3/17/04 | 3/17/04 | Transportation - Taxi (airport) | Court hearing | Ricardo S Chance | $ | 75 00 |
| 27 | 3/18/04 | 3/18/04 | Transportation - Taxi | Court hearing | Ricardo S Chance | $ | 5 00 |
| 28 | 3/18/04 | 3/18/04 | Transportation - Taxi | Court hearing | Ricardo S Chance | $ | 5 00 |
| 29 | 3/17/04 | 3/18/04 | Airport parking | Court hearing | Ricardo S Chance | $ | 33 00 |
| 30 | 3/31/04 | 4/2/04 | Roundtrip Airfare (economy) | Court hearing | Ricardo S Chance | $ | 558 70 |
| 31 | 3/31/04 | 4/2/04 | Roundtrip Airfare Booking Charge | Court hearing | Ricardo S Chance | $ | 50 00 |
| 32 | 3/31/04 | 4/2/04 | Airfare Flight Change Fee - Depart | Court hearing | Ricardo S Chance | $ | 135 01 |
| 33 | 3/31/04 | 4/2/04 | Airfare Flight Change Fee - Return | Court hearing | Ricardo S Chance | $ | 100 00 |
| 34 | 3/31/04 | 4/2/04 | Hotel | Court hearing | Ricardo S Chance | $ | 526 24 |
| 35 | 3/31/04 | 4/1/04 | Meals | Court hearing | Ricardo S Chance | $ | 43 60 |
| 36 | 3/31/04 | 4/2/04 | Meals | Court hearing | Ricardo S Chance | $ | 22 80 |
| 37 | 3/31/04 | 4/2/04 | Meals | Court hearing | Ricardo S Chance | $ | 8 89 |
| 38 | 3/31/04 | 4/2/04 | Meals | Court hearing | Ricardo S Chance | $ | 4 94 |
| 39 | 3/31/04 | 3/31/04 | Transportation from Airport - Taxi | Court hearing | Ricardo S Chance | $ | 35 00 |
| 40 | 4/2/04 | 4/2/04 | Transportation to Airport - Taxi | Court hearing | Ricardo S Chance | $ | 38 00 |
| 41 | 3/31/04 | 3/31/04 | Transportation - Taxi | Court hearing | Ricardo S Chance | $ | 4 00 |
| 42 | 3/31/04 | 3/31/04 | Transportation - Taxi | Court hearing | Ricardo S Chance | $ | 4 00 |
| 43 | 4/1/04 | 4/1/04 | Transportation - Taxi | Court hearing | Ricardo S Chance | $ | 4 00 |
| 44 | 4/1/04 | 4/1/04 | Transportation - Taxi | Court hearing | Ricardo S Chance | $ | 4 00 |
| 45 | 3/31/04 | 4/2/04 | Airport parking | Court hearing | Ricardo S Chance | $ | 41 00 |

**Total Expenses  $    4,416.76**