## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In re: | ) Case No. 04 B 03200 |
| | ) |
| ARCHIBALD CANDY CORPORATION AND | ) Chapter 11 |
| ARCHIBALD MIDDLE HOLDINGS CORP. | ) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) Hon. Pamela S. Hollis |
| | ) |
| | ) Hearing Date: February 3, 2005 at |
| | )               10:00 a.m. |
| | ) Objection Deadline: January 31, 2005 |
| | ) |

### FINAL APPLICATION OF PARAGON CAPITAL PARTNERS, LLC, INVESTMENT BANKER FOR THE DEBTORS, FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES AND TO LIMIT NOTICE

Name of Applicant:                                   Paragon Capital Partners, LLC

Authorized to Provide
Professional Services to:                            Debtors and Debtors-in-Possession

Date of Retention:                                   February 11, 2004, effective as of January 29, 2004

Final Period for Which Compensation
and Reimbursement Is Sought:                         January 20, 2004 through August 6, 2004

    Amount of Fees Sought as Actual,
    Reasonable and Necessary for
    Interim Period:                                  $    1,309,951.02

    Amount of Expenses Sought as
    Actual, Reasonable and Necessary
    for Interim Period:                              $    19,918.35

This is a(n):                    _____ interim        __X__ final application

Paragon Capital Partners, LLC. ("Paragon" or the "Applicant"), investment banker to the above-captioned debtors and debtors in possession (the "Debtors"), pursuant to sections 105, 330 and 331 of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code"), Rules 2002(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 5082-1, hereby submits this final fee application (the "Application") seeking allowance of compensation for services rendered and reimbursement of expenses incurred for the final application period January 28, 2004 through and including August 6, 2004 (the "Application Period") and approval of the notice give of the Application. Paragon respectfully requests that this Court enter an order approving, on a final basis, compensation of $1,309,951.02[1] for professional services rendered and reimbursement of $19,918.35 for ordinary and necessary expenses incurred during the Application Period. In support of the foregoing request, the Applicant respectfully states as follows:

### Introduction and Summary Overview

**Paragon – Debtors Engagement**

1.     Paragon has served as investment banker to Debtors since April 2003, dedicating substantial firm resources to the Debtors and providing high-quality, creative and personal investment banking marketing services. Throughout its relationship with the Debtors, Paragon provided important services relating to the sale of: (1) the Debtors' principal operational assets in the United States, consisting of the Fannie May and Fanny Farmer intellectual property, together with associated real property interests (the "FM/FF Assets"); and (2) the Debtors' intellectual property interests relating to the Laura Secord brand ("LS") (the "LS US Assets" and, collectively with the FM/FF Assets, the "Assets"). Paragon marketed the Assets to a broad universe of potential purchasers, assisted in the selection of stalking horse bidders, and facilitated

---

[1]     All amounts are in United States Dollars unless specifically noted otherwise.

in the organization and execution of spirited and successful auctions, the effect of which was to maximize value of the Assets.

2. With the efforts of Paragon, the Debtors were able to quickly close the sales of the Assets, providing material returns to the Debtors' secured creditors. Paragon was instrumental in the process of enhancing value for all of the Debtors' parties in interest.

## Value Added by Paragon

3. Paragon added value to every aspect of the Debtors' Chapter 11 Cases by: (a) collaborating with the Debtors' other professionals on sale strategy; (b) identifying and soliciting proposals from various purchasers and potential purchasers; (c) being involved in strategic development regarding process and courses of action; (d) engaging in comprehensive modeling and analysis, which provided an assessment tool for the Debtors regarding the sales of the Assets; (e) working with the Debtors' chief financial officer and chief restructuring officer throughout these Chapter 11 Cases; and (f) managing each stage of the sale processes. As a result of Paragon's efforts in these Chapter 11 Cases, Paragon was awarded the U.S. Middle Market Deal of the Year award at the M&A Advisory Awards ceremony held on December 13, 2004, as well as the Transaction of the Year award by the Chicago/Midwest Chapter of the Turnaround Management Association.

## Commencement of Case

4. On January 28, 2004 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

## Fee Arrangement Authorized

5. On February 11, 2004 the court entered the Order Approving the Retention of Paragon as Debtor's Investment Bankers [EOD 14] (the "Retention Order"), a copy of which is attached hereto as Exhibit 1. The Retention Order incorporated the terms of the amended engagement letter dated January 20, 2004 (the "Engagement Letter"), a copy of which is attached

3

hereto as Exhibit 2, governing Paragon's compensation. The Engagement Letter provided that

Paragon was to receive a monthly fee of $40,000 per month until the consummation of the sale

of FM/FF Assets; after that transaction, Paragon was to receive $20,000 per month until the

consummation of the sale of the LS US Assets (the "Monthly Fees"), together with

reimbursement for all reasonable expenses incurred in connection with such sales. Paragon was

also to receive a success fee for any completed transaction in the amount of 3.0% of the

aggregate consideration to be paid in the transaction. (each, a "Success Fee"; the FM/FF Assets

Success Fee and the LS US Assets Success Fee, collectively, the "Success Fees") Any Monthly

Fees that had been paid prior to the sale of FM/FF Assets and/or the LS US Assets were to be

deducted from the Success Fees.

6.      All compensation paid or payable to Paragon, and all expenses reimbursed or

reimbursable to Paragon, were paid or will be paid from proceeds of the collateral of the

Debtors' secured creditors, pursuant to an agreed-upon carve-out for all professionals retained by

the Debtors as set forth in the February 19, 2004 Stipulation and Final Order Authorizing

Debtor-In-Possession Financing [Docket No. 19]. No agreement exists between Paragon and

any third person for the sharing of compensation received by Paragon in these cases, except as

allowed by the exception set forth in section 504 of the Bankruptcy Code and Bankruptcy Rule

2016 with respect to the sharing of compensation among members of Paragon.

### Sale of FM/FF Assets -- Fees from 1/20/04 to 4/30/04

7.      On April 1, 2004, the Debtors conducted an auction of the FM/FF Assets. On

April 2, 2004, the Court approved the sale of the FM/FF Assets for a total of $38,910,000.

Pursuant to the engagement letter, Paragon was paid a Success Fee of $1,167,300, (3% of

$38,910,000). Pursuant to the Retention Order, the Success Fee paid to Paragon was reduced by

a credit of $80,000, representing 50% of monthly fees paid in 2003 that had not previously been

credited. Paragon incurred $15,967.67 in reimbursable out-of-pocket expenses between January

4

20, 2004 and April 30, 2004. A copy of Paragon's invoice detailing its expenses is attached hereto as Exhibit 3. Paragon did not actually receive any 2004 Monthly Fees prior to the FM/FF Asset Sale, therefore no deduction from the FM/FF Assets Success Fee was appropriate or necessary.

**Sale of LS US Assets -- Fees from 5/1/04 to 8/20/04**

8.      By this Application, Paragon also is seeking final approval of the Success Fee Paragon earned from the sale of the LS US Assets. The Debtors, with the assistance of Paragon, sold the LS US Assets, jointly with Archibald Candy (Canada) Corporation's ("Archibald Canada") sale of substantially all of its assets. By this Application, Paragon only seeks approval from the Court for the Success Fee with respect to the LS US Assets. The remainder of Paragon's Success Fee from the sale of Archibald Canada's assets is payable from Archibald Canada's interim receivership proceeding.

9.      On July 29, 2004, the Debtors and Paragon conducted an auction of the LS US Assets. While all of the assets of LS were sold for a net adjusted price of C$31,372,000, the amount allocated to the LS US Assets was C$7,000,000. Therefore, Paragon's Success Fee from the sale of the LS US Assets is C$210,000 (3% of C$7,000,000).

10.     Paragon incurred C$23,457.64 in reimbursable expenses in the LS sale. A copy of the invoice identifying these expenses is attached hereto as Exhibit 4. The pro-rata share attributable to the sale of the LS US Assets is C$5,234.07.[2] Prior to receiving its Success Fee for the LS Assets, Paragon received one Monthly Advisory Fee for April 2004 equal to C$26,250. Paragon's Success Fee for the LS Assets, plus expenses, therefore totals C$188,984.07, or approximately US$142,651.02 as of the date of the LS Auction.[3]

---

[2]      The total value of the Laura Secord Sale was C$31,372,000. The pro-rata share is determined by dividing the amount allocated to the LS US Assets by the total net adjusted purchase price, and then multiplying that fraction by the amount of the expenses (i.e. C$7,000,000 / C$31,372,000 = .2231289 x C$23,457.64  = C$5,234.07.)

[3] On July 29, 2004, the exchange rate from Canadian Dollars to United States Dollars was 0.7548. A copy of the Bank of Canada's conversion rate for July 29, 2004 is attached as Exhibit 5.

5

### Request to Limit Notice

11.     Bankruptcy Rule 2002 provides that the debtor in possession must give notice to creditors of any entity's request for compensation or reimbursement of expenses. See Fed. R. Bankr. P. 2002(a)(6).  Paragon submits that cause exists to limit the parties receiving notice of the Motion to counsel to the Debtors, counsel to the United States Trustee, counsel for the Official Committee of Unsecured Creditors, counsel for LaSalle Business Credit, LLC, counsel for Secured Secord Priority Note Holders, counsel for the Ad Hoc Committee of Bondholders, and all parties on the master service list maintained by the Debtors.

12.     Paragon further submits that limiting notice of the Motion will decrease confusion.  The Debtors served previous motions on all creditors (not just those on the master service list), consistent with Bankruptcy Rule 2002.  Each motion so noticed, however, generated many calls from former employees requesting information.  The callers often expressed their confusion and frustration with receiving notice of motions about which they have little knowledge or interest.  Counsel for all of the creditor groups will receive notice of the Motion, and therefore Paragon respectfully requests that notice of the Motion be limited as set forth below

13.     Paragon has served this Application upon (a) the Debtors; (b) the Office of the United States Trustee; (c) counsel for the Official Committee of Unsecured Creditors; (d) counsel for LaSalle Business Credit, LLC; (e) counsel for Secured Secord Priority Note Holders; (f) counsel for the Ad Hoc Committee of Bondholders; and (g) all parties on the Master Service List maintained by the Debtors.  Paragon submits that such notice is appropriate and proper.

6

## Conclusion

WHEREFORE, Paragon respectfully requests that this Court enter an order:

A.   Approving final compensation in favor of Paragon in the amount of $1,309,951.02 for actual, necessary and reasonable professional services rendered on behalf of the Debtors for the Application Period (January 28, 2004 through and including August 6, 2004);

B.   Approving final reimbursement of expenses in favor of Paragon in the amount of $19,918.35 for actual, necessary and reasonable expenses incurred on behalf of the Debtors for the Application Period (January 28, 2004 through and including August 6, 2004); and

C.   Granting such other and further consistent relief as the Court may deem equitable and just.

Dated: January 5, 2005                    Respectfully submitted,

Michael Levy
Partner
PARAGON CAPITAL PARTNERS, LLC

Investment Banker for the Debtors and Debtors-in Possession

## EXHIBIT 1

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ARCHIBALD CANDY CORPORATION, et al.. | ) | Case No. 04-03200 |
| | ) | (Jointly Administered) |
| Debtors. | ) | Honorable Pamela Hollis |

**ORDER PURSUANT TO 11 U.S.C. §§ 327, 328 and 330
APPROVING THE RETENTION OF PARAGON CAPITAL PARTNERS, LLC
AS DEBTORS' INVESTMENT BANKERS [EOD 14]**

This matter having come before the Court on the application dated January 28,

2004 (the "Application") of Archibald Candy Corporation and its affiliated debtors

(collectively, the "Debtors"), for an order authorizing the employment and retention of

Paragon Capital Partners, LLC ("Paragon") as their investment banker in these Chapter

11 cases pursuant to the terms of that certain engagement letter and indemnity referenced

in the Application and amended herein (collectively, the "Engagement Letter"); the Court

having held a hearing on the Application on February 11, 2004 and having considered the

affidavit of Michael Levy relating thereto; the Court having considered the Amendments

to the Paragon Retention Agreement negotiated with the Ad Hoc Bondholder Committee

(the "Bondholder Amendments") attached hereto as Exhibit A and incorporated into the

Engagement Letter; and the Court being satisfied that Paragon, having waived any and all

prepetition claims against the Debtors and having agreed to return certain payments

totaling $69,200 made to Paragon by the Debtors on or about January 6, 2004, is

"disinterested" and represents no interest adverse with respect to the matters upon which

it is to be employed; the Court further finding that the employment and retention of

Paragon according to the terms of the Engagement Letter as amended herein is

reasonable and in the best interest of the estate; all objections to the Application either

having been resolved or overruled; it further appearing that proper and adequate notice

having been given to all parties entitled thereto and after due deliberation thereon and

good and sufficient cause appearing therefore:

IT IS ORDERED, ADJUDGED AND DECREED THAT:

1.   The Debtors are hereby authorized to employ and retain Paragon as their

investment banker pursuant to the terms of the Engagement Letter, as amended herein,

effective as of January 20, 2004 pursuant to 11 U.S.C. §§ 327(a), 328(a) and 330(a).

