**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Case No. 04 B 03200 |
| | ) | |
| ARCHIBALD CANDY CORPORATION AND | ) | Chapter 11 |
| ARCHIBALD MIDDLE HOLDINGS CORP., | ) | |
| | ) | Jointly Administered |
| | ) | **Hearing Date:  June 7, 2005 at 10:30 a.m.** |
| | ) | **Objection Deadline:  June 1, 2005 at 4:00 p.m.** |
| Debtors. | | |

**THIRD INTERIM AND FINAL APPLICATION OF**
**JENNER & BLOCK LLP FOR ALLOWANCE**
**OF COMPENSATION AND REIMBURSEMENT OF EXPENSES**

| | |
|---|---|
| Name of Applicant: | **JENNER & BLOCK LLP** |
| Authorized to Provide Professional Services to: | Debtors and Debtors-in-Possession |
| Date of Retention: | January 28, 2004 (effective) |
| Period for which Interim Compensation and Reimbursement is Sought: | October 1, 2004 through June 7, 2005 |
| Interim Amount of Compensation Sought: | $233,909.00 |
| Interim Amount of Expense Reimbursement Sought: | $10,852.39 |
| This is the: | **Third Interim Application** |
| Period for which Final Compensation and Reimbursement is Sought: | January 28, 2004 - June 7, 2005 |
| Final Amount of Compensation Sought: | $1,681,661.85 |
| Final Amount of Expense Reimbursement Sought: | $81,482.84 |
| This is the: | **Final Application** |

Respectfully submitted,


_____*/s/ Peter A. Siddiqui*_____

Mark K. Thomas (ARDC # 6181453)
Peter A. Siddiqui (ARDC # 6278445)
JENNER & BLOCK LLP
One IBM Plaza
Chicago, IL  60611
Phone: (312) 222-9350
Facsimile: (312) 840-7599

Counsel to Debtors and
Debtors-In-Possession

## SUMMARY OF TIMEKEEPERS AND HOURS[1]

| Name | Date of Bar Admission | 2004 Hourly Rate | 2005 Hourly Rate | Third Interim Period Hours | Interim Dollars | Total Hours | Total Dollars |
|---|---|---|---|---|---|---|---|
| **Partners** | | | | | | | |
| Mark K. Thomas | 1981 | $565.00 | $625.00 | 99.0 | $57,037.00 | 748.30 | $423,665.50 |
| Donald I. Resnick | 1975 | $520.00 | N/A | N/A | N/A | 12.6 | $5,772.00 |
| William L. Scogland | 1975 | $565.00 | N/A | N/A | N/A | 4.7 | $2,665.50 |
| Carla J. Rozycki | 1977 | $450.00 | N/A | N/A | N/A | 0.2 | $90.00 |
| Christian E. Kimball | 1983 | $540.00 | N/A | 1.3 | $702.00 | 1.6 | $864.00 |
| Donald S. Horvath | 1984 | $450.00 | N/A | N/A | N/A | 0.3 | $135.00 |
| Timothy J. Chorvat | 1986 | $450.00 | N/A | N/A | N/A | 164.30 | $73,935.00 |
| Teri A. Lindquist | 1986 | $450.00 | N/A | N/A | N/A | 2.0 | $900.00 |
| Thomas F. Cooke | 1987 | $415.00 | N/A | N/A | N/A | 119.2 | $49,468.00 |
| Christopher D. Dwyer | 1992 | $425.00 | N/A | N/A | N/A | 0.5 | $212.50 |
| John P. Sieger | 1994 | $415.00 | $475.00 | 202.30 | $88,544.50 | 1,021.20 | $428,388.00 |
| Adam Petravicius | 1995 | $405.00 | N/A | N/A | N/A | 18.2 | $7,371.00 |
| Edward J. Neveril | 1996 | $385.00 | N/A | N/A | N/A | 21.2 | $8,162.00 |
| **Associates** | | | | | | | |
| Geoffrey M. Davis | 1992 | $365.00 | $410.00 | 19.9 | $7,299.50 | 52.50 | $19,198.50 |
| Elizabeth A. Davidson | 1997 | $365.00 | N/A | 0.2 | $73.00 | 2.1 | $766.50 |
| Michael C. Rupe | 1997 | $365.00 | N/A | 74.8 | $27,302.00 | 552.85 | $201,790.25 |
| Julie M. Mandanas | 1997 | $365.00 | N/A | N/A | N/A | 2.3 | $839.50 |
| Darren M. Mungerson | 1998 | $350.00 | N/A | N/A | N/A | 7.4 | $2,590.00 |
| Jeffrey S. Srulovitz | 1998 | $350.00 | N/A | N/A | N/A | 0.5 | $175.00 |
| Julio C. Martin | 1998 | $350.00 | N/A | N/A | N/A | 10.7 | $3,745.00 |
| David M. Neville | 2000 | $280.00 | N/A | N/A | N/A | 54.2 | $15,176.00 |

---

[1] This summary sets forth the actual time spent by Jenner professionals during these Chapter 11 Cases, less any amounts already disallowed by the Court.  Due to the circumstances and the timing of the conversion of these cases, Jenner does not yet know the precise fees and expenses incurred in May and June 2005.  Jenner has included an estimate of $13,000 in fees and $2,500 in expenses during this period.  Jenner will supplement this Application with the accurate figures at the appropriate time.