2.   The Bondholder Amendments, attached hereto as Exhibit A, are hereby

incorporated into and made part of the Engagement Letter.

3.   The terms of the Engagement Letter are reasonable terms and conditions

of employment and are approved pursuant to 11 U.S.C. § 328(a); provided, however,

each Indemnified Party (as defined in the Engagement Letter) shall be entitled to

indemnification for losses, claims, damages, liabilities or expenses found by a court of

competent jurisdiction to have resulted primarily from such Indemnified Party's ordinary

negligence only if directors of the Debtors may be indemnified under the laws of the

State(s) of incorporation of the applicable Debtors for losses, claims, damages, liabilities

or expenses found by a court of competent jurisdiction to have resulted primarily from

such director's ordinary negligence.

4.   Paragon hereby waives all prepetition claims against the Debtors.  Any

and all claims that Paragon may have against the Debtors, including, without limitation,

claims for fees, expenses and/or indemnity, shall be made solely pursuant to the terms of retention as approved by the Court in this Order. Paragon further agrees that, as more fully described in the Bondholder Amendments, (a) it shall immediately return payments totaling $69,200.00 it received from the Debtors on or about January 6, 2004, which the Debtors will deposit into a segregated account pending further court order, and waive any and all claims that it may have against the Debtors relating to such payments and (b) if, at a later date it is adjudicated by a final order of a court of competent jurisdiction that Paragon received any other payments from the Debtors prior to the commencement of these cases that must be returned pursuant to § 547 of the Bankruptcy Code, then Paragon agrees to waive any and all claims that it may have relating to any such payments.

5.    All Success Fees (as defined in the Engagement Letter) to which Paragon is entitled under the Engagement Letter shall be compensated in accordance with (a) the procedures set forth in 11 U.S.C. § 330(a) and applicable provisions of the Bankruptcy Rules upon application to the Bankruptcy Court, (b) such procedures as may be fixed by order of this Court and (c) the terms of the Engagement Letter as set forth in the Application and this Order.

6.    Nothing in the Engagement Letter shall be deemed to cap an Indemnified Party's liability, if any, for any losses, claims, damages, liabilities or expenses found by a court of competent jurisdiction to have resulted primarily from such Indemnified Person's gross negligence or willful misconduct.

7.     To the extent the terms of the Engagement Letter conflict with the terms

of this Order, the terms of this Order shall control.


Dated:  February 11, 2004

                              ENTERED:

                              _____
                              UNITED STATES BANKRUPTCY JUDGE

Order prepared by:
Mark K. Thomas
John P. Sieger
Peter A. Siddiqui
JENNER & BLOCK LLP
One IBM Plaza
Chicago, Illinois 60611
Telephone: (312) 222-9350
Facsimile:  (312) 527-0484

# Exhibit A

**Amendments to Paragon Retention Agreement**

Pursuant to negotiations with the Ad Hoc Bondholder Committee, Paragon

Capital Partners LLC ("Paragon") hereby amends its retention agreement with the

Debtors, dated January 20, 2004, as follows:

1.  Monthly fees from January 2004 and after shall be $20,000 per month. All of
    such 2004 monthly fees shall be credited against the success fees to be paid.

2.  $80,000 (representing 50% of monthly fees paid in 2003) shall be credited
    against the success fees to be paid.

3.  Except as provided in paragraphs 1 and 2, no fees previously paid to Paragon
    by the Debtors shall be credited against future success fees.

4.  Paragon shall return payments made in respect of litigation-related services
    ($69,200). There shall be no further hourly charges of Paragon for efforts
    relating to court-approval of either the FF/FM sale or any LS sale, whether in
    the United States or Canada. The hourly rate provided in the engagement
    letter shall continue to apply only to any actual Paragon court preparation and
    time for non-sale related litigation.

5.  Paragon shall not seek reimbursement from the estate for any time or expenses
    (including fees of outside counsel) in connection with the negotiation and
    approval of its retention.

6.  The Ad Hoc Committee shall support, and not object to, Paragon's retention
    on these terms. All other rights of the Ad Hoc Committee are reserved.

PARAGON CAPITAL PARTNERS LLC

By: Michael E Levy

Title: Partner

AD HOC BONDHOLDERS COMMITTEE
By its attorneys,
ROPES & GRAY LLP

By: D. Ross Martin

14361848\V-2

## Amendments to Paragon Retention Agreement

Pursuant to negotiations with the Ad Hoc Bondholder Committee, Paragon

Capital Partners LLC ("Paragon") hereby amends its retention agreement with the

Debtors, dated January 20, 2004, as follows:

1.  Monthly fees from January 2004 and after shall be $20,000 per month. All of such 2004 monthly fees shall be credited against the success fees to be paid.

2.  $80,000 (representing 50% of monthly fees paid in 2003) shall be credited against the success fees to be paid.

3.  Except as provided in paragraphs 1 and 2, no fees previously paid to Paragon by the Debtors shall be credited against future success fees.

4.  Paragon shall return payments made in respect of litigation-related services ($69,200). There shall be no further hourly charges of Paragon for efforts relating to court-approval of either the FF/FM sale or any LS sale, whether in the United States or Canada. The hourly rate provided in the engagement letter shall continue to apply only to any actual Paragon court preparation and time for non-sale related litigation.

5.  Paragon shall not seek reimbursement from the estate for any time or expenses (including fees of outside counsel) in connection with the negotiation and approval of its retention.

6.  The Ad Hoc Committee shall support, and not object to, Paragon's retention on these terms. All other rights of the Ad Hoc Committee are reserved.

PARAGON CAPITAL PARTNERS LLC

By:
Title:

AD HOC BONDHOLDERS COMMITTEE
By its attorneys,
ROPES & GRAY LLP

By:  D. Ross Martin

14U.1848\V.2

**EXHIBIT 2**



# PARAGON CAPITAL PARTNERS, LLC

<sub>...</sub>

### Amended Engagement Agreement

January 20, 2004

Archibald Candy Corporation
1137 West Jackson Boulevard
Chicago, IL 60607

Attention:     Board of Directors

     This agreement (the "Amended Engagement Agreement" or "Agreement") hereby supersedes all prior engagement agreements by and among Paragon Capital Partners, LLC ("Paragon") and Archibald Candy Corporation (the "Company") and sets forth the following terms and provisions:

1.     In its capacity as financial advisor, Paragon will continue to provide advice and/or undertake certain activities on your behalf, including upon your request and if appropriate, the following:

     (i)     assisting the Company in analyzing its business, financial condition and prospects of the Company;

     (ii)     assisting the Company in evaluating financial- and/or valuation-related merits and risks associated with certain potential strategic or financial alternatives;

     (iii)     if requested, assisting the Company in preparing certain information which may be distributed or presented to a limited number of potential acquirors, investors or other parties, with the understanding that the Company will be solely responsible for the contents of such information and any other disclosure documents;

     (iv)     if requested, contacting a selected group of potential acquirors or investors and, if appropriate, facilitating the Company with a process to solicit interest regarding certain potential transactions involving the Company;

     (v)     assisting and advising the Company's management in making presentations to the Company's Board of Directors about proposed transactions;

     (vi)     advising the Company as to strategy and tactics for negotiating with potential acquirers and, if requested by the Company, participating in negotiations relating to a transaction;

     (vii)     assisting and advising the Company with respect to the form and structure of a transaction, and/or assisting the Company in negotiating the financial aspects of a definitive agreement; and

     (viii)     rendering such other financial advisory services as may from time to time be agreed upon by Paragon and the Company.

Archibald Candy Corporation
January 20, 2004
Page 2 of 9

     (ix)    if requested by the Board of Directors of the Company and for no consideration additional to that provided in Section 2 of this Agreement, Paragon shall render as to each Transaction (including Transactions occurring after payment to Paragon of a minimum fee by reason of the occurrence of a "300K Minimum Fee Due Date," as defined) (i) an opinion to the Board of Directors of the Company, in accordance with customary practice, as to the fairness, from a financial point of view, of the consideration to be received pursuant to each such Transaction and (ii) an opinion to the indenture trustee of the Company's 2002 subordinated notes pursuant to section 314(d) of the Trust Indenture Act that the consideration to be received pursuant to each such Transaction is least equal to the fair value of the assets being sold.  In addition, if requested by the Board of Directors of the Company, Paragon shall render such other types of opinions, appraisals or financial advisory services, as may from time to time be agreed upon by Paragon and the Company.

2.    The Company agrees to pay Paragon as compensation for services rendered under this engagement the following cash fees (all fee amounts indicated herein represent U.S. currency):

     (i)    A fee of $40,000 per month (the "Monthly Fee"), payable on the last business day of each month, throughout the term of the engagement until such time as either (x) a sale has been consummated involving substantially all of the assets of Fannie May and/or Fanny Farmer businesses ("FM/FF"); or (y) a sale has been consummated involving substantially all of the assets or stock of Laura Secord Holdings Corp. or Archibald Candy (Canada) Corporation ("Laura Secord").  Beginning in the month following the consummation of a Transaction involving either FM/FF or Laura Secord, the Monthly Fee shall be reduced to $20,000 per month, payable on the last business day of each month until the consummation of the sale of the latter Transaction.

     (ii)    In addition to the Monthly Fee, in the event a Transaction (as defined below) is consummated, then the Company shall pay to Paragon additional fees ("Success Fees") in the amounts set forth below:

     (a)    in connection with a Transaction (as defined below) involving FM/FF, except as provided in the immediately following subparagraph, the Company shall pay to Paragon 3.0% of the aggregate consideration (as defined below) to be paid in the Transaction, subject to a minimum fee of **Five Hundred Thousand Dollars ($500,000)**.

     In the event that that the Company determines not to sell intellectual property assets (i.e., trademarks, trade names and recipes referred to herein as "Intellectual Property") associated with FM/FF, then the Company may give Paragon written notice of such determination and shall thereupon pay to Paragon a minimum fee of **Three Hundred Thousand ($300,000)**, in full satisfaction of any obligations to Paragon in respect of FM/FF.  In any event, however, and whether or not notice of a decision to sell the Intellectual Property of FM/FF, Paragon shall be entitled to a minimum fee (without duplication) in respect of the FM/FF of $300,000 by April 30, 2004 (a "300K Minimum Fee Due Date"), and if Paragon assists the Company in selling the Intellectual Property associated with FM/FF, Paragon shall be paid an additional fee of $200,000 upon the consummation of such sale.  If subsequent to the Company's notice to Paragon under this subparagraph or payment on the 300K Minimum Fee Due date hereunder, the Company nevertheless determines to sell the Intellectual Property of FM/FF, Paragon shall be entitled to any additional fees that would have been due under Paragraph 8 of this Agreement, measuring the three and

Archibald Candy Corporation
January 20, 2004
Page 3 of 9

> six month periods from the date of the Company's notice to Paragon under this
> subparagraph.