| Name | Date of Bar Admission | 2004 Hourly Rate | 2005 Hourly Rate | Third Interim Period Hours | Interim Dollars | Total Hours | Total Dollars |
|---|---|---|---|---|---|---|---|
| Iordan Peev | 2000 | $210.00 | N/A | N/A | N/A | 5.5 | $1,155.00 |
| Raymond D. Sinnappan | 2000 | $280.00 | N/A | N/A | N/A | 46.3 | $12,964.00 |
| Ross H. Friedman | 2001 | $250.00 | N/A | N/A | N/A | 11.6 | $2,900.00 |
| David P. Hooper | 2001 | $250.00 | N/A | N/A | N/A | 3.5 | $875.00 |
| Karen Levy | 2001 | $250.00 | N/A | N/A | N/A | 18.1 | $4,525.00 |
| Peter A. Siddiqui | 2002 | $210.00 | $250.00 | 136.1 | $34,827.50 | 661.9 | $145,245.50 |
| Peter J. Young | 2002 | $210.00 | $275.00 | 1.1 | $302.50 | 201.7 | $42,368.50 |
| Gabriel Reilly-Bates | 2003 | $195.00 | N/A | 0.5 | $97.50 | 231.2 | $45,084.00 |
| Jeremy T. Stillings | 2003 | $195.00 | N/A | N/A | N/A | 42.0 | $8,190.00 |
| Martez M. Clark | 2003 | $195.00 | N/A | N/A | N/A | 92.6 | $18,057.00 |
| Jeffrey R. Shuman | 2003 | $195.00 | N/A | N/A | N/A | 5.4 | $1,053.00 |
| Amber R. DeLong | 2003 | $195.00 | N/A | N/A | N/A | 12.5 | $2,437.50 |
| Jayne Laiprasert | 2004 | N/A | $215.00 | 6.1 | $1,311.50 | 6.1 | $1,311.50 |
| **Paralegal** | | | | | | | |
| Michael H. Matlock | N/A | $200.00 | $210.00 | 9.5 | $1,946.00 | 324.7 | $64,986.00 |
| Cassandra D. Smith | N/A | $200.00 | N/A | N/A | N/A | 3.5 | $700.00 |
| Julie B. Ginsberg | N/A | $180.00 | N/A | N/A | N/A | 2.0 | $360.00 |
| Neil H. Berger | N/A | $180.00 | N/A | N/A | N/A | 9.0 | $1,620.00 |
| Michael L. Whitchurch | N/A | $180.00 | N/A | N/A | N/A | 0.8 | $144.00 |
| **Project Assistants** | | | | | | | |
| Paul F. Flaig | N/A | $100.00 | N/A | N/A | N/A | 3.0 | $300.00 |
| Morgan C. Pytynia-Klein | N/A | $100.00 | N/A | N/A | N/A | 4.5 | $450.00 |
| Michael F. Basford | N/A | $100.00 | N/A | 7.7 | $770.00 | 20.5 | $2,050.00 |
| Randy A. Hannig, Jr. | N/A | $100.00 | N/A | N/A | N/A | 67.9 | $6,790.00 |
| Linda Jong | N/A | $100.00 | N/A | N/A | N/A | 1.2 | $120.00 |
| Jessica L. Niezgoda | N/A | $100.00 | N/A | N/A | N/A | 461.7 | $46,170.00 |
| Stephen T. O'Neal | N/A | $100.00 | N/A | N/A | N/A | 83.5 | $8,350.00 |
| Marc A. Patterson | N/A | $100.00 | N/A | 0.9 | $90.00 | 20.2 | $2,020.00 |
| Carolyn A. Miller | N/A | $100.00 | N/A | 5.5 | $550.00 | 22.1 | $2,210.00 |

| Name | Date of Bar Admission | 2004 Hourly Rate | 2005 Hourly Rate | Third Interim Period Hours | Interim Dollars | Total Hours | Total Dollars |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| **TOTAL** | | | | 565.3 | **$220,853.00** | **5,159.35** | **$1,668,605.25** |
| **BLENDED RATE (per hour)** | **Third Interim Period** | | | | | | $390.68 |
| | **Final Fee Application** | | | | | | $323.41 |

3

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 04 B 03200 |
| | ) | |
| ARCHIBALD CANDY CORPORATION AND | ) | Chapter 11 |
| ARCHIBALD MIDDLE HOLDINGS CORP., | ) | |
| | ) | Jointly Administered |
| | ) | **Hearing Date:  June 7, 2005 at 10:30 a.m.** |
| | ) | **Objection Deadline:  June 1, 2005 at 4:00 p.m.** |
| Debtors. | | |

**THIRD INTERIM AND FINAL APPLICATION OF**
**JENNER & BLOCK LLP FOR ALLOWANCE**
**OF COMPENSATION AND REIMBURSEMENT OF EXPENSES**

The law firm of Jenner & Block, LLP ("Jenner") submits this combined: (1) Third Interim Application for Allowance of Compensation and Reimbursement of Expenses (the "Third Interim Application") for professional services rendered and costs incurred by Jenner for the period beginning on October 1, 2004 and ending June 7, 2005 (the "Third Interim Application Period"); and (2) Final Application for Allowance of Compensation and Reimbursement of Expenses (the "Final Application") for professional services rendered and costs incurred by Jenner for the period beginning on January 28, 2004 and ending June 7, 2005 (the "Final Application Period").

**I.  PRELIMINARY STATEMENT**

A.  Background

1.     On January 28, 2004, the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Illinois.  The Court has ordered the joint administration of these chapter 11 cases (the "Chapter 11 Cases").

2.    The Debtors continue in possession of their properties as debtors and debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Office of the United States Trustee has appointed an official committee of unsecured creditors (the "Committee") in the Chapter 11 Cases.  No trustee or examiner has been appointed.

3.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.    The statutory predicates for the relief requested herein are sections 330, 331 and 503(b)(1)(A) of the Bankruptcy Code, Rule 2016 of the Federal Rules of Bankruptcy Procedure, and Rule 5082-1 of the Local Rules for the United States Bankruptcy Court for the Northern District of Illinois.

B.  Retention of Jenner

5.    By Order Approving Application for Order Authorizing the Employment and Retention of Jenner & Block LLP as Counsel, dated February 11, 2004 [Docket No. 129] (the "Employment Order"), the Court granted the Debtors' application to retain and employ Jenner as their lead counsel in the Chapter 11 Cases.  Among other things, the Employment Order allowed the Debtors to retain and employ Jenner as their counsel to represent them in all phases of the Chapter 11 Cases pursuant to a billing structure in which legal services are billed on an hourly basis, in accordance with Jenner's ordinary and customary hourly rates in effect on the date that services are rendered.

6.    The Court's February 11, 2004 Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Professionals [Docket No. 133] (the "Compensation Order") provides that each professional seeking compensation and reimbursement from the Debtors' estates may submit a monthly invoice (each such invoice, an

2

"Interim Statement") to the Debtors, the Debtors' counsel, counsel to the Committee, counsel to

LaSalle Business Credit, counsel to Secured Second Priority Note Holders, counsel to the Ad

Hoc Committee of Bondholders and the Office of the Untied States Trustee (collectively, the

"Notice Parties"). The Notice Parties have twenty (20) days after the date of service of an

Interim Statement to review it and assert an objection thereto. If no timely objection to an

Interim Statement is filed, the Debtors are authorized to pay 80% of the fees and 100% of the

expenses requested therein. For each four-month period during the Chapter 11 Cases, each of

the professionals shall submit interim applications for Court approval and allowance of their

compensation and reimbursement and for authorization for payment of the 20% fee holdback.