(b)    In connection with a Transaction (as defined below) involving Laura Secord, the
Company shall pay to Paragon at the consummation thereof:  (1) $200,000 if
aggregate consideration (as defined below) to be paid in the Transaction is less than
C$9 million, or (2) $300,000 if aggregate consideration is greater than or equal to
C$9 million but less than C$12 million, or (3) $400,000 if aggregate consideration is
greater than or equal to C$12 million but less than C$15 million, or (4) in the event
aggregate consideration equals or exceeds C$15 million, the Company shall pay to
Paragon the greater of: (x) 3% of aggregate consideration or (y) $500,000. As used
herein, "C$" indicates Canadian currency. Unless indicated with "C$", all amounts
specified herein represent U.S. currency.

Paragon shall be entitled to the fees specified in this Paragraph 2(b) in connection
with sales of Laura Secord assets (including inventory intended for use by Laura
Secord owned by the Company) in any series of liquidating Transactions out of the
ordinary course of business on the same basis as if sold as going concern.

The Company shall not be entitled to receive a credit for any fees paid prior to the date of this
Amended Engagement Agreement

The term "Transaction" means one or a series of transactions whereby, directly or indirectly, (1) a
substantial portion of: one or more of the Businesses, (2) a substantial portion of the Company's assets (or any
right to a substantial portion of the revenues or income of one or more or the Businesses), or (3) a majority of
the voting securities of the Company, are transferred to, acquired by or combined with any person or one or
more persons formed by or affiliated with such person (the "Purchaser"). In the event that a Transaction is
consummated prior to the last business day of a month, the monthly fee owed to Paragon shall be pro-rated.

For purposes hereof, the term "aggregate consideration" means the total amount of cash and the fair
market value (on the date of payment) of all other consideration actually received (including amounts paid into
escrow when and if released) to the Company or its securityholders in respect of their security holdings
(without double counting) in connection with a Transaction, including amounts paid in respect of the secured
subordinated notes, plus the principal amount of all debt and capitalized leases required to be set forth on the
consolidated balance sheet of the Company on the date of the consummation of a Transaction.  Aggregate
consideration shall also include the aggregate amount of any dividends, other than normal quarterly cash
dividends, or other distributions declared by the Company in connection with a Transaction.  In the event a
Transaction involves less than all but more than 50% of a class of securities, aggregate consideration shall be
calculated as if all such securities were being acquired.  In no event shall "aggregate consideration" of any of
the Businesses include any of the following:

(a)    any ordinary course liabilities such as accounts payable to third parties assumed by the
purchaser, provided that the principal amount of all debt for borrowed money and capitalized leases
assumed by a purchaser in a Transaction shall be included in "aggregate consideration";

(b)    the purchase price for any inventory owned by the Company relating to Laura Secord in
excess of C$7,000,000;



Archibald Candy Corporation
January 20, 2004
Page 4 of 9

   (c)     the purchase price for any inventory owned by the Company relating to Fannie May and
Fannie Farmer (including inventory sold pre-closing to Alpine Confections, Inc. or any other purchaser) in
excess of US$5 million;

   (d)     the purchase price for any U.S. real estate, machinery or equipment owned by the Company,
unless sold in the same Transaction with other Nonfixed Assets of Fannie May and Fannie Farmer.
"Nonfixed Assets" means assets not reflected in or constituting "property, plant and equipment" on the
Company's balance sheet.

   (e)     any payment to the Company for any post-sale supply, pre- or post-sale services, or other
transitional support agreements entered into with a purchaser of assets; or

   (f)     any cash received at consummation of Transaction which the Company deposits as collateral
for issuance of any letter of credit issued to a purchaser in lieu of escrow to secure any clawback or
indemnity to the purchaser, unless, until and to the extent the cash is released to the Company following
cancellation or expiration of the letters of credit.

   Unless otherwise specified in this letter agreement, compensation which is payable to Paragon
pursuant to this letter agreement shall be paid by the Company to Paragon as received in cash via wire transfer.

3.    Regardless of whether a transaction is proposed or completed, and in addition to the compensation
described in paragraph 2, the Company shall, immediately upon request, reimburse Paragon for all
reasonable out-of-pocket expenses incurred in connection with this engagement. Expenses shall not
exceed $20,000 without prior written consent, which shall not be unreasonably withheld. Reimburseable
travel expenses shall not include charter planes, first class airfare or other expenses that are outside
Company travel reimbursement policy for its own employees.

   In the event that any professionals of Paragon participate in any litigation-related activities associated
with the Company, Paragon shall be reimbursed for all reasonable expenses incurred by it in connection with
such activities, including the reasonable fees and disbursements of its legal counsel. Paragon shall also receive
a fee of $200 per hour (per professional) based on the number of hours Paragon professionals are directly
involved with such activities or in preparation for such activities.

4.    The Company will furnish, or cause to be furnished, to Paragon such information as the Company
believes appropriate to Paragon's engagement hereunder (all such information, the "Information"), and the
Company represents that all such Information will be accurate and complete in all material respects to the best
of its knowledge unless otherwise indicated. Paragon may rely on the accuracy and completeness of the
Information without independent verification. It is specifically understood that Paragon has not made, and will
not make, any physical inspection of the properties or assets of the Company or those of any potential acquiror
and with respect to any financial forecasts that may be furnished to or discussed with Paragon by the Company
or any potential acquiror, Paragon will assume that they have been reasonably prepared and reflect the best
then currently available estimates and judgments of the Company's or such potential acquiror's management as
to the expected future financial performance of the Company or such potential acquiror. The Company will
notify Paragon promptly of any material change in any Information previously made available to Paragon by
the Company or any potential acquiror that becomes known to the Company.

   Paragon agrees to keep all non-public information provided to it by the Company confidential, except
as required by law. Notwithstanding anything to the contrary in this letter, Paragon may disclose non-public
information to its agents and advisors, who shall also be bound by the terms of this paragraph, whenever



Archibald Candy Corporation
January 20, 2004
Page 5 of 9

Paragon determines that such disclosure is necessary or appropriate to provide the services contemplated in this letter. Paragon shall use reasonable efforts to keep records (for a duration not to exceed its customary record retention practices) of the potential purchasers to whom Paragon discloses such information and will provide copies thereof to the Company upon request.

5.    The Company agrees that all advice given by Paragon in connection with its engagement hereunder is for the benefit and use of the Board of Directors of the Company in considering potential strategic or financial alternatives, and that no such advice shall be used for any other purpose or be disclosed, reproduced, disseminated, quoted or referred to at any time, in any manner or for any purpose, nor shall any public references to Paragon be made by or on behalf of the Company, in each case without Paragon's prior written consent, which consent shall not be unreasonably withheld.

6.    The Company agrees that Paragon has been retained to act solely as financial advisor to the Company, and not as an advisor to or agent of any other person, and that the Company's engagement of Paragon is not intended to confer rights upon any person not a party hereto (including stockholders, employees or creditors of the Company) as against Paragon or its affiliates, or their directors, officers, employees or agents. It is specifically understood that the Company's Board of Directors will not base its decisions regarding whether and how to pursue any transaction solely on Paragon's advice, but will also consider the advice of the Company's legal, tax and other business advisors and such other factors which they consider appropriate. Paragon, as an independent contractor under this letter agreement, shall not assume the responsibilities of a fiduciary to the Company or its stockholders in connection with the performance of Paragon's services hereunder, and any duties arising out of its engagement shall be owed solely to the Company and Paragon.

7.    The Company and Paragon agree to the provisions with respect to the Company's indemnity of Paragon and other matters set forth in Schedule I, the terms of which are incorporated herein in their entirety. Schedule 1 is an integral part of this letter agreement and shall survive any termination or expiration of this letter agreement.

8.    Paragon's engagement hereunder may be terminated at any time by either Paragon or the Company, it being understood that upon termination, this letter agreement shall have no further force or effect, except that any termination of Paragon's engagement hereunder for any reason shall not affect the Company's obligations to pay to Paragon fees specified in Paragraph 2(f) above, to provide indemnification as provided in Schedule I hereto, and to reimburse expenses as set forth herein and therein. In the event of termination by the Company other than for Paragon's breach, the Company shall pay to Paragon fees to the extent provided for herein with respect to any Transaction consummated within 3 months after such termination with regard to any buyer or with respect to any Transaction consummated within 6 months after such termination that Paragon had either identified as a prospective buyer or with whom the Company or any of its securityholders had had any contact or conversation for the purposes of a Transaction during the Agreement. In addition, provisions relating to the status of Paragon as an independent contractor, the limitation on to whom Paragon shall owe any duties, governing law, choice of forum, successors and assigns, and the waiver of the right to trial by jury shall survive any termination of this letter agreement.

9.    This letter agreement, Schedule I, and any rights, duties or obligations hereunder may not be waived, amended, modified or assigned, in any way, in whole or in part, including by operation of law, without the prior written consent of, and shall inure to the benefit of and be binding upon the successors, assigns and personal representatives of, each of the parties hereto.



Archibald Candy Corporation
January 20, 2004
Page 6 of 9

10.     In case any provision of this letter agreement shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions of this letter agreement shall not in any way be affected or impaired thereby.

11.     This letter agreement and any claim or dispute of any kind or nature whatsoever arising out of, or relating to, this letter agreement or Paragon's engagement hereunder, directly or indirectly (including any claim concerning advice provided pursuant to this letter agreement), shall be governed by and construed in accordance with the substantive laws of the State of Illinois and not those regarding conflicts of law. Any rights to trial by jury with respect to any claim, action or proceeding, directly or indirectly, arising out of, or relating to, this letter agreement or Paragon's engagement hereunder are waived by Paragon and the Company.



Archibald Candy Corporation
January 20, 2004
Page 7 of 9

I am pleased to accept this engagement and look forward to working with the Company. Please confirm that the foregoing is in accordance with your understanding by signing and returning to us the enclosed duplicate of this letter, which shall thereupon constitute a binding agreement.

Very truly yours,

PARAGON CAPITAL PARTNERS, LLC

By: _____
Name: Michael E. Levy
Title: Partner

Accepted and Agreed to
as of the date first written above:

ARCHIBALD CANDY CORPORATION

By: _____
Name: James Ross
Title: Chief Restructuring Officer

Archibald Candy Corporation (Canada) Corporation agrees that it shall be jointly and severally liable for all Success Fees payable in respect of any Transaction involving assets of the Laura Secord business.