7.      On May 10, 2005, the Committee and the Ad Hoc Committee of Bondholders (the

"Bondholders' Committee") filed their Joint Motion of the Ad Hoc Bondholders' Committee and

the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. §§ 105(a), 363, 364, 502,

506(a), 507(b) and 1112 and Fed. R. Bankr. P. 7041 and 9019 for an Order Approving

Settlement of Lien Disputes and Converting Cases to Chapter 7, which, if approved, would result

in the conversion of the Chapter 11 Cases to proceedings under chapter 7. At the present time,

virtually all of the Debtors' assets have been liquidated and converted to cash. The sole material

assets net yet liquidated are certain avoidance actions. The Committee, the Bondholders'

Committee and the Debtors request that final applications for compensation and expense

reimbursements be approved prior to the conversion of the Chapter 11 cases. The Debtors'

professionals further seek an order confirming that their allowed fees and costs have been or will

be paid from the proceeds of the Bondholders' collateral pursuant to a "carve-out" agreement, as

set forth in Stipulation and Final Order Authorizing (A) Secured Post-Petition Financing on a

Super Priority Basis Pursuant to 11 U.S.C. § 364, (B) Use of Cash Collateral Pursuant to 11

U.S.C. § 363 and (C) Grant of Adequate Protection Pursuant to 11 U.S.C. §§ 363 and 364 and

3

elsewhere.  Accordingly, the fees paid to date and sought by this Application have been and will

be paid from collateral proceeds, not unencumbered assets.

8.     The Debtors' professionals request that any order entered on these Applications

be binding on any chapter 7 trustee.

C.  Payments to Jenner

9.     Pursuant to the Compensation Order, Jenner has issued to the Debtors monthly

invoices for legal services rendered and expenses incurred for each month during the Third

Interim Application Period.  During the Third Interim Application Period, Jenner has issued the

following invoices:

| Invoice Date | Period Covered | Total Amount of Legal Services Rendered and Costs Incurred | Payments Received by Jenner pursuant to Compensation Order |
|---|---|---|---|
| November 24, 2004 | 10/1/04 - 10/31/04 | $48,479.92 | $39,000.02 |
| December 23, 2004 | 11/1/04 – 11/30/04 | $73,057.74 | $59,186.04 |
| January 25, 2005 | 12/1/04 - 12/31/04 | $29,684.41 | $23,823.31 |
| February 25, 2005 | 1/1/05 - 1/31/05 | $27,581.15 | $22,149.65 |
| March 25, 2005 | 2/1/05 - 2/28/05 | $29,442.33 | $23,727.23 |
| April 25, 2005 | 3/1/05 - 3/31/05 | $11,667.92 | $9,530.50 |
| Pending | 4/1/05 - 4/30/05 | $9,300.52 | $0.00 |
| **TOTAL:** | | | **$177,416.75** |

As of the filing date of this Third Interim Application, Jenner has received a total of $177,416.75

for the Application Period.  The foregoing invoices and their supporting detail are attached

hereto and incorporated herein as Exhibits 1 through 7.  As discussed in detail below, each

invoice, and the supporting detail, breaks down legal services rendered into the categories

reflected in the chart at paragraph 27 below.

10.     On July 15, 2004, Jenner submitted its First Interim Application for Allowance of Compensation and Reimbursement of Expenses [Docket No. 546] seeking allowance of $1,002,432.50 in compensation and reimbursement of $53,901.86 of expenses.  On August 19, 2004, the Court approved compensation to Jenner in the amount of $999,886.75 and expense reimbursement of $45,305.25 [Docket No. 594].  On November 15, 2004, Jenner submitted its Second Interim Application for Allowance of Compensation and Reimbursement of Expenses [Docket No. 645] seeking allowance of $452,892.00 in compensation and reimbursement of $25,448.88 of expenses.  On December 16, 2004, the Court approved compensation to Jenner in the amount of $447,865.50 and expense reimbursement of $17,911.34 [Docket No. 672]. Subsequently, the Court amended its order and approved additional expense reimbursement to Jenner, bringing the total allowed expenses to $25,325.20 [Docket No. 693].[2]

## II. THE VALUE OF SERVICES RENDERED

11.     Section 330(a) of the Bankruptcy Code provides, in pertinent part, that:

. . . the court may award... reasonable compensation for actual, necessary services rendered by the... attorney and by any paraprofessional person... and... reimbursement for actual, necessary expenses....  (2) * * * * (3)(A) In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including -- (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under [the Bankruptcy Code]; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and (E) whether the compensation is reasonable, based on the customary compensation

---

[2] In this Final Application, Jenner is not seeking an award of previously disallowed fees or expenses.  Also, through this case, Jenner has exercised sole billing discretion and written off certain fees and expenses before submitting monthly invoices and fee applications.

charged by comparably skilled practitioners in cases other than cases under this title.

12.    The Seventh Circuit has stated that:

The computation of hourly fees depends on the number of hours reasonably expended, the hourly rate of each attorney, the calculation of the time value of money (to account for delay in payment), potential increases and decreases to account for risks and the results obtained, and a complex of other considerations under the heading of "billing judgment."

Kirchoff v. Flynn, 786 F.2d 320, 325 (7th Cir. 1986) (citing Hensley v. Eckerhart, 461 U.S. 424

(1983)).  Additionally, the First Circuit has recognized that:

[I]t is important for the court to maintain a sense of overall proportion and not become enmeshed in meticulous analysis of every detailed fact of the professional representation.  It is easy to speculate in retrospect that the work could have been done in less time or with fewer attorneys or with an associate rather than a partner.  On the other hand, it is also possible that [the Debtor] would not have enjoyed the success it did had its counsel managed matters differently.

Boston and Maine Corp. v. Moore,  776 F.2d 2, 10 (1st Cir. 1985) (citations omitted).

13.    In reviewing the Final Application, this Court should be guided by the Seventh

Circuit's instruction that:

[I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price.  It is to determine what the lawyer would receive if he was selling his services in the market rather than being paid by court order.

In re Continental Illinois Securities Litigation, 962 F.2d 566, 568 (7th Cir. 1992).