Archibald Candy Corporation (Canada) Corporation

By: _____
Name: Richard J. Anglin
Title: Chief Financial Officer

MA 1/20/04

Archibald Candy Corporation
January 20, 2004
Page 8 of 9

**Schedule I**
**Indemnification Agreement**

*The Company agrees to indemnify Paragon, any controlling person of Paragon and each of their respective directors, officers, employees, agents, affiliates and representatives (each, an "Indemnified Party") and hold each of them harmless against any and all losses, claims, damages, expenses, liabilities, joint or several (collectively, "Liabilities") to which the Indemnified Parties may become liable, directly or indirectly, arising out of, or relating to, the letter agreement to which this Schedule I is attached (the "Letter Agreement"), except to the extent it is finally judicially determined that the Liabilities resulted from the gross negligence or willful misconduct of any Indemnified Party. The Company further agrees to reimburse each Indemnified Party immediately upon request for all expenses (including reasonable attorneys' fees and expenses) as they are incurred in connection with the investigation of, preparation for, defense of, providing evidence in, any action, claim, suit, proceeding or investigation, directly or indirectly, arising out of, or relating to, the Letter Agreement or Paragon's services thereunder, whether or not pending or threatened and whether or not any Indemnified Party is a party to such proceeding. The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or any person asserting claims on behalf of or in right of the Company, directly or indirectly, arising out of, or relating to, the Letter Agreement or Paragon's services thereunder, except to the extent it is finally judicially determined that such liability resulted from the gross negligence or willful misconduct of such Indemnified Party. Moreover, in no event, regardless of the legal theory advanced, shall any Indemnified Party be liable to the Company or any person asserting claims on behalf of or in the right of the Company for any consequential, indirect, incidental or special damages of any nature. In the event that an Indemnified Party is requested or required to appear as a witness in any action brought by or on behalf of or against the Company or any affiliate of the Company, or any Target referred to in the initial paragraph of the Letter Agreement, in which such Indemnified Party is not named as a defendant, the Company agrees to reimburse Paragon for all expenses incurred by it in connection with such Indemnified Party's appearing and preparing to appear as such a witness, including, without limitation, the reasonable fees and disbursements of its legal counsel.*

*The Company agrees that, without Paragon's prior written consent, which consent shall not be unreasonably withheld, it will not settle, compromise or consent to the entry of any judgment in or otherwise seek to terminate any claim, action, suit, proceeding or investigation in respect of which indemnification could be sought hereunder (whether or not Paragon or any other Indemnified Party is an actual or potential party to such claim, action, suit, proceeding or investigation), unless (a) such settlement, compromise, consent or termination includes an unconditional release of each Indemnified Party from any liabilities arising out of such claim action, suit, proceeding or investigation and (b) the parties agree that the terms of such settlement shall remain confidential.*

*The Company and Paragon agree that if any indemnification or reimbursement sought pursuant to the first paragraph of this Schedule I is for any reason unavailable or insufficient to hold any Indemnified Party harmless (except by reason of the gross negligence or willful misconduct of the Indemnified Party) then, whether or not Paragon is the person entitled to indemnification or reimbursement, the Company and Paragon shall contribute to the Liabilities for which such indemnification or reimbursement is held unavailable in such proportion as is appropriate to reflect (a) the relative benefits to the Company on the one hand and Paragon on the other hand, in connection with the transaction to which such indemnification or reimbursement relates or (b) if the allocation provided by clause (a) above is not available, in such proportion as is appropriate to reflect not only the relative benefits referred to in such clause (a), but also the relative fault of the parties as well as any other relevant equitable considerations, provided, however, that in no event shall the amount to be contributed by Paragon exceed the fees actually received by Paragon under the Letter Agreement. The Company agrees that, for the purposes of this paragraph, the relative benefits to the Company and Paragon of the contemplated transaction (whether or not such transaction is consummated) shall be deemed to be in the same proportion that the aggregate consideration payable, exchangeable or transferable (or contemplated to be payable, exchangeable or transferable) in such transaction bears to the fees paid or payable to Paragon as financial advisor under the Letter Agreement.*

*The Company shall have the right to assume the indemnified parties' defense of any indemnifiable claim through counsel reasonably satisfactory to indemnified parties. The Indemnified Parties shall have the right to employ separate counsel in any proceeding and to participate in the defense thereof, but the fees and expenses of such counsel shall be at*



Archibald Candy Corporation
January 20, 2004
Page 9 of 9

*the expense of the Indemnified Parties, unless (i) the Company shall have failed promptly to assume the defense thereof
and employ counsel as provided above or (ii) the named parties to any proceeding (including impleaded parties) include
Indemnified Parties and the Company, and the Indemnified Parties shall have been advised by counsel that there may be
one or more legal defenses available to it that are different from or in addition to those available to the Company,
provided that the Company shall not in any event be responsible hereunder for the fees and expenses of more than one firm
of separate counsel in connection with any proceeding in the same jurisdiction, in addition to any local counsel.
Indemnified Parties will not settle any claim being defended by the Company without the Company's prior written consent
which shall not be unreasonably withheld or delayed.*

*The rights of the Indemnified Parties referred to above shall be in addition to any rights that any Indemnified
Party may otherwise have.*

**EXHIBIT 3**

## INVOICE

Archibald Candy Corporation                                        April 30, 2004
1137 West Jackson Boulevard
Chicago, IL 60607


Attention:      Rick Anglin
                Chief Financial Officer

---

**Re: Fannie May / Fanny Farmer / Laura Secord**

For advisory services rendered in accordance with engagement letter dated January 20, 2004 as amended.

| | |
|---|---:|
| Advisory Fee Due for January 2004 (Credited): | $0.00 |
| Advisory Fee Due for February 2004 (Credited): | $0.00 |
| Advisory Fee Due for March 2004 (Credited): | $0.00 |
| Advisory Fee Due for April 2004: | $20,000.00 |
| New Out-of-Pocket Expenses incurred through 4/30/04*: | |
| Copies / Printing / Mailing | 2,911.01 |
| Information Services | 0.00 |
| Meals | 42.49 |
| Miscellaneous | 0.00 |
| Telecom / Conference Calls | 5,180.73 |
| Transportation/Parking | 578.69 |
| Miscellaneous (FedEx, couriers, etc.) | 7,254.75 |
| Total Out-of-Pocket Expenses | $15,967.67 |
| Total Amount Due | $35,967.67 |

\* *As detailed on the attached supplement. Additional expenses that may have been incurred but not expensed (due to normal billing cycles) may be added to the next invoice if appropriate.*


Please remit payment to Paragon Capital Partners, LLC via the following wire transfer instructions:

| | |
|---|---|
| Financial Institution: | JPMorgan Chase Bank |
| ABA Number: | 021 000 021 |
| For Account Number: | 535 500 701 765 |
| For the Account of: | Paragon Capital Partners, LLC |
| Address: | 450 Park Avenue, Suite 2500, New York, NY 10022 |
| Phone: | 212-894-0275 |
| Reference: | Attention Michael Levy – Invoice 04/30/04 |

ARCHIBALD CANDY CORPORATION
EXPENSES PROCESSED AS OF 04/30/04

| Date | Category | | Description | | | Prof. | | Amount |
|------|----------|--|-------------|--|--|-------|--|--------|
| 2/3/2004 | Mail | FEDEX #792422857978 NEW YORK | NY 242285797 PROJECT ALPHA | 10152 | | ML | $ | 10.63 |
| 2/10/2004 | Mail | FEDEX #791145656744 NEW YORK | NY 114565674 | 60611 | | ML | $ | 15.82 |
| 2/10/2004 | Mail | FEDEX #791145680668 NEW YORK | NY 114568066 | 60606 | | ML | $ | 15.82 |
| 2/10/2004 | Mail | FEDEX #792568496740 NEW YORK | NY 256849674 | 60607 | | ML | $ | 15.82 |
| 2/10/2004 | Mail | FEDEX #792568541975 NEW YORK | NY 256854197 | 60606 | | ML | $ | 15.82 |
| 2/11/2004 | Mail | FEDEX #791147503692 NEW YORK | NY 114750369 | 60606 | | ML | $ | 15.82 |
| 2/11/2004 | Mail | FEDEX #792428806026 NEW YORK | NY 242880602 | 60607 | | ML | $ | 15.82 |
| 2/11/2004 | Mail | FEDEX #792428817295 NEW YORK | NY 242881729 | 60606 | | ML | $ | 15.82 |
| 2/11/2004 | Mail | FEDEX #792569822676 NEW YORK | NY 256982267 | 60611 | | ML | $ | 15.82 |
| 2/16/2004 | Mail | FEDEX #055106925069255 NEW YORK | NY 055106925 PROJECT ALPHA | 92626 | | ML | $ | 36.14 |
| 2/17/2004 | Mail | FDX#266183610000111 NEW YORK | NY 610000111 | 02724 | | ML | $ | 6.10 |
| 2/17/2004 | Mail | FEDEX #790552390119 NEW YORK | NY 055239011 PROJECT ALPHA | 60607 | | ML | $ | 15.82 |
| 2/17/2004 | Mail | FEDEX #791152900400 NEW YORK | NY 115290040 PROJECT ALPHA | 60606 | | ML | $ | 15.82 |
| 2/17/2004 | Mail | FEDEX #791776727621 NEW YORK | NY 177672762 PROJECT ALPHA | 60611 | | ML | $ | 15.82 |
| 2/17/2004 | Mail | FEDEX #792432630646 NEW YORK | NY 243263064 PROJECT ALPHA | 92626 | | ML | $ | 27.16 |
| 2/18/2004 | Mail | FEDEX #790553727445 NEW YORK | NY 055372744 | 60610 | | ML | $ | 14.36 |
| 2/19/2004 | Mail | FEDEX #790555194747 NEW YORK | NY 055519474 PROJECT ALPHA | 60606 | | ML | $ | 14.36 |
| 2/19/2004 | Mail | FEDEX #791778714896 NEW YORK | NY 177871489 PROJECT ALPHA | 60603 | | ML | $ | 14.36 |
| 2/20/2004 | Mail | FDX#X0064440543328 1 PITTSBURGH | PA 405433281 | 00000 | | ML | $ | 11.00 |
| 2/20/2004 | Mail | FEDEX #790556594387 NEW YORK | NY 055659438 PROJECT ALPHA | 60181 | | ML | $ | 14.36 |
| 2/20/2004 | Mail | FEDEX #792576398315 NEW YORK | NY 257639831 PROJECT ALPHA | 10165 | | ML | $ | 10.63 |
| 2/20/2004 | Mail | FEDEX #792576515656 NEW YORK | NY 257651565 PROJECT ALPHA | 92807 | | ML | $ | 30.31 |
| 2/20/2004 | Mail | FEDEX #792576548338 NEW YORK | NY 257654833 PROJECT ALPHA | 60093 | | ML | $ | 30.07 |
| 2/24/2004 | Mail | FEDEX #791160067712 NEW YORK | NY 116006771 PROJECT ALPHA | 60523 | | ML | $ | 14.36 |
| 2/25/2004 | Mail | FEDEX #790067856572 NEW YORK | NY 006785657 PROJECT ALPHA | 60563 | | ML | $ | 18.36 |
| 2/25/2004 | Mail | FEDEX #790068596703 NEW YORK | NY 006859670 PROJECT ALPHA | 60712 | | ML | $ | 14.36 |
| 2/25/2004 | Mail | FEDEX #790560983074 NEW YORK | NY 056098307 PROJECT ALPHA | 60611 | | ML | $ | 14.36 |
| 2/25/2004 | Mail | FEDEX #791161279225 NEW YORK | NY 116127922 PROJECT ALPH | 89135 | | ML | $ | 17.63 |
| 2/26/2004 | Mail | FEDEX #790070280989 NEW YORK | NY 007028098 PROJECT ALPHA | 19087 | | ML | $ | 10.63 |
| 2/26/2004 | Mail | FEDEX #790073131 71 NEW YORK | NY 007031317 PROJECT ALPHA | 60610 | | ML | $ | 14.36 |
| 2/26/2004 | Mail | FEDEX #790562469426 NEW YORK | NY 056246942 PROJECT ALPHA | 60014 | | ML | $ | 26.11 |
| 2/26/2004 | Mail | FEDEX #791783862764 NEW YORK | NY 178386276 PROJECT ALPHA | 60610 | | ML | $ | 14.36 |
| 2/26/2004 | Mail | FEDEX #792439807225 NEW YORK | NY 243980722 PROJECT ALPHA | 60614 | | ML | $ | 16.11 |
| 2/26/2004 | Mail | FEDEX #792580831300 NEW YORK | NY 258083130 PROJECT ALPHA | 60515 | | ML | $ | 14.36 |
| 2/26/2004 | Mail | FEDEX #792580841600 NEW YORK | NY 258084160 PROJECT ALPHA | 60644 | | ML | $ | 14.36 |
| 2/26/2004 | Mail | FEDEX #792580845330 NEW YORK | NY 258084533 PROJECT ALPHA | 60045 | | ML | $ | 14.36 |
| 2/26/2004 | Mail | FEDEX #792580858616 NEW YORK | NY 258085861 PROJECT ALPHA | 48026 | | ML | $ | 13.70 |
| 2/27/2004 | Mail | FEDEX #790070965587 NEW YORK | NY 007096558 PROJECT ALPHA | 60607 | | ML | $ | 14.36 |
| 2/27/2004 | Mail | FEDEX #790071561164 NEW YORK | NY 007156116 PROJECT ALPHA | 60604 | | ML | $ | 14.36 |
| 2/27/2004 | Mail | FEDEX #791163630673 NEW YORK | NY 116363067 PROJECT ALPHA | 60630 | | ML | $ | 14.36 |
| 2/27/2004 | Mail | FEDEX #791164178041 NEW YORK | NY 116417804 PROJECT ALPHA | 60010 | | ML | $ | 16.11 |
| 2/27/2004 | Mail | FEDEX #791164193751 NEW YORK | NY 116419375 PROJECT ALPHA | 60010 | | ML | $ | 16.11 |
| 2/27/2004 | Mail | FEDEX #791164271874 NEW YORK | NY 116427187 PROJECT ALPHA | 60090 | | ML | $ | 26.11 |
| 2/27/2004 | Mail | FEDEX #792440273613 NEW YORK | NY 244027361 PROJECT ALPHA | 63141 | | ML | $ | 14.36 |
| 2/27/2004 | Mail | FEDEX #792581303830 NEW YORK | NY 258130383 PROJECT ALPHA | 60139 | | ML | $ | 14.36 |
| 3/1/2004 | Mail | FEDEX #790072535005 NEW YORK | NY 007253500 PROJECT ALPHA | 46375 | | ML | $ | 14.57 |
| 3/1/2004 | Mail | FEDEX #791165178839 NEW YORK | NY 116517883 PROJECT ALPHA | 60062 | | ML | $ | 20.84 |
| 3/1/2004 | Mail | FEDEX #791785446016 NEW YORK | NY 178544601 PROJECT ALPHA | 48021 | | ML | $ | 13.90 |
| 3/1/2004 | Mail | FEDEX #792441428347 NEW YORK | NY 244142834 PROJECT ALPHA | 60126 | | ML | $ | 14.57 |
| 3/3/2004 | Mail | FEDEX #790568185260 NEW YORK | NY 056818526 PROJECT ALPHA | 60521 | | ML | $ | 16.32 |
| 3/3/2004 | Mail | FEDEX #790568218748 NEW YORK | NY 056821874 PROJECT ALPHA | 60062 | | ML | $ | 14.57 |
| 3/3/2004 | Mail | FEDEX #790568243624 NEW YORK | NY 056824362 PROJECT ALPHA | 60602 | | ML | $ | 14.57 |
| 3/3/2004 | Mail | FEDEX #790568313039 NEW YORK | NY 056831303 PROJECT ALPHA | 60013 | | ML | $ | 16.32 |
| 3/3/2004 | Mail | FEDEX #791168829840 NEW YORK | NY 116882984 PROJECT ALPHA | 07446 | | ML | $ | 10.78 |
| 3/3/2004 | Mail | FEDEX #791168853524 NEW YORK | NY 116885352 PROJECT ALPHA | 10522 | | ML | $ | 10.78 |
| 3/3/2004 | Mail | FEDEX #791168873353 NEW YORK | NY 116887335 PROJECT ALPHA | 60661 | | ML | $ | 14.57 |
| 3/3/2004 | Mail | FEDEX #791788006157 NEW YORK | NY 178800615 PROJECT ALPHA | 60067 | | ML | $ | 14.57 |
| 3/3/2004 | Mail | FEDEX #792444109949 NEW YORK | NY 244410994 PROJECT ALPHA | 60523 | | ML | $ | 14.57 |
| 3/3/2004 | Mail | FEDEX #792584914578 NEW YORK | NY 258491457 PROJECT ALPHA | 60622 | | ML | $ | 14.57 |
| 3/3/2004 | Mail | FEDEX #792584932132 NEW YORK | NY 258493213 PROJECT ALPHA | 60139 | | ML | $ | 16.32 |
| 3/3/2004 | Mail | FEDEX #792585136864 NEW YORK | NY 258513686 PROJECT ALPHA | 60035 | | ML | $ | 16.32 |
| 3/4/2004 | Mail | FEDEX #790569609442 NEW YORK | NY 056960944 PROJECT APHA | 60448 | | ML | $ | 14.57 |
| 3/4/2004 | Mail | FEDEX #790569630014 NEW YORK | NY 056963001 PROJECT ALPHA | 60419 | | ML | $ | 14.57 |
| 3/4/2004 | Mail | FEDEX #790569641560 NEW YORK | NY 056964156 PROJECT ALPHA | 60015 | | ML | $ | 16.32 |
| 3/4/2004 | Mail | FEDEX #791170133052 NEW YORK | NY 117013305 PROJECT ALPHA | 08033 | | ML | $ | 10.78 |
| 3/4/2004 | Mail | FEDEX #791170312370 NEW YORK | NY 117031237 PROJECT ALPHA | 60610 | | ML | $ | 14.57 |
| 3/4/2004 | Mail | FEDEX #791789003062 NEW YORK | NY 178900306 PROJECT ALPHA | 02109 | | ML | $ | 12.56 |
| 3/4/2004 | Mail | FEDEX #791789012847 NEW YORK | NY 178901284 PROJECT ALPHA | 60506 | | ML | $ | 14.57 |
| 3/4/2004 | Mail | FEDEX #791789028191 NEW YORK | NY 178902819 PROJECT ALPHA | 60302 | | ML | $ | 14.57 |
| 3/4/2004 | Mail | FEDEX #792445130561 NEW YORK | NY 244513056 PROJECT ALPHA | 60505 | | ML | $ | 14.57 |
| 3/4/2004 | Mail | FEDEX #792445154076 NEW YORK | NY 244515407 PROJECT ALPHA | 60477 | | ML | $ | 14.57 |