14.    In Continental Securities, the Seventh Circuit found error in the lower court's

practice of: (a) placing ceilings on the hourly rates of all lawyers; (b) refusing to allow paralegal

services to be compensated at market rate; (c) refusing to award a risk multiplier; (d) making

large across-the-board cuts in research time; (e) making large across-the-board cuts in conference

time; and (f) refusing to allow attorneys to bill computerized legal research services.  Id. at 568-70.

15.     With respect to legal research, the Seventh Circuit emphatically stated that:

No matter how experienced the lawyer is, he has to conduct (or
have conducted for him) research to deal with changes in the law,
to address new issues, and to refresh his recollection... a lawyer
who tries to respond to a motion or brief without conducting fresh
research is courting sanctions or a malpractice suit.

Id. at 570.

16.     The instruction of the Seventh Circuit in Continental Securities is that in evaluating the services rendered by Jenner, the Court should ascertain whether or not such services were rendered and billed in accordance with the established market for legal services in matters similar to those encountered by Jenner.  Here, Jenner staffed the Chapter 11 Cases and charged hourly rates no differently than Jenner would have in representing any other client.

17.     Jenner has conscientiously attempted to avoid having multiple attorneys appear or convene on behalf of the Debtors; however, in certain instances, it was necessary for more than one Jenner attorney to appear in Court at the same time.  This was primarily the case in connection with the bid procedure hearings, sale hearings, cross-border hearings and other hearings when a variety of matters were presented to the Court; however, whenever possible, Jenner had one attorney handle multiple matters on the Court's calendar.  Similarly, on certain occasions, Jenner had more than one attorney attend a meeting.  This generally occurred in connection with complex auction, cross-border sale issues and orderly conversion issues.  To the greatest extent possible, meetings, court appearances, negotiations, and other matters were handled on an individual basis.

18.     Multiple representation occurred only when the circumstances required more than one attorney to participate in the Debtors' representation due to the volume of activity, the

7

complexity or importance of an issue, or where continuity of representation had to be maintained.  Multiple representation in analogous circumstances has been approved.  See Berberena v. Coler, 753 F.2d 629 (7th Cir. 1985).

19.     Jenner is and has been aware of the reported opinions of bankruptcy courts in this district, see e.g., In re Pettibone Corp., 74 B.R. 293 (Bankr. N.D. Ill. 1987), In re Wildman, 72 B.R. 700 (Bankr. N.D. Ill. 1987), In re Adventist Living Centers, Inc., 137 B.R. 701 (Bankr. N.D. Ill. 1991), In re Convent Guardian Corp., 103 B.R. 937 (Bankr. N.D. Ill. 1989), concerning the allowance of fees to professionals, and has strived to maintain those standards.  To the extent possible, the Third Interim Application and Final Application fully meets the guidelines, standards, and procedures applicable therein, as well as the guidelines enunciated by the Seventh Circuit in the Continental Securities opinion.

20.     Jenner's hourly rates of compensation for the relevant attorneys and paraprofessionals during the Third Application Period and Final Application Period range from $100 to $625.  Those rates are comparable to rates charged by other practitioners having the same amount of experience, expertise, and standing for similar services in chapter 11 cases in this jurisdiction.

21.     In evaluating the Third Interim Application and Final Application, the Court should consider the novelty and difficulty of the questions presented, the skill required to perform the legal services properly, the preclusion of other employment caused by Jenner's retention in the Chapter 11 Cases, the customary fees charged in similar cases, the existence of time limits under which the services were rendered, the results obtained, the experience and ability of the attorneys involved, and the amount of awards of compensation in similar cases. See In re Alberto, 121 B.R. 531, 534 (Bankr. N.D. Ill. 1990).  The Court should also consider the

competing demands placed upon Jenner by the Court, creditors, parties-in-interest, each committee, and the Debtors.

22.     In the Chapter 11 Cases, Jenner grappled with numerous, novel, and difficult questions, performed services at the highest skill level, had certain key Jenner attorneys devote much of their productive time to the Chapter 11 Cases to the exclusion of other matters, charged fees that are customary in this jurisdiction, worked under extreme time constraints on numerous occasions, obtained excellent results, and utilized attorneys bearing the utmost experience and ability.  Whenever possible, senior Jenner attorneys utilized the assistance of junior attorneys and paraprofessionals; however, given the stakes involved and complex, interrelated issues presented, senior attorneys, of necessity, have invested time in the Chapter 11 Cases.

23.     In the Chapter 11 Cases, numerous pleadings and motions were filed with the Court.  The majority of such pleadings and motions were filed by the Debtors as movant. Attorneys Mark Thomas, John Sieger, Michael Rupe and Peter Siddiqui were primarily responsible for all: (a) administrative motions; (b) pleadings regarding asset liquidation; (c) pleadings related to the filing of a chapter 11 plan of liquidation; and (d) related litigation stemming form these Chapter 11 Cases.  Paralegal Michael Matlock and Project Assistant Jessica Niezgoda had primary responsibility for various administrative matters involving the Debtors and their estates, including maintaining internal files and Court documents related to the Chapter 11 Cases.  The foregoing six Jenner timekeepers were responsible for approximately 93% of the total dollar value of legal and paraprofessional services rendered during the Third Interim Application Period and approximately 76% of the total dollar value of legal and paraprofessional services rendered during the Final Application Period.

24.     Jenner believes that limiting the number of attorneys and paraprofessionals working on the Chapter 11 Cases to primarily those referenced above has been the most efficient

9

way to represent the Debtors.  Mark Thomas and John Sieger were aware of virtually all aspects of the Chapter 11 Cases, had a historical perspective on the Chapter 11 Cases, and were acutely aware that Jenner had to proceed in an efficient and economical manner.  However, on occasion the Debtors required the assistance of Jenner lawyers in non-bankruptcy practices for discrete issues.  Often, these discrete assignments resulted in a timekeeper billing on a few hours of time to the Chapter 11 Cases.  Jenner nevertheless submits that the estate benefited from such expertise.

25.      Finally, Jenner's results were demonstrably successful.  The Debtors will distribute almost $41,000,000 to the secured creditors, which is more than twice what the pre-filing distribution estimate had been.