ARCHIBALD CANDY CORPORATION
EXPENSES PROCESSED AS OF 04/30/04 (Continued)

| Date | Category | Description | Prof. | | Amount |
|------|----------|-------------|-------|---|--------|
| 3/8/2004 | Mail | FEDEX #790080227198 NEW YORK | NY 008022719 PROJECT ALPHA    80222 | ML | $ 23.72 |
| 3/8/2004 | Mail | FEDEX #790080385138 NEW YORK | NY 008038513 PROJECT ALPHA    22015 | ML | $ 15.57 |
| 3/8/2004 | Mail | FEDEX #791172834933 NEW YORK | NY 117283493 PROJECT ALPHA    60015 | ML | $ 20.84 |
| 3/8/2004 | Mail | FEDEX #791790964794 NEW YORK | NY 179096479 PROJECT ALPHA    60523 | ML | $ 20.84 |
| 3/8/2004 | Mail | FEDEX #792447201680 NEW YORK | NY 244720168 PROJECT ALPHA    11747 | ML | $ 12.69 |
| 3/8/2004 | Mail | FEDEX #792447462682 NEW YORK | NY 244746268      60610 | ML | $ 20.84 |
| 3/8/2004 | Mail | FEDEX #792447534300 NEW YORK | NY 244753430      60610 | ML | $ 14.57 |
| 3/8/2004 | Mail | FEDEX #792588117868 NEW YORK | NY 258811786 PROJECT ALPHA    06830 | ML | $ 14.44 |
| 3/8/2004 | Mail | FEDEX #792588459667 NEW YORK | NY 258845966 ARCHIBALD FM-FF  55108 | ML | $ 16.05 |
| 3/9/2004 | Mail | FEDEX #790081609998 NEW YORK | NY 008160999 PROJECT ALPHA    02109 | ML | $ 12.56 |
| 3/9/2004 | Mail | FEDEX #790081657030 NEW YORK | NY 008165703 PROJECT ALPHA    60646 | ML | $ 20.84 |
| 3/9/2004 | Mail | FEDEX #790081662418 NEW YORK | NY 008166241 PROJECT ALPHA    60521 | ML | $ 22.59 |
| 3/9/2004 | Mail | FEDEX #790081785742 NEW YORK | NY 008178574 PROJECT ALPHA    55108 | ML | $ 14.57 |
| 3/9/2004 | Mail | FEDEX #790574241708 NEW YORK | NY 057424170 ARCHIBALD FM-FF  60093 | ML | $ 16.05 |
| 3/9/2004 | Mail | FEDEX #791174322571 NEW YORK | NY 117432257 PROJECT ALPHA    60077 | ML | $ 20.84 |
| 3/9/2004 | Mail | FEDEX #791174325169 NEW YORK | NY 117432516 PROJECT ALPHA    60607 | ML | $ 20.84 |
| 3/9/2004 | Mail | FEDEX #791174628501 NEW YORK | NY 117462850 PROJECT ALPHA    60610 | ML | $ 14.57 |
| 3/9/2004 | Mail | FEDEX #791792072194 NEW YORK | NY 179207219 PROJECT ALPHA    11021 | ML | $ 15.09 |
| 3/9/2004 | Mail | FEDEX #792448594437 NEW YORK | NY 244859443      60093 | ML | $ 32.34 |
| 3/9/2004 | Mail | FEDEX #792589183512 NEW YORK | NY 258918351 PROJECT ALPHA    60139 | ML | $ 20.84 |
| 3/10/2004 | Mail | FEDEX #791176156783 NEW YORK | NY 117615678      11747 | ML | $ 12.79 |
| 3/10/2004 | Mail | FEDEX #791792524715 NEW YORK | NY 179252471 PROJECT ALPHA    60607 | ML | $ 18.57 |
| 3/10/2004 | Mail | FEDEX #791793250776 NEW YORK | NY 179325077 PROJECT ALPHA    60611 | ML | $ 14.57 |
| 3/10/2004 | Mail | FEDEX #791793410540 NEW YORK | NY 179341054 PROJECT ALPHA    02109 | ML | $ 12.56 |
| 3/11/2004 | Mail | FEDEX #790083806449 NEW YORK | NY 008380644 PROJECT ALPHA    02109 | ML | $ 19.65 |
| 3/11/2004 | Mail | FEDEX #790083931052 NEW YORK | NY 008393105 PROJECT ALPHA    60610 | ML | $ 23.72 |
| 3/11/2004 | Mail | FEDEX #790576814276 NEW YORK | NY 057681427 PROJECT ALPHA    60610 | ML | $ 16.05 |
| 3/11/2004 | Mail | FEDEX #790576818970 NEW YORK | NY 057681897 PROJECT ALPHA    94111 | ML | $ 18.06 |
| 3/11/2004 | Mail | FEDEX #791177398748 NEW YORK | NY 117739874 PROJECT ALPHA    90024 | ML | $ 18.06 |
| 3/11/2004 | Mail | FEDEX #791794476355 NEW YORK | NY 179447635 PROJECT ALPHA    60601 | ML | $ 16.05 |
| 3/11/2004 | Mail | FEDEX #792449928146 NEW YORK | NY 244992814 PROJECT ALPHA    63141 | ML | $ 23.72 |
| 3/11/2004 | Mail | FEDEX #792450554786 NEW YORK | NY 245055478 PROJECT ALPHA    94105 | ML | $ 18.06 |
| 3/12/2004 | Mail | FEDEX #791178796087 NEW YORK | NY 117879608      92656 | ML | $ 72.12 |
| 3/12/2004 | Mail | FEDEX #792451397448 NEW YORK | NY 245139744 PROJECT ALPHA    90025 | ML | $ 16.10 |
| 3/16/2004 | Mail | FEDEX #790089003300 NEW YORK | NY 008900330 PROJECT ALPHA    63017 | ML | $ 16.05 |
| 3/16/2004 | Mail | FEDEX #790089098663 NEW YORK | NY 008909866 PROJECT ALPHA    60610 | ML | $ 16.05 |
| 3/16/2004 | Mail | FEDEX #792453793700 NEW YORK | NY 245379370 PROJECT ALPHA    10165 | ML | $ 10.78 |
| 3/17/2004 | Mail | FEDEX #790581693009 NEW YORK | NY 058169300 PROJECT ALPHA    60010 | ML | $ 34.09 |
| 3/17/2004 | Mail | FEDEX #790582067516 NEW YORK | NY 058206751 PROJECT ALPHA    10022 | ML | $ 12.79 |
| 3/18/2004 | Mail | FEDEX #791799194510 NEW YORK | NY 179919451 PROJECT ALPHA    11747 | ML | $ 16.05 |
| 3/19/2004 | Mail | FEDEX #790092371433 NEW YORK | NY 009237143 PROJECT ALPHA    60603 | ML | $ 28.55 |
| 3/19/2004 | Mail | FEDEX #791185134740 NEW YORK | NY 118513474 PROJECT ALPHA    60601 | ML | $ 28.55 |
| 3/19/2004 | Mail | FEDEX #791800124738 NEW YORK | NY 180012473 PROJECT ALPLHA   60611 | ML | $ 28.55 |
| 3/19/2004 | Mail | FEDEX #792456885369 NEW YORK | NY 245688536 PROJECT ALPHA    60126 | ML | $ 30.30 |
| 3/22/2004 | Mail | FEDEX #790094741732 NEW YORK | NY 009474173 PROJECT ALPHA    60606 | ML | $ 16.05 |
| 3/22/2004 | Mail | FEDEX #791186730346 NEW YORK | NY 118673034 PROJECT ALPHA    60610 | ML | $ 20.05 |
| 3/22/2004 | Mail | FEDEX #791187449570 NEW YORK | NY 118744957 PROJECT ALPHA    60603 | ML | $ 16.05 |
| 3/22/2004 | Mail | FEDEX #791801297136 NEW YORK | NY 180129713 PROJECT ALPHA    20814 | ML | $ 18.57 |
| 3/23/2004 | Mail | FEDEX #790095451639 NEW YORK | NY 009545163 PROJECT ALPHA    60606 | ML | $ 23.72 |
| 3/23/2004 | Mail | FEDEX #791802376744 NEW YORK | NY 180237674 PROJECT ALPHA    27514 | ML | $ 15.28 |
| 3/24/2004 | Mail | FEDEX #790097591395 NEW YORK | NY 009759139 PROJECT ALPHA    02110 | ML | $ 19.65 |
| 3/24/2004 | Mail | FEDEX #790589654984 NEW YORK | NY 058965498 PROJECT ALPHA    60517 | ML | $ 16.05 |
| 3/24/2004 | Mail | FEDEX #791803939466 NEW YORK | NY 180393946 PROJECT ALPHA    60632 | ML | $ 16.05 |
| 3/26/2004 | Mail | FEDEX #791192040593 NEW YORK | NY 119204059 PROJECT ALPHA    60473 | ML | $ 16.05 |
| 3/26/2004 | Mail | FEDEX #792462371283 NEW YORK | NY 246237128 ALPHA       60606 | ML | $ 14.57 |
| 3/26/2004 | Mail | FEDEX #792601286232 NEW YORK | NY 260128623 ALPHA       60521 | ML | $ 17.80 |
| 3/26/2004 | Mail | FEDEX AB792602715229NEW YORK | NY 792602715 1 FEDEX 1ST PACKAGE | ML | $ 45.77 |
| 3/30/2004 | Mail | FEDEX #791807432956 NEW YORK | NY 180743295 PROJECT ALPHA    60611 | ML | $ 52.72 |
| 3/31/2004 | Mail | FEDEX #790596267404 NEW YORK | NY 059626740 PROJECT ALPHA    60611 | ML | $ 23.72 |
| 3/31/2004 | Mail | FEDEX #791809358202 NEW YORK | NY 180935820 PROJECT ALPHA    60611 | ML | $ 26.59 |
| 4/13/2004 | Mail | FEDEX #791818038457 NEW YORK | NY 181803845      10016 | ML | $ 12.43 |
| 4/13/2004 | Mail | FEDEX #792474317886 NEW YORK | NY 247431788      10025 | ML | $ 12.43 |
| 4/13/2004 | Mail | FEDEX AB791209788313NEW YORK | NY 791209788 1 FEDED 1ST LETTER | ML | $ 21.36 |
| 4/14/2004 | Mail | FEDEX #790609993985 NEW YORK | NY 060999398      10282 | ML | $ 10.68 |
| 4/14/2004 | Mail | FEDEX #792616513580 NEW YORK | NY 261651358      90405 | ML | $ 15.95 |
| 4/15/2004 | Mail | FEDEX #791821024480 NEW YORK | NY 182102448      12204 | ML | $ 10.68 |
| 4/15/2004 | Mail | FEDEX #791821027283 NEW YORK | NY 182102728      08695 | ML | $ 12.67 |
| 4/15/2004 | Mail | FEDEX #792477335016 NEW YORK | NY 247733501      05501 | ML | $ 14.43 |
| 4/15/2004 | Mail | FEDEX #792477337199 NEW YORK | NY 247733719      19255 | ML | $ 12.67 |