26.      Given in the Chapter 11 Cases, and the experience, ability, and standing of the attorneys involved, $233,909.00 of interim compensation requested for legal services rendered during the Third Interim Application Period and the $1,681,661.85 of final compensation requested for legal services rendered during the Final Application Period is an eminently reasonable amount that should be allowed in full.  Jenner believes that, based upon its experience with other major firms in this market (including billing rates and staffing tendencies), virtually any other firm representing the Debtors in the Chapter 11 Cases would have charged the Debtors substantially more in legal fees than those charged by Jenner.  Likewise, the $10,852.39 requested for out-of-pocket expenses incurred during the Third Interim Application Period and the $81,482.84 requested for out-of-pocket expenses incurred during the Final Application Period are reasonable amounts that should be allowed in full.

### III.  RELIEF REQUESTED

27.      By this Third Interim Application, Jenner hereby requests that it be awarded an interim allowance of compensation for legal services rendered during the Third Interim

Application Period in the amount $233,909.00 (which amount includes the 20% holdback on all invoices). In addition, Jenner hereby requests that it be awarded an interim allowance of expenses in the amount of $10,852.39 for its reasonable and necessary out-of-pocket disbursements incurred during the Third Interim Application Period. By this Final Application, Jenner hereby requests that it be awarded a final allowance of compensation for legal services rendered during the Final Application Period in the amount $1,681,661.85, and a final allowance of expenses in the amount of $81,482.84 for its reasonable and necessary out-of-pocket disbursements incurred during the Final Application Period. Pursuant to Local Rule 5082-1(B)(2), Jenner also hereby requests that the Court direct the Debtors to pay any outstanding portion of the allowed fees and expenses.

## IV. CATEGORIES OF SERVICES RENDERED

28.     Jenner has reviewed its time entries and endeavored to place all such entries into discrete billing categories, according to the task performed. A summary of all principal activities of Jenner, with the total hours and fees incurred in each category, is set forth below. During the Third Interim Application Period, Jenner rendered a total of 565.30 hours of legal and paraprofessional services to the Debtors having an aggregate value of $220,853.00; accordingly, the average hourly rate of the legal and paraprofessional services rendered during the Third Interim Application Period was approximately $390.68. During the Final Application Period, Jenner rendered a total of 5,159.35 hours of legal and paraprofessional services to the Debtors having an aggregate net value of $1,668,605.25; accordingly, the average net hourly rate of the

11

legal and paraprofessional services rendered during the Final Application Period was approximately $323.41.[3]

29.     Jenner has divided its time entries into the following categories:

| Description | Total Third Interim Application Period Hours | Total Third Interim Application Period Fees | Total Final Application Period Hours | Total Final Application Period Fees |
|---|---|---|---|---|
| First Day Pleadings | 0.0 | $0.00 | 112.7 | $21,617.50 |
| Case Administration | 195.0 | $89,700.50 | 1,783.95 | $491,774.25 |
| Asset Analysis and Recovery | 14.8 | $6,535.00 | 38.4 | $11,989.00 |
| Asset Disposition | 78.0 | $31,447.50 | 1,441.6 | $551,055.00 |
| Assumption/ Rejection of Leases | 14.0 | $5,420.00 | 537.1 | $183,314.00 |
| Business Operations | 1.6 | $664.00 | 20.9 | $8,758.00 |
| Claims Administration and Objections | 95.3 | $34,457.00 | 239.9 | $71,648.00 |
| Employee Benefits/ Pensions | 2.4 | $954.00 | 153.0 | $59,075.00 |
| Fee/ Employment Applications | 28.1 | $9,281.50 | 159.4 | $49,237.50 |
| Fee/ Employee Objections | 19.4 | $5,232.50 | 74.5 | $27,218.00 |
| Financing/ Cash Collateral | 7.2 | $3,100.50 | 96.4 | $42,038.00 |
| Avoidance Actions | 102.0 | $31,489.00 | 133.3 | $40,638.50 |
| Litigation | 4.4 | $1,584.00 | 53.4 | $19,187.00 |
| Relief From Stay Proceedings | 0.4 | $83.00 | 15.4 | $3,419.50 |
| Plan and Disclosure Statement | 2.7 | $904.50 | 283.5 | $80,971.50 |
| Expenses (non-working travel time—billed at half rates) | 0.0 | $0.00 | 15.9 | $6,664.50 |
| **TOTAL** | **565.3** | **$220,853.00** | **5,159.35** | **$1,668,605.25** |

---

[3] As set forth herein, Jenner has not yet computed the accurate fees and expenses incurred in May and June 2005.  The details herein include only the fees and expenses of which Jenner actually incurred as of the filing of this Application.

30.     Provided below is a separate description of each of Jenner's principal categories of activities, which generally describes the tasks performed.  Each of the monthly invoices for the Third Interim Application Period contains: (a) detailed descriptions of all services rendered in each of the above categories; (b) the timekeeper, date, and amount of time expended in each category; and (c) the total time and value of services rendered in each category.  Further, Jenner incorporates by reference herein the previous invoices for prior Interim Application Periods.

### First Day Pleadings

31.     During the Third Interim Application Period, Jenner expended zero hours in connection with this category.  During the Final Application Period, Jenner expended 112.7 hours having a value of $21,617.50 in connection with this category.  Services rendered by Jenner in this category generally include, among other things, the following:  (a) meeting and negotiation with parties-in-interest regarding the first day pleadings and proposed orders related thereto; (b) preparing for and attending the first day hearings; and (c) researching, drafting and filing the Debtors' chapter 11 petitions and first day pleadings related thereto.

### Case Administration

32.     During the Third Interim Application Period, Jenner expended 195.0 hours having a value of $89,700.50 in connection with this category.  During the Final Application Period, Jenner expended 1,783.95 hours having a value of $491,774.25 in connection with this category.  Services rendered by Jenner include: (a) drafting filing, serving and presenting in court various pleadings not covered by specific categories; (b) organizing various pleadings, records,

schedules of claims and statement of financial affairs, and other materials; and (c) maintaining

detailed charts of all pending matters and case status items.[4]

## Asset Analysis and Recovery

33.     During the Third Interim Application Period, Jenner expended 14.8 hours having

a value of $6,535.00 in connection with this category.   During the Final Application Period,

Jenner expended 38.4 hours having a value of $11,989.00 in connection with this category.