ARCHIBALD CANDY CORPORATION
EXPENSES PROCESSED AS OF 04/30/04 (Continued)

| Date | Category | Description | | | Prof. | Amount |
|------|----------|-------------|--|--|-------|--------|
| 4/15/2004 | Mail | FEDEX #845866510008 NEW YORK | NY 586651000 | 08695 | ML | $ 14.08 |
| 4/15/2004 | Mail | FEDEX #845866510019 NEW YORK | NY 586651001 | 12204 | ML | $ 11.87 |
| 4/16/2004 | Mail | FEDEX AB790120563180NEW YORK | NY 790120563 1 HEAVYWEIGHT | | ML | $ 21.36 |
| 4/1/2004 | Meals | VOLARE CHICAGO IL 203000200 FOOD | | 04/01/04 | ML | $ 24.75 |
| 4/14/2004 | Meals | Meals | | | JK | $ 4.50 |
| 4/14/2004 | Meals | Meals | | | JK | $ 34.00 |
| 4/21/2004 | Meals | Meals | | | JK | $ 3.99 |
| 1/12/2004 | Telecom | GENESYS CONFERENCINGHGHLNDS RANCH | CO 052118893 BUSINESS SERVICES | 01/12/04 | ML | $ 2,526.42 |
| 2/12/2004 | Telecom | GENESYS CONFERENCINGHGHLNDS RANCH | CO 052118893 BUSINESS SERVICES | 02/12/04 | ML | $ 2,004.86 |
| 3/9/2004 | Telecom | GENESYS CONFERENCINGHGHLNDS RANCH | CO 025045901 BUSINESS SERVICES | 03/09/04 | ML | $ 203.58 |
| 3/30/2004 | Telecom | GENESYS CONFERENCINGHGHLNDS RANCH | CO 055020889 BUSINESS SERVICES | 03/30/04 | ML | $ 270.40 |
| 4/11/2004 | Telecom | Telecom | | | JK | $ 145.47 |
| 4/19/2004 | Telecom | EFAX PLUS SERVICE 323-817-3205 | CA 12692574 INTERNET SVC | 04/19/04 | ML | $ 10.00 |
| 4/19/2004 | Telecom | EFAX PLUS SERVICE 323-817-3205 | CA 12693199 INTERNET SVC | 04/19/04 | ML | $ 10.00 |
| 4/20/2004 | Telecom | EFAX PLUS SERVICE 323-817-3205 | CA 12695013 INTERNET SVC | 04/20/04 | ML | $ 10.00 |
| 2/10/2004 | Travel | CONTINENTAL AIRLINES PHOENIX | AZ TKT# 0057484866346 | 02/10 | ML | $ 215.20 |
| 2/12/2004 | Travel | TOPTOWN LIMOUSINE RUTHERFORD | NJ 03020154 TRANSPORTATION SERVICES 02/12/04 | | ML | $ 57.00 |
| 2/12/2004 | Travel | TOPTOWN LIMOUSINE RUTHERFORD | NJ 03020154 TRANSPORTATION SERVICES 02/12/04 | | ML | $ 63.00 |
| 2/12/2004 | Travel | PENINSULA HOTEL CHICCHICAGO | IL 0000-0212 LODGING | 02/12/04 | ML | $ 296.09 |
| 2/13/2004 | Travel | CONTINENTAL AIRLINES HOUSTON TX 05018405 MISC ONEPASS CHARGE | | 02/13/04 | ML | $ 35.00 |
| 2/18/2004 | Travel | AMERICAN TRANS AIR PHOENIX | AZ TKT# 3667486690496 | 02/18 | ML | $ 222.20 |
| 2/19/2004 | Travel | CONTINENTAL AIRLINES MIDWAY | IL TKT# 0052180144149 | 02/19 | ML | $ 307.60 |
| 2/19/2004 | Travel | NEWARK ARPRT PRKNG QNEWARK | NJ 000193159 AUTO PARKING LOTS/GARAG 02/19/04 | | ML | $ 35.00 |
| 2/20/2004 | Travel | AIR TKT SERVICE FEE ISSUED BY AMEX 71906388 LEVY/MICHAEL E | | 02/20/04 | ML | $ 29.00 |
| 2/25/2004 | Travel | TRAVEL AGENCY SERVICESPRINGFIELD MO TKT# 8908141077776 | | 02/25 | ML | $ 10.00 |
| 2/25/2004 | Travel | AIRTRAN AIRWAYS SPRINGFIELD MO TKT# 3327542291768 | | 02/25 | ML | $ 330.50 |
| 2/27/2004 | Travel | AIR TKT SERVICE FEE ISSUED BY AMEX 72516167 LEVY/MICHAEL E | | 02/27/04 | ML | $ 29.00 |
| 3/17/2004 | Travel | AMERICAN TRANS AIR NEWARK | NJ TKT# 3662154199251 | 03/17 | ML | $ 279.20 |
| 3/18/2004 | Travel | CONTINENTAL AIRLINES PHOENIX | AZ TKT# 0057492782237 | 03/18 | ML | $ 160.60 |
| 3/19/2004 | Travel | PENINSULA HOTEL CHICCHICAGO | IL 0000-0319 LODGING | 03/19/04 | ML | $ 234.40 |
| 3/26/2004 | Travel | AIR TKT SERVICE FEE ISSUED BY AMEX 75168845 LEVY/MICHAEL E | | 03/26/04 | ML | $ 29.00 |
| 3/29/2004 | Travel | CONTINENTAL AIRLINES PHOENIX | AZ TKT# 0057494963478 | 03/29 | ML | $ 235.20 |
| 3/29/2004 | Travel | CONTINENTAL AIRLINES PHOENIX | AZ TKT# 0057494963489 | 03/29 | ML | $ 235.20 |
| 3/29/2004 | Travel | AMERICAN TRANS AIR PHOENIX | AZ TKT# 3667494963517 | 03/29 | ML | $ 215.20 |
| 3/29/2004 | Travel | AMERICAN TRANS AIR PHOENIX | AZ TKT# 3667494963536 | 03/29 | ML | $ 283.20 |
| 3/29/2004 | Trans / Pkg | Taxi | | | JK | $ 17.00 |
| 3/30/2004 | Trans / Pkg | Train to Airport | | | MK | $ 11.55 |
| 3/30/2004 | Trans / Pkg | Taxi from Airport to Hotel | | | MK | $ 27.00 |
| 3/30/2004 | Trans / Pkg | Taxi | | | JK | $ 27.00 |
| 3/31/2004 | Trans / Pkg | Taxi | | | JK | $ 35.00 |
| 3/31/2004 | Trans / Pkg | Taxi | | | JK | $ 21.00 |
| 4/1/2004 | Trans / Pkg | Taxi from Hotel to Jenner | | | MK | $ 5.00 |
| 4/2/2004 | Trans / Pkg | NEWARK ARPRT PRKNG QNEWARK | NJ 000323537 AUTO PARKING LOTS/GARAG 04/02/04 | | ML | $ 120.00 |
| 4/2/2004 | Trans / Pkg | Taxi from Hotel to Airport | | | MK | $ 27.00 |
| 4/2/2004 | Trans / Pkg | Train from Airport to Office | | | MK | $ 5.00 |
| 4/7/2004 | Trans / Pkg | Taxi | | | JK | $ 17.00 |
| 4/8/2004 | Trans / Pkg | Taxi | | | JK | $ 33.90 |
| 4/8/2004 | Trans / Pkg | Taxi | | | JK | $ 33.90 |
| 4/12/2004 | Trans / Pkg | Taxi | | | JK | $ 17.00 |
| 4/13/2004 | Trans / Pkg | Taxi | | | JK | $ 23.00 |
| 4/14/2004 | Trans / Pkg | Taxi | | | JK | $ 17.00 |
| 4/15/2004 | Trans / Pkg | Taxi | | | JK | $ 18.00 |
| 4/16/2004 | Trans / Pkg | Taxi | | | JK | $ 16.00 |
| 4/19/2004 | Trans / Pkg | Taxi | | | JK | $ 17.00 |
| 4/21/2004 | Trans / Pkg | Taxi | | | JK | $ 37.67 |
| 4/21/2004 | Trans / Pkg | Taxi | | | JK | $ 37.67 |
| 4/22/2004 | Trans / Pkg | Taxi | | | JK | $ 15.00 |
| 4/3/2004 | Travel | PENINSULA HOTEL CHICCHICAGO | IL 0000-0403 LODGING | 04/03/04 | ML | $ 32.18 |
| 4/3/2004 | Travel | PENINSULA HOTEL CHICCHICAGO | IL 0000-0403 LODGING | 04/03/04 | ML | $ 3,273.41 |
| 4/7/2004 | Travel | AIR CANADA PHOENIX | AZ TKT# 0147496862959 | 04/07 | ML | $ 752.14 |
| 4/7/2004 | Travel | AIR CANADA PHOENIX | AZ TKT# 0147496862960 | 04/07 | ML | $ 752.14 |
| 4/7/2004 | Travel | AIR CANADA PHOENIX | AZ TKT# 0147496862974 | 04/07 | ML | $ 539.30 |
| 4/9/2004 | Travel | AIR TKT SERVICE FEE ISSUED BY AMEX 75883028 LEVY/MICHAEL E | | 04/09/04 | ML | $ 29.00 |
| 4/9/2004 | Travel | AIR TKT SERVICE FEE ISSUED BY AMEX 75883030 KHOUZAM/MARC | | 04/09/04 | ML | $ 29.00 |
| 4/9/2004 | Travel | AIR TKT SERVICE FEE ISSUED BY AMEX 75883041 KINGSLEY/JEFFR | | 04/09/04 | ML | $ 29.00 |
| 4/9/2004 | Travel | AIR TKT SERVICE FEE ISSUED BY AMEX 75883043 GOLDSTEIN/TATI | | 04/09/04 | ML | $ 29.00 |
| 4/16/2004 | Travel | AIR TKT SERVICE FEE ISSUED BY AMEX 76586313 GOLDSTEIN/TATI | | 04/16/04 | ML | $ 29.00 |
| 4/16/2004 | Travel | AIR TKT SERVICE FEE ISSUED BY AMEX 76586314 KINGSLEY/JEFFR | | 04/16/04 | ML | $ 29.00 |
| 4/16/2004 | Travel | AIR TKT SERVICE FEE ISSUED BY AMEX 76586324 LEVY/MICHAEL E | | 04/16/04 | ML | $ 29.00 |
| 4/20/2004 | Travel | AIR CANADA PHOENIX | AZ TKT# 0147499479525 | 04/20 | ML | $ 590.49 |
| 4/20/2004 | Travel | AIR CANADA PHOENIX | AZ TKT# 0147499479608 | 04/20 | ML | $ 751.74 |
| 4/21/2004 | Travel | Currency Exchange | | | JK | $ 1.13 |
| 4/29/2004 | Travel | UNITED AIRLINES PHOENIX | AZ TKT# 0167501462982 | 04/29 | ML | $ 359.22 |