Services rendered by Jenner include:  (a) reviewing records and documents to determine if assets

evidenced thereby are recoverable for the benefit of creditors; (b) corresponding with the

Debtors' representatives and third parties to recover such assets for the benefit of creditors; and

(c) corresponding with the Debtors' representatives and other counsel related to each of the

foregoing.

## Asset Disposition

34.     During the Third Interim Application Period, Jenner expended 78.0 hours having

a value of $31,447.50 in connection with this category.   During the Final Application Period,

Jenner expended 1,441.1 hours having a value of $551,055.00 in connection with this category.

Services rendered by Jenner include: (a) categorizing and organizing the Debtors' assets for

impending sales; (b) organizing, preparing for and staging auctions to sell certain of the Debtors'

assets for the benefit of the Debtors' estates; (c) drafting and implementing bid procedures and

other documents and procedures related to the foregoing; (d) corresponding with creditors,

bidders, potential bidders and others related to sales of assets of the Debtors; and (e) drafting,

serving and presenting in Court various pleadings related to the foregoing.

---

[4] Jenner anticipates that fees and expenses incurred during May and June 2005 will be in
connection with the Case Administration category.  Jenner professionals must prepare and assist
the Debtors in the process of converting these Chapter 11 Cases to ones under chapter 7.

14

## Assumption/ Rejection of Leases

35.     During the Third Interim Application Period, Jenner expended 14.0 hours having a value of $5,420.00 in connection with this category.  During the Final Application Period, Jenner expended 537.1 hours having a value of $183,314.00 in connection with this category. Services rendered by Jenner include, among other things, the following: (a) evaluating, researching, investigating and categorizing unexpired leases and executory contracts of the Debtors; (b) drafting, serving and presenting in court motions related to rejecting or assuming unexpired leases and executory contracts of the Debtors; and (c) corresponding, and negotiating settlements, with third parties in relation to the foregoing.

## Business Operations

During the Third Interim Application Period, Jenner expended 1.6 hours having a value of $664.00 in connection with this category.  During the Final Application Period, Jenner expended 20.9 hours having a value of $8,758.00 in connection with this category.  Services rendered by Jenner include, among other things, the following:  (a) attending and participating in meetings of the board of directors of the Debtors;  and  (b) coordinating operational and management issues in these Chapter 11 cases.

## Claims Administration and Objections

36.     During the Third Interim Application Period, Jenner expended 95.3 hours having a value of $34,457.00 in connection with this category.  During the Final Application Period, Jenner expended 239.9 hours having a value of $71,648.00 in connection with this category. Services rendered by Jenner in this category include, among other things, the following: (a) reviewing and evaluating all filed claims; (b) reviewing and assessing specific tax claims and liabilities; (c) investigation various issues relating to employee- and pension- related claims; and (d)outlining potential objections

### Employee Benefits/Pensions

37.     During the Third Interim Application Period, Jenner expended 2.4 hours having a value of $954.00 in connection with this category.  During the Final Application Period, Jenner expended 153.0 hours having a value of $59,075.00 in connection with this category.  Services rendered by Jenner in this category include, among other things, the following: (a) investigating issues regarding claims related to the Debtors' former pension programs, including claims of the Pension Benefit Guaranty Corporation; (b) negotiating and corresponding with bondholders, the Committee and other parties-in-interest regarding the same; and (c) negotiating with and settling claims of employees and other parties-in-interest.

### Fee/Employment Applications

38.     During the Third Interim Application Period, Jenner expended 28.1 hours having a value of $9,281.50 in connection with this category.  During the Final Application Period, Jenner expended 159.4 hours having a value of $49,237.50 in connection with this category.  Services rendered by Jenner in this category include, among other things, drafting, serving and presenting in Court applications to retain the Debtors' professionals, including auctioneer, investment banking and accounting professionals.[5]

### Fee/Employee Objections

39.     During the Third Interim Application Period, Jenner expended 19.4 hours having a value of $5,232,50 in connection with this category.  During the Final Application Period, Jenner expended 74.5 hours having a value of $27,218.00 in connection with this category.

---

[5] Jenner anticipates that fees and expenses incurred during May and June 2005 will be in connection with the Fee/Employment Application category.  Jenner professionals must prepare this Application, as well as attend the hearing on June 7, 2005.

Services rendered by Jenner in this category include: reviewing and, as appropriate, objecting to the retention and fee applications of other estate professionals.

### Financing/Cash Collateral

40.      During the Third Interim Application Period, Jenner expended 7.2 hours having a value of $3,100.50 in connection with this category.  During the Final Application Period, Jenner expended 96.4 hours having a value of $42,038.00 in connection with this category.  Services rendered by Jenner in this category include, among other things, the following: (a) negotiating the initial financing and the continued use of cash collateral required to administer the Debtors' estates;  (b) communications with secured lenders and creditors as to the same; and (c) participating in court hearings and client conference as to the foregoing.

**Avoidance Actions**

41.     During the Third Interim Application Period, Jenner expended 102.0 hours having a value of $31,489.00 in connection with this category.  During the Final Application Period, Jenner expended 133.3 hours having a value of $40,638.50 in connection with this category. Services rendered by Jenner in this category include:  (a) researching, preparing and filing complaints to avoid preferential transfers; (b) working on discovery issues regarding the foregoing; and (c) drafting and presenting a settlement motion regarding the Ernst & Young and Madelaine Chocolate Novelties, Inc. adversary proceedings.

**Litigation**

42.     During the Third Interim Application Period, Jenner expended 4.4 hours having a value of $1,584.00 in connection with this category.  During the Final Application Period, Jenner expended 53.4 hours having a value of $19,187.00 in connection with this category.  Services rendered by Jenner in this category include: (a) responding to various contested matters; and (b) negotiating, litigating and otherwise responding to legal proceedings initiated or threatened outside of these Chapter 11 Cases.

**Plan and Disclosure Statement**

43.     During the Third Interim Application Period, Jenner expended 2.7 hours having a value of $904.50 in connection with this category.  During the Final Application Period, Jenner expended 283.5 hours having a value of $80,971.50 in connection with this category.  Services rendered by Jenner in this category include, among other things:  (a) negotiating and drafting a chapter 11 plan of liquidation and corresponding disclosure statement; and (b) reviewing, assessing and responding to objections to the same; and (c) amending the plan and disclosure statement as necessary.