| | | |
|--|--|--|
| COPIES/PRINTING/MAILING | $ | 2,911.01 |
| INFO SERVICES | $ | - |
| MEALS | $ | 42.49 |
| MISCELLANEOUS | $ | - |
| TELECOM / CONF CALLS | $ | 5,180.73 |
| TRANS / PKG | $ | 578.69 |
| TRAVEL (AIR / HOTEL) | $ | 7,254.75 |
| TOTAL | $ | 15,967.67 |

**EXHIBIT 4**

## INVOICE

Archibald Candy Corporation                                        August 6, 2004
1137 West Jackson Boulevard
Chicago, IL 60607

Attention:      Rick Anglin
                Chief Financial Officer

---

**Re: Laura Secord**

For advisory services rendered in accordance with engagement letter dated January 20, 2004 as amended.

Success Fee and Out of Pocket Expenses Due
Upon Closing of Sale of Laura Secord                        C$938,367.64
(calculations/itemization shown on the following pages)

Please remit payment to Paragon Capital Partners, LLC via the following wire transfer instructions:

Financial Institution:       JPMorgan Chase Bank
ABA Number:                  021 000 021
For Account Number:          535 500 701 765
For the Account of:          Paragon Capital Partners, LLC
Address:                     450 Park Avenue, Suite 2500, New York, NY 10022
Phone:                       212-894-0275
Reference:                   Attention Michael Levy – Laura Secord – Invoice 08/06/04

**Calculation of Amount to be Wired to Paragon at Closing of Laura Secord**
$ = US Currency; C$ = Canadian Currency

| | | Amount in U.S. Currency | Consideration in Canadian Currency | Fee Due to Paragon in Canadian Currency | Comments |
|---|---|---|---|---|---|
| 1. Success Fee | Purchase Price per APA | | C$27,600,000.00 | | |
| | Plus: NWC at Closing less C$5.7mm Estimated NWC | | C$997,000.00 | | NWC at Closing equals C$6.697 mm |
| | Plus: Value of Waiving Conditions and Early Closing | | C$3,525,000.00 | | |
| | Sub-Total | | C$32,122,000.00 | C$963,660.00 | 3% of aggregate consideration |
| | Less: Amount Paid into Escrow | | (C$750,000.00) | (C$22,500.00) | To be paid to Paragon when and if released from escrow |
| | | | C$31,372,000.00 | C$941,160.00 | |
| 2. Less: Credit for Monthly Fees PAID to Paragon since FM/FF transaction | $ | (20,000.00) | NA | (C$26,250.00) | Credit for US$20,000 April 2004 fee; no monthly fees have been paid since Paragon's invoice dated 4/30/04. Currency conversion rate per Bloomberg at 7pm on 8/6/04 (equivalent to C$1.3125 per US$). |
| 3. Plus: Out-of-Pocket Expenses Processed Since Invoice of April 30, 2004 | $ | 17,872.49 | NA | C$23,457.64 | Expenses as itemized in the attachment. Currency conversion rate per Bloomberg at 7pm on 8/6/04 (equivalent to C$1.3125 per US$). |

**AMOUNT OWED TO PARAGON BY WIRE TRANSFER AT CLOSING**       C$938,367.64

NOTE:   MAXIMUM INCREMENTAL AMOUNT OWED TO PARAGON WHEN AND IF
C$750K POST-CLOSING ESCROW IS RELEASED       C$22,500.00   3% x Escrow released (up to C$22,500.00)

ITEMIZED OUT-OF-POCKET EXPENSES

ARCHIBALD CANDY CORPORATION
EXPENSES PROCESSED AS OF 07/29/04 NOT PREVIOUSLY PAID

| Date | Category | Description | | Amount |
|------|----------|-------------|--|--------|
| 4/20/2004 | MAILING | Fedex - Merrill Corporation | $ | 15.90 |
| 4/22/2004 | MAILING | Fedex - Sarris Candies | $ | 21.36 |
| 4/22/2004 | MAILING | Fedex - Lincolnshire | $ | 23.26 |
| 4/22/2004 | MAILING | Fedex - Marcus Financial | $ | 33.46 |
| 4/22/2004 | MAILING | Fedex - Tricor Pacific | $ | 33.46 |
| 4/23/2004 | MAILING | Fedex - Gordon Bros | $ | 16.37 |
| 4/23/2004 | MAILING | Fedex - Kinetic Capital | $ | 33.46 |
| 4/26/2004 | MAILING | Fedex - Chequers Mgmt | $ | 43.46 |
| 4/26/2004 | MAILING | Fedex - Jenner & Block | $ | 26.34 |
| 4/28/2004 | MAILING | Fedex - Merrill Corporation | $ | 40.11 |
| 4/28/2004 | MAILING | Fedex - Christopher Arnold | $ | 17.97 |
| 4/30/2004 | MAILING | Fedex - Canada Trust Tower | $ | 33.46 |
| 4/30/2004 | MAILING | Fedex - M&M Meat Shops | $ | 32.92 |
| 4/30/2004 | MAILING | Fedex - Merrill Corporation | $ | 49.29 |
| 5/5/2004 | MAILING | Fedex - TD Capital | $ | 21.47 |
| 5/5/2004 | MAILING | Fedex - Merrill Corporation | $ | 34.58 |
| 5/11/2004 | MAILING | Fedex - Wynnchurch | $ | 26.47 |
| 5/12/2004 | MAILING | Fedex - Osler | $ | 91.99 |
| 5/12/2004 | MAILING | Fedex - Archibald | $ | 25.51 |
| 5/12/2004 | MAILING | Fedex - Jenner & Block | $ | 25.51 |
| 5/12/2004 | MAILING | Fedex - Arbor International | $ | 46.15 |
| 5/19/2004 | MAILING | Fedex - Neil Thomson | $ | 36.25 |
| 5/21/2004 | MAILING | Fedex - Laura Secord | $ | 43.24 |
| 6/8/2004 | MAILING | Fedex - Jenner & Block | $ | 15.97 |
| 6/8/2004 | MAILING | Fedex - Ropes & Gray | $ | 17.65 |
| 6/8/2004 | MAILING | Fedex - Ropes & Gray | $ | 14.50 |
| 6/14/2004 | MAILING | Fedex - Goldstein & Digiola | $ | 13.83 |
| 6/15/2004 | MAILING | Fedex - Osler, Hoskin & Harcourt | $ | 46.15 |
| 4/28/2004 | MEALS | CENTRO GRILL & WINE TORONTO | $ | 31.78 |
| 5/26/2004 | MEALS | Au Bon Pain | $ | 3.67 |
| 6/9/2004 | MEALS | QUAYSIDE RESTAURANT TORONTO | $ | 18.26 |
| 6/29/2004 | MEALS | HARRY CARAY'S 7TH INCHICAGO | $ | 23.59 |
| 7/22/2004 | MEALS | PIZZA RUSTICA-TORONTTORONTO | $ | 37.05 |
| 7/23/2004 | MEALS | HOST-TORONTO AIRPORTTORONTO | $ | 9.39 |
| 7/23/2004 | MEALS | Terminal Purchase - Evian | $ | 2.19 |
| 4/30/2004 | TELECOM | GENESYS CONFERENCING-LAURA SECORD | $ | 150.02 |
| 7/9/2004 | TELECOM | GENESYS CONFERENCING-LAURA SECORD | $ | 111.02 |
| 7/26/2004 | TELECOM | GENESYS CONFERENCING-LAURA SECORD | $ | 219.56 |

ITEMIZED OUT-OF-POCKET EXPENSES (Continued)