### Relief from Stay Procedures

44.     During the Third Interim Application Period, Jenner expended 0.4 hours having a value of $83.00 in connection with this category.  During the Final Application Period, Jenner expended 15.4 hours having a value of $3,419.50 in connection with this category.  Services rendered in this category include settling disputes and potential disputes related to motions to lift the automatic stay.

### Travel

45.     During the Third Interim Application Period, Jenner expended zero hours in connection with this category.  During the Final Application Period, Jenner expended 15.9 hours having a value of $6,664.50 in connection with this category.  Time spent in this category related to traveling to Toronto in connection with the Archibald Canada interim receivership, the corresponding court proceedings, and the auction of the Laura Secord assets.  All of these trips were included in Jenner's Second Interim Fee Application and the Supplement to Second Interim Application of Jenner & Block LLP for Allowance of Compensation and Reimbursement of Expenses (Docket No. 687) (the "Supplement") and discussed in detail at the hearing on that application and the Supplement.  After reviewing the Supplement, the Court approved the Second Interim Fee Application as modified.

46.     Jenner has reduced rates for non-working travel time to 50% rates.

**Expenses Incurred**

47.     The actual and necessary amounts expended by Jenner during the Third Interim Application Period are detailed in the monthly invoices attached hereto as Exhibits 1 through 7. They amount to $5,158.57.   During the Third Interim Application Period, expenses were incurred in the categories set forth on the chart below (certain expenses were re-categorized below to clarify references on the invoices).   The Final Application Period for which reimbursement is requested amount to $78,982.84.   During the Final Application Period, expenses were incurred in the categories set forth on the chart below.[6]

| CATEGORY | TOTAL THIRD INTERIM APPLICATION PERIOD AMOUNT | TOTAL FINAL APPLICATION PERIOD AMOUNT |
|---|---|---|
| Business Meals | $83.93 | $2,941.82 |
| Certified Copy Fee | N/A | $275.80 |
| Court Reporter | $921.60 | $6,152.56 |
| Database Research (includes lien searches) | N/A | $891.27 |
| Filing Fees | $150.00 | $1,978.00 |
| In-City Transportation | $49.00 | $735.05 |
| Lexis Research Costs | N/A | $6,568.69 |
| Long Distance Telephone | $122.22 | $1,090.44 |
| Meeting Expense | $410.40 | $410.40 |
| Out of Town Travel | $2,707.15 | $10,121.01 |
| Outside Professional Services | N/A | $10,860.46 |
| PACER Charges | $757.98 | $2,585.56 |
| Photocopy and Related Expenses (special in-house) | N/A | $983.99 |
| Photocopy Costs (standard in-house) | $1,647.64 | $19,398.74 |
| Photocopy Expenses (outside service used) | N/A | $2,008.60 |

---

[6] As set forth more fully in footnote 1 herein, the Application contains an estimate of $2,500.00 for expenses in May and June 2005.

| CATEGORY | TOTAL THIRD INTERIM APPLICATION PERIOD AMOUNT | TOTAL FINAL APPLICATION PERIOD AMOUNT |
|---|---|---|
| Postage Costs | $398.92 | $2,546.01 |
| Recording Fee | $9.00 | $9.00 |
| SEC Filings | $112.00 | $112.00 |
| Special Messenger (includes Federal Express) | $246.92 | $3,252.38 |
| Telephone Expense | $65.95 | $1,268.71 |
| Westlaw Research Costs | $669.68 | $4,792.35 |
| **TOTAL** | **$8,352.39** | **$78,982.84** |

a)      <u>Court Reporter</u>:  During the Final Application Period, Jenner incurred costs for providing a court reporter at auctions for certain of the Debtors' assets, and deposition regarding certain disputes.

b)      <u>Photocopy Costs</u>:  In order to properly attribute in-house photocopies to each client, Jenner maintains a record of copy charges made through a computerized system.  This procedure requires the operator to key in a client code number on a keypad attached to the copier.  In this fashion, the copies are not considered "overhead," the cost of these copies is not factored into Jenner's hourly rates, and clients are therefore not expected to pay for copies made on behalf of other clients.  The cost charged for Jenner's in-house duplication was nine cents ($0.09) per copy in 2004 and ten cents ($0.10) per copy in 2005.  Photocopy charges primarily were incurred in connection with copying for filing and service of numerous, extensive and voluminous pleadings in the Chapter 11 Cases as well as in connection with the sale of certain of the Debtors' assets.   All copying charges were tracked and were necessary for the proper representation of the Debtors in these bankruptcy proceedings.

c)      <u>Photocopy and Related Expenses</u>:  Special in-house photocopying services, such as binding or color copying, are recorded under the heading "Photocopy and Related Expense".

d)      Photocopy Expenses:  Where a large copy job may be more efficiently conducted by an outside copying service, such a service is used and charges incurred therein are maintained under the heading "Photocopy Expenses".

e)      Special Messenger:  During the Third Interim and Final Application Period and the Final Application Period, the Debtors served and filed various documents in the Chapter 11 Cases.  The Debtors also orchestrated several large-scale auctions of property of the Debtors with numerous and varied potential buyers.  Although the Debtors made all reasonable efforts to avoid incurring such charges, it often was appropriate for materials related to these events to be served via overnight delivery or special messenger (including Federal Express).

f)      Westlaw, Lexis, Database and PACER Research:  Jenner uses computerized research services such as Westlaw and Lexis to research legal issues and uses services such as PACER to obtain documents filed with various courts.  Both types of services are necessary and allow Jenner to reduce costs.  PACER allows court documents to be obtained without the necessity of a trip to the appropriate courthouse; Westlaw and Lexis allow Jenner to reduce the time expended in researching complex areas of the law, thus lowering the amount of attorneys' billable hours.  Even the most experienced attorney must conduct research to evaluate changes in the law, to address new issues, or to refresh the attorney's recollection.  Failure to do so could lead to court sanctions or a malpractice suit.  See In re Continental Illinois Securities Litigation, 962 F.2d 566, 570 (7th Cir. 1992).  The information obtained from such computer-assisted research was instrumental in preparing and arguing certain pleadings and in analyzing other matters.  Among other topics, Jenner attorneys performed electronic research during the Final Application Period on issues relating to certain administrative and priority claims, including employee benefits, pension plans, tax implications and the impact of the various assets sales on contracts and leases, plan and disclosure statement issues, issues related to validity the sale of the

22

Debtors' assets, including research in to the ability to assume and assign certain contracts and leases.

   g) <u>Postage Costs</u>:  In order to keep overnight carrier charges to a minimum, service of most pleadings and documents was accomplished by ordinary mail.

   h) <u>Outside Professional Services</u>:  During the Final Application Period, Jenner remitted a total of $10,860.46 to company for professional services rendered on behalf of the estates.  Browne Business Solutions assisted the Debtors in the two cross-border hearings that occurred during these Chapter 11 cases.  These services included providing both equipment and labor required to enable the Canadian and U.S. Courts to hold joint hearings.  CT Corporation performed UCC lien searches in connection with the financing and cash collateral negotiation.  Finally, Transperfect Translation translated certain employee-related documents from English to Spanish to aid former employees of the Debtors.  These services were essential for efficient administration of the Debtors' estates.

   i) <u>Telephone Expense</u>.  Cellular telephone calls are reimbursed to Jenner professionals pursuant only to itemized billing statements reflecting the date, time, length and cost of each call actually made.  Reimbursements made thereunder are indicated by the heading "Telephone Expense for [attorney name]".  The heading "Telephone Expense" otherwise indicates charges to a Jenner calling card.

   j) <u>Long Distance Telephone Calls</u>:  Jenner does not charge its clients for local telephone usage.  Jenner maintains a record of long distance telephone calls made through a computerized system.  This procedure requires the caller to key in a client code number when initiating the telephone call and such charges are indicated under the heading "Long Distance Telephone".  Jenner makes no profit on long distance telephone expenses.

k)      <u>In-City Transportation</u>:      During the Final Application Period, Jenner's professionals and paraprofessionals have incurred expenses for in-city travel for, among other things, travel to and from Court.  Jenner professionals are instructed not to travel to court via taxicab unless they are also transporting voluminous materials with them or if weather or other circumstances render such an expense reasonable.

l)      <u>Out of Town Travel</u>:  During the Final Application Period, Jenner's professionals have incurred expenses for out of town travel for, among other things, travel to Canada in connection with the sale of certain of the Debtors' assets.  Jenner's professionals only traveled coach when flying to these locations.

m)      <u>Business Meals</u>:  During the Final Application Period, Jenner expended $2,941.82 on meals.  Part of this expense is directly attributable to auctions of certain of the Debtors' assets.  The remaining amount of this expense relates largely to client meetings concerning the administration of the Chapter 11 Cases.

n)      <u>Filing Fees</u>:  During the Application Period, Jenner has incurred filing fees for various documents required to be filed with the Clerk of the Court.

o)      <u>Certified Copy Fee</u>:  During the Application Period, Jenner incurred $275.80 to cause certain sale-related documents to be certified.

48.     All expenses incurred by Jenner in connection with its representation of the Debtors were ordinary and necessary expenses.  All expenses billed to the Debtors were billed in the same manner as Jenner bills non-bankruptcy clients.

### Retainer

49.     Jenner currently holds a retainer from the Debtors in the amount of $220,244.40 (the "Retainer").  Jenner respectfully requests that the Court direct Jenner to apply the Retainer to the allowed portion of the fees and expense reimbursements sought in this Final Application. To the extent the Retainer is insufficient to pay all allowed fees and expense reimbursements and, Jenner respectfully requests that the Court direct that, pursuant to Local Rule 5082-1(B)(2), the Debtors pay any outstanding portion of the allowed fees and expense reimbursements.   To the extent an excess retainer remains after the payment of all fees and costs approved in the Final Application, Jenner will refund the balance of the Retainer to the Debtors.

### Summary and Conclusion

41.     Jenner seeks allowance of the reasonable value of the professional services rendered by Jenner to the Debtors in the Chapter 11 Cases during the Third Interim Application Period in the amount of $233,909.00.  Jenner also seeks allowance of $10,852.39 incurred in out-of-pocket costs and expenses.  Further, Jenner seeks payment from the Debtors' estates of all allowed fees, costs and expenses for the Third Interim Application Period that are unpaid as of the date of the entry of the proposed order attached hereto.

42.     Jenner seeks allowance of the reasonable value of the professional services rendered by Jenner to the Debtors in the Chapter 11 Cases during the Final Interim Application Period in the amount of $1,681,661.85.  Jenner also seeks allowance of $81,482.84 incurred in out-of-pocket costs and expenses.  Further, Jenner seeks payment from the Debtors' estates of all

allowed fees, costs and expenses for the Final Interim Application Period that are unpaid as of the date of the entry of the proposed order attached hereto.

42.     The rates of compensation for attorneys and supporting paraprofessionals, and the expenses incurred by Jenner, are customary and ordinary rates, fees, and expenses charged by Jenner in matters of this type.  All services and expenses for which Jenner requests compensation and reimbursement were performed and incurred for and on behalf of the Debtors.  All services and expenses for which Jenner requests compensation and reimbursement benefited the Debtors' estates.

43.     No agreement or understanding exists between Jenner and any other person for sharing of compensation which has been or will be received, except such sharing as is customary and generally accepted among attorneys within a law firm.  No agreement or understanding, express or implied, has been or will be entered into for purposes of fixing the fees or other compensation to be paid to any other attorney for any party-in-interest, to any other party-in-interest, or to any person for services rendered in connection herewith contrary to the provisions of the Bankruptcy Code.  Jenner at all times acted pursuant to the instructions of its client; however, Jenner consistently and conscientiously attempted to handle all matters in the most efficient and economic manner possible.

### <u>Notice of Application and Hearing Thereon</u>

44.     Pursuant to the Compensation Order, notice of this Second Interim Application and the hearing thereon (the "<u>Notice</u>") has been given to the Notice Parties (as defined in the Debtors' motion seeking the relief granted by the Compensation Order [Docket No. 17]).  In light of the nature of the relief requested, the Debtors submit that no further notice is required.

**WHEREFORE**, Jenner respectfully requests that the Court enter an order substantially in the form filed concurrently herewith granting the relief requested herein and granting such other and further relief as is just and proper.

Respectfully submitted,


_____*/s/ Peter A. Siddiqui*_____
Mark K. Thomas (ARDC # 6181453)
Peter A. Siddiqui (ARDC # 6278445)
JENNER & BLOCK LLP
One IBM Plaza
Chicago, IL  60611
Phone: (312) 222-9350
Facsimile: (312) 923-2727

Counsel to Debtors and
Debtors-In-Possession