ARCHIBALD CANDY CORPORATION
EXPENSES PROCESSED AS OF 07/29/04 NOT PREVIOUSLY PAID

| Date | Category | Description | Amount |
|------|----------|-------------|-------:|
| 4/8/2004 | TRANS / PKG | Airport Taxi/Travel | $ 45.00 |
| 4/8/2004 | TRANS / PKG | Able-Atlantic Taxi/Travel | $ 45.00 |
| 4/21/2004 | TRANS / PKG | Airport Limousine/Travel | $ 58.00 |
| 4/21/2004 | TRANS / PKG | Beck Taxi/Travel | $ 50.00 |
| 4/23/2004 | TRANS / PKG | PEARSON TAXI & LIMO  MISSISSAUG | $ 38.42 |
| 4/24/2004 | TRANS / PKG | G T A LIMO TAXI TRAVEL TORONTO | $ 40.26 |
| 4/29/2004 | TRANS / PKG | NEWARK ARPRT PRKNG QNEWARK | $ 120.00 |
| 4/30/2004 | TRANS / PKG | Taxi Service - Travel | $ 24.00 |
| 4/30/2004 | TRANS / PKG | Taxi Service - Travel | $ 9.60 |
| 5/19/2004 | TRANS / PKG | AIRPORT TAXI & LIMO MISSISSAUGA | $ 38.59 |
| 5/19/2004 | TRANS / PKG | Taxi Service - Travel | $ 8.00 |
| 5/21/2004 | TRANS / PKG | Taxi Service - Travel | $ 26.00 |
| 5/21/2004 | TRANS / PKG | NEWARK ARPRT PRKNG QNEWARK | $ 90.00 |
| 5/25/2004 | TRANS / PKG | G T A LIMO TAXI TRAVEL TORONTO | $ 40.63 |
| 5/25/2004 | TRANS / PKG | Taxi Service - Travel | $ 6.00 |
| 5/26/2004 | TRANS / PKG | Royal Taxi | $ 10.00 |
| 5/26/2004 | TRANS / PKG | Airline Limousine | $ 55.00 |
| 5/27/2004 | TRANS / PKG | Taxi Service - Out of Town Travel | $ 32.00 |
| 5/27/2004 | TRANS / PKG | NEWARK INT'L AIRPORTNEWARK | $ 90.00 |
| 5/27/2004 | TRANS / PKG | Royal Taxi | $ 50.00 |
| 6/11/2004 | TRANS / PKG | AIRPORT TAXI & LIMO MISSISSAUGA | $ 42.86 |
| 6/11/2004 | TRANS / PKG | Taxi Service - Travel | $ 34.00 |
| 6/29/2004 | TRANS / PKG | Taxi Service - Travel | $ 27.00 |
| 6/30/2004 | TRANS / PKG | Taxi Service - Travel | $ 29.00 |
| 7/13/2004 | TRANS / PKG | NYC Taxi/Airport | $ 25.00 |
| 7/15/2004 | TRANS / PKG | Taxi Service - Travel | $ 24.00 |
| 7/15/2004 | TRANS / PKG | Taxi Service - Travel | $ 28.00 |
| 7/19/2004 | TRANS / PKG | NYC Taxi/Airport | $ 18.00 |
| 7/20/2004 | TRANS / PKG | Taxi Service - Travel | $ 38.00 |
| 7/22/2004 | TRANS / PKG | Beck Taxi | $ 7.59 |
| 7/23/2004 | TRANS / PKG | Taxi Service - Out of Town Travel | $ 42.00 |
| 7/23/2004 | TRANS / PKG | NEWARK LIBERTY INTL NEWARK | $ 102.00 |
| 7/23/2004 | TRANS / PKG | Diamond Taxi | $ 34.17 |
| 7/26/2004 | TRANS / PKG | Taxi Service - Travel | $ 30.00 |
| 7/27/2004 | TRANS / PKG | Taxi Service - Travel | $ 5.00 |
| 7/27/2004 | TRANS / PKG | Taxi Service - Travel | $ 32.00 |
| 7/27/2004 | TRANS / PKG | LAGUARDIA AIRPORT   FLUSHING | $ 24.00 |

ITEMIZED OUT-OF-POCKET EXPENSES (Continued)

ARCHIBALD CANDY CORPORATION
EXPENSES PROCESSED AS OF 07/29/04

| Date | Category | Description | | Amount |
|------|----------|-------------|---|--------|
| 4/25/2004 | TRAVEL | AIR CANADA        PHOENIX | $ | 519.54 |
| 4/29/2004 | TRAVEL | SOHO METROPOLITAN HOTORONTO | $ | 943.62 |
| 4/30/2004 | TRAVEL | AIR TKT SERVICE FEE ISSUED BY A | $ | 29.00 |
| 4/30/2004 | TRAVEL | AIR TKT SERVICE FEE ISSUED BY A | $ | 29.00 |
| 4/30/2004 | TRAVEL | AIR TKT SERVICE FEE ISSUED BY A | $ | 29.00 |
| 5/18/2004 | TRAVEL | AIR CANADA        PHOENIX | $ | 731.80 |
| 5/18/2004 | TRAVEL | AIR CANADA        PHOENIX | $ | 731.80 |
| 5/18/2004 | TRAVEL | AIR CANADA        PHOENIX | $ | 552.27 |
| 5/21/2004 | TRAVEL | AIR CANADA        PHOENIX | $ | 20.00 |
| 5/21/2004 | TRAVEL | ROYAL YORK HOTEL   TORONTO | $ | 15.02 |
| 5/21/2004 | TRAVEL | ROYAL YORK HOTEL   TORONTO | $ | 517.27 |
| 5/21/2004 | TRAVEL | ROYAL YORK HOTEL   TORONTO | $ | 679.56 |
| 5/24/2004 | TRAVEL | AMERICAN AIRLINES   NEW YORK | $ | 731.60 |
| 5/24/2004 | TRAVEL | AIR CANADA        PHOENIX | $ | 669.24 |
| 5/27/2004 | TRAVEL | AMERICAN AIRLINES   DALLAS | $ | 20.00 |
| 5/27/2004 | TRAVEL | ROYAL MERID KING ED-TORONTO | $ | 341.02 |
| 5/27/2004 | TRAVEL | SOHO METROPOLITAN HOTORONTO | $ | 364.91 |
| 5/28/2004 | TRAVEL | AIR TKT SERVICE FEE ISSUED BY A | $ | 29.00 |
| 5/28/2004 | TRAVEL | AIR TKT SERVICE FEE ISSUED BY A | $ | 29.00 |
| 5/28/2004 | TRAVEL | AIR TKT SERVICE FEE ISSUED BY A | $ | 29.00 |
| 6/3/2004 | TRAVEL | CONTINENTAL AIRLINES HOUSTON | $ | 1,685.50 |
| 6/4/2004 | TRAVEL | AIR TKT SERVICE FEE ISSUED BY A | $ | 29.00 |
| 6/7/2004 | TRAVEL | AIR CANADA        PHOENIX | $ | 586.97 |
| 6/9/2004 | TRAVEL | HYATT HOTELS PARK HYTORONTO | $ | 10.03 |
| 6/9/2004 | TRAVEL | HYATT HOTELS PARK HYTORONTO | $ | 288.09 |
| 6/10/2004 | TRAVEL | CONTINENTAL AIRLINES HOUSTON | $ | 36.25 |
| 6/18/2004 | TRAVEL | AIR TKT SERVICE FEE ISSUED BY A | $ | 29.00 |
| 6/28/2004 | TRAVEL | CONTINENTAL AIRLINES PHOENIX | $ | 272.20 |
| 6/29/2004 | TRAVEL | NEWARK LIBERTY INTL NEWARK | $ | 30.00 |
| 6/30/2004 | TRAVEL | PENINSULA HOTEL CHICCHICAGO | $ | 354.45 |
| 6/30/2004 | TRAVEL | *SUBTRACTION FOR NON-REIMBURSABLE EXPENSES AT PENINSULA* | $ | (53.26) |
| 7/9/2004 | TRAVEL | AIR TKT SERVICE FEE ISSUED BY A | $ | 29.00 |
| 7/15/2004 | TRAVEL | AMERICAN AIRLINES   PHOENIX | $ | 383.22 |
| 7/15/2004 | TRAVEL | AIR CANADA        PHOENIX | $ | 377.84 |
| 7/16/2004 | TRAVEL | CONTINENTAL AIRLINES PHOENIX | $ | 377.84 |
| 7/22/2004 | TRAVEL | AIR CANADA        PHOENIX | $ | 444.49 |
| 7/22/2004 | TRAVEL | SOHO METROPOLITAN HOTORONTO/07/20/04 -07/22/04 -  KINGSLEY 3NTS | $ | 585.34 |
| 7/22/2004 | TRAVEL | SOHO METROPOLITAN HOTORONTO-RICK ANGLIN/07/20/04-07/22/04 3NTS | $ | 547.87 |
| 7/22/2004 | TRAVEL | SOHO METROPOLITAN HOTORONTO/INCLUDING MEALS - LEVY/07/20-07/22/04 3NTS | $ | 641.33 |
| 7/22/2004 | TRAVEL | *SUBTRACTION FOR NON-REIMBURSABLE EXPENSES AT SOHO METROPOLITAN* | $ | (54.00) |
| 7/23/2004 | TRAVEL | AIR TKT SERVICE FEE ISSUED BY A | $ | 29.00 |
| 7/23/2004 | TRAVEL | SOHO METROPOLITAN HOTORONTO/INCLUDING MEALS-KINGSLEY 1NT | $ | 284.54 |
| 7/23/2004 | TRAVEL | AIR TKT SERVICE FEE ISSUED BY A | $ | 29.00 |
| 7/23/2004 | TRAVEL | AIR TKT SERVICE FEE ISSUED BY A | $ | 29.00 |
| 7/23/2004 | TRAVEL | SOHO METROPOLITAN HOTORONTO/INCLUDING DINNER-LEVY | $ | 337.70 |
| 7/23/2004 | TRAVEL | *SUBTRACTION FOR NON-REIMBURSABLE EXPENSES AT SOHO METROPOLITAN* | $ | (87.00) |
| 7/23/2004 | TRAVEL | AIR CANADA        TORONTO | $ | 23.80 |
| 7/23/2004 | TRAVEL | AIR CANADA        TAMPA | $ | 20.00 |
| 7/26/2004 | TRAVEL | AMERICAN AIRLINES   LEVY,M | $ | 481.20 |
| 7/28/2004 | TRAVEL | PENINSULA HOTEL CHICCHICAGO/INCLUDING MEALS - LEVY | $ | 315.33 |
| 7/28/2004 | TRAVEL | *SUBTRACTION FOR NON-REIMBURSABLE EXPENSES AT PENINSULA* | $ | (108.63) |

| | | |
|---|---|---|
| COPIES/PRINTING/MAILING | $ | 880.09 |
| INFO SERVICES | $ | - |
| MEALS | $ | 125.93 |
| MISCELLANEOUS | $ | - |
| TELECOM / CONF CALLS | $ | 480.60 |
| TRANS / PKG | $ | 1,419.12 |
| TRAVEL (AIR / HOTEL) | $ | 14,966.75 |
| TOTAL | $ | 17,872.49 |

## EXHIBIT 5





## Currency conversion results

**Date:**        **188,984.07 in Canadian dollars equals:**        **Exchange rate:**

29 Jul 2004   **142,651.02 US dollars (noon)**                     **0.7548** (1.3248)

If you have selected a weekend date, the nearest business dates are used instead.

Conversions are based on Bank of Canada "nominal rates", which are neither buying nor selling rates. Rates available from financial institutions will likely differ.

### Explanation of results

Copyright © 1995-2001, Bank of Canada. Permission is granted to reproduce or cite portions herein, if proper attribution is given to the Bank of Canada. Site maintained by Brent Eades, webmaster@bank-banque-canada.ca